Jay McKean
c/o 164 West Bench Road
Roberts, Montana [59070]

Plaintiff, *in pro se*

**RECEIVED**

JUN 2 7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Jay McKean, a sentient human being, ) | Civil No. 1:07-cv-02202-ESH |
| Plaintiff, ) | |
| v. ) | **PLAINTIFF'S RESPONSE TO THE** |
| ) | **UNITED STATES' MOTION FOR** |
| UNITED STATES, a Federal corporation, et al., ) | **SUMMARY JUDGMENT** |
| Defendants. ) | |

COMES NOW Plaintiff, Jay McKean, proceeding on his own behalf, pursuant to

Fed.R.Civ.P. 56, and Local Rule 7.1(c), responding to the UNITED STATES' Motion for

Summary Judgment that asserts that there are no genuine issues of material fact and that the

United States is entitled to a judgment against the Plaintiff. The Court will find that there are

genuine issues of *material facts* in dispute regarding, among other things, the IRS's unlawful

collections activities that do not entitle the United States to the relief it seeks in its motion for

summary judgment. ***"A material fact is one which might affect the outcome of the case under***

***governing law.*** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The United States

Supreme Court is governing law and the Plaintiff invokes reliance of the same.

## MEMORANDUM OF LAW AND BRIEF IN SUPPORT

### I.
### Standard of Review

1. Plaintiff agrees with Counsel for Defendants the UNITED STATES when he/she states on

page 5, ¶ 1, "*Summary judgment is appropriate if 'there is no genuine issue as to any*

*material fact'* ..." and

> ". . . *the nonmoving party bears the burden of proof on an issue* . . ." *"A*
> *material fact is one which might affect the outcome of the case under governing*
> *law. Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

2. Plaintiff herein certifies that there are genuine issues of material facts that remain in dispute,

and the Defendant is not entitled to summary judgment as a matter of law as:

> "*The party moving for summary judgment has the burden of clearly*
> *establishing the lack of any triable issues of fact by the record properly before*
> *the court. The movants papers are carefully scrutinized; and those of the*
> *opposing party are on the whole indulgently regarded.*" *Bishop v. Wood,* 426
> U.S. 341, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976);

and the United States has failed to carry that burden.

3. Finally, the Supreme Court emphasized:

> ". . . *for purposes of the motion, non-movant's version of the facts must be*
> *accepted, and all disputed matters must be resolved in his favor*". *United States*
> *v. Diebold,* Inc., 369 U.S. 654, 655, 82 S. Ct 993, 8 L. Ed. 2d 176 (1962). "*On a*
> *summary judgment motion, the court may not weigh the credibility of the*
> *parties.*" See *Rollins v. TechSouth,* Inc., 833, F.2d 1525, 1531 (11th Cir. 1987).

### II.
### Stare Decisis Supreme Court Precedent Is Binding On The Lower Courts

4. In *Hohn v. United States,* 524 U.S. 236 (1998), 118 S.Ct. 1969, *Id.* at 252 and 253, the Court

reiterated that:

> "*Our decisions remain binding precedent until we see fit to reconsider them,*
> *regardless of whether subsequent cases have raised doubts about their*

*continuing vitality."* <u>*Rodriguez de Quijas v. Shearson/American Express, Inc.*</u>, 490 U.S. 477, 484 (1989). *Once we have decided to reconsider a particular rule, however, we would be remiss if we did not consider the consistency with which it has been applied in practice."* <u>*Swift & Co. v. Wickham*</u>, 382 U.S. 111, 116 (1965); see also <u>*Brown Shoe Co. v. United States*</u>, 370 U.S. 294, 307 (1962).

5. In <u>*United States v. Mason*</u>, 412 U.S. 391 (1973), the Supreme Court emphasized:

> *". . . if the doctrine of stare decisis has any meaning at all, it requires that people in their everyday affairs be able to rely on our decisions and not be needlessly penalized for such reliance."* Cf. <u>*Flood v. Kuhn*</u>, 407 U.S. 258, 283 (1972); <u>*Wallace v. M'Connell*</u>, 13 Pet. 136, 150 (1839).

6. In <u>*United States Internal Revenue Serv. v. Osborne*</u> (In re Osborne), 76 F.3d 306, 96-1 U.S.

Tax Cas. (CCH) paragr. 50,185 (9th Cir. 1996), the Ninth Circuit emphasized that:

> *"Stare decisis is the policy of the court to stand by precedent;* the term is but an abbreviation of stare decisis et non quieta movere — *"to stand by and adhere to decisions and not disturb what is settled."* Consider the word "decisis." The word means, literally and legally, the decision. Under the doctrine of stare decisis a case is important only for what it decides — for the "what," not for the "why," and not for the "how." *Insofar as precedent is concerned, stare decisis is important only for the decision, for the detailed legal consequence following a detailed set of facts."*

7. Finally, in <u>*Legal Services Corporation v. Velazquez*</u>, 531 U.S. 533 (2001) 121 S.Ct. 1043,

the Supreme Court gave clarity in what stands as binding precedent, holding that:

> *"Judicial decisions do not stand as binding "precedent" for points that were not raised, not argued, and hence not analyzed."* See, e.<u>g., United States v. Verdugo-Urquidez</u>, 494 U.S. 259, 272 (1990); <u>*Hagans v. Lavine*</u>, 415 U.S. 528, 533, n. 5 (1974); <u>*United States v. L. A. Tucker Truck Lines, Inc.*</u>, 344 U.S. 33, 37-38 (1952); <u>*United States v. More*</u>, 3 Cranch 159, 172 (1805) (Marshall, C. J.).

8. In <u>*United States v. Hicks*</u>, (W.D.Mo. 2005) the court has repeatedly stated that,

> "*It is not the role of this Court (or any court) to impose its "own judgment" when deciding matters of law, nor should a court base its judicial rulings on policy considerations alone.* See <u>*Roper v. Simmons,*</u> 543 U.S. 551, 125 S. Ct. 1183, 1221(2005) (Scalia, J., dissenting). This is especially true when interpreting statutes. <u>*It is highly inappropriate "to read into the relevant statutes that which is not clearly present, since to do so `would involve judicial activism into a political, legislative and/or executive area.'"*</u> <u>*In re Laub Baking Co.,*</u> 642 F.2d 196, 198-99 (6th Cir. 1981) (quoting <u>*Carlson v. Landon,*</u> 342 U.S. 524 (1952)).

9. The misapplication of the prima facie internal revenue laws is a direct product of the *institutionalized teaching of false legal doctrines* from American Bar Association accredited law schools throughout the United States and abrogates the Constitution for the United States of America and United States Supreme Court precedent.

10. In *Sundstrom v. United States*, 419 U.S. 934 (1974) 419 U.S. 934, the court emphasized,

> *"Due process forbids the Government from actively misleading a citizen as to the law's commands."* <u>Cox v. Louisiana</u>, 379 U.S. 559(1965); <u>Raley v. Ohio</u>, 360 U.S. 423. *"A citizen may be misled as much by failure to correct an erroneous impression as by incorrect advice, affirmatively conveyed."*

11. Thus, any opinion cited by Counsel – *obiter dictum* or not governed by *stare decisis* United States Supreme Court precedent – should not be allowed to stand as the binding authority in this Court's decision making process. It is a fundamental concept that this Court's decision must be guided by "sound legal principles" and those principles are governed by what the United States Supreme Court has interpreted the law to be.

### III.
### <u>Mr. KcKean Was Not Given An Opportunity To Exercise His Appeals Rights Within The Meaning Of 26 U.S.C. § 6330</u>

12. Pat S. Genis, doing linguistic gymnastics throughout his/her dissertation, asserts on page 16 § B ¶ 1 that the Plaintiff is not entitled to a Collection Due Process hearing that is completed prior to the IRS issuing the Notices of Levy to take his property – a position that flies in the face of the act of Congress at every level. The Supreme Court has repeatedly held:

> *". . . if government action will deprive an individual of a significant property interest, that individual is entitled to an opportunity to be heard."* <u>Boddie v. Connecticut</u>, 401 U.S. 371, 379, 91 S. Ct. 780, 786, 28 L. Ed.2d 113 (1971). Emphasis added

13. In an effort to protect the due process rights of the Plaintiff McKean, Congress enacted 26 U.S.C. § 6330(a)(1) of the *prima facie* internal revenue laws to insure that: *"No levy may be*

*made on any property or right to property of any person unless the Secretary has notified*

*such person in writing of their right to a hearing under this section before such levy is*

*made,"* and IRS employees acting on behalf of the United States did not offer a hearing or

notice the Plaintiff McKean prior to the Notice of Levy being issued.

14. In *Redeker-Barry v. United States*, 476 F.3d 1189 (11th Cir. 2007) the court emphasized

that:

> *"Under the Internal Revenue Code, the IRS may issue a lien and place a levy*
> *on a person's property to collect unpaid taxes. 26 U.S.C. §§ 6213, 6321,*
> *6331(a). However, the IRS cannot levy property to collect until it notifies the*
> *taxpayer of the right to a CDPH. 26 U.S.C. §§ 6320(a), 6330(a); Roberts v.*
> *Comm'r,* 329 F.3d 1224, 1227 (11th Cir.2003). *Id* at 1190,

and Plaintiff McKean was never notified of his right to a CDPH and thus attempted to invoke

that right upon receipt of the fictitious Levy instrument.

15. In *United States v. Potemken*, 841 F.2d 97 (4th Cir. 1988), *Id.* at 101, the court reiterated

that,

> *"Strict compliance with this procedure is "necessary to effect a valid levy and*
> *seizure."* See *Matter of Computer Management, Inc.,* 40 B.R. 201, 203 (N.D.Ga.
> 1984).

16. There is no question that unknown employees of the IRS have failed to comply with this

procedural due process provision of the internal revenue laws.

## IV.
## Pat S. Genis' Submission of a Self-Serving Declaration Does Not Correct Inaccuracies of Forms 4340 Certificate of Assessment As Reported By The Government Accountability Office And Is NOT Supported With Documentary Evidence

17. Pat S. Genis, acting on behalf of his/her United States employer and the IRS states in his/her

self-serving declaration on page 1 that: *"I am a trial attorney with the Department of Justice*

*Tax Division... As part of my duties, I have received and reviewed documents and records*

*created and maintained by Internal Revenue Service,"*, admitting that all documents and

records were *created* by the Internal Revenue Service, based on an assumption of liability

giving rise to an assessment. Thus, a discussion of the "legal fictions" created by the Internal

Revenue Service to flush out the fraud in their unverified and fictitious claims is necessary. The

United States Supreme Court held that:

> *"Although legal fictions are sometimes invented in order to realize judicial concepts of justice, the courts are without power to define the constitutional guaranty of due process of law in terms of a fiction unrelated to reality, without exercising the power to remake constitutional provisions which the Constitution has not given them."* Curry v. McCanless, 307 US 357, 59 S Ct 900, 123 ALR 162.

18. In exposing the fraud routinely committed by unknown employees of the Internal Revenue

Service, the United States Government Accountability Office (GAO) in its issuance of the

Financial Audit report "IRS's Fiscal Years 2007 and 2006 Financial Statements" on page 14

reads:

> *"We found that IRS's financial management systems did not substantially comply with the requirement of the Federal Financial Management Improvement Act of 1996 (FFMIA) as of September 30, 2007. Specifically, IRS's systems did not substantially comply with the Federal Financial Management Systems Requirements (FFMSR), federal accounting standards (U.S. generally accepted accounting principles), and the U.S. Government Standard Ledger (SGL), at the transaction level . . ."*

consistently since 1992 and to this very day – and this is the very system from which the Forms

4340 Certificate of Assessment were created and derived.

19. The issued Forms 4340 Certificate of Assessments were created directly from the

government system audited by the U.S.GAO from which:

> *"The results of a process or a system may be authenticated by evidence describing the process or system used to produce the results and showing that the process or system produces an accurate result. The accuracy of the system or process may be shown by the testimony of lay witnesses concerning the installation."* United States v. Rembert, 863 F.2d 1023, 1026-1228 (D.C. Cir. 1988).

and neither Pat S. Genis nor Linda L. Drake can authenticate the system or give testimony regarding the systems installation.

20. To further punctuate the unreliability of the computer generated and unsupported Forms 4340 Certificate of Assessment, the GAO report is riddled with complaints of compliance violations too voluminous to discuss where:

> **"IRS did not maintain effective internal controls over financial reporting (including safeguarding of assets) or compliance with laws and regulations . . ."**

including errors on taxpayers accounts, wherein the IRS erroneously created a second account for the same taxpayer, making an additional $24 million estate tax assessment into an account with an invalid taxpayer identification number, although the taxpayer had already paid the full amount of the estate tax. *Id.* at page 88.

21. In *Wright v. Commissioner of Internal Revenue*, 381 F.3d 41, 45 (2nd Cir. 2004) the court pointed out:

> "Leaving aside the doubts inspired by the IRS's past calculation errors against *Wright's account*" and was reminded that " . . . **(reliance on internal IRS forms and records may be an abuse of discretion if the taxpayer shows an irregularity in IRS assessment procedures that calls into question the accuracy of such records);** *Davis v. Comm'r,* 115 T.C. 35, 40, 2000 U.S. Tax Ct. LEXIS 48 at **11 (T.C. 2000)."

22.    Declarants Genis and Drake's submission of Forms 4340 Certificate of Assessment appears to be submitted in an attempt to satisfy the *". . . obligation to disclose the factual basis for its assessments,* as

> *". . . taxpayer can never know, unless the Government tells him, what the basis for the assessment is and thus can never show that the Government will certainly be unable to prevail. We agree with Shapiro.*" *Commissioner v. Shapiro*, 424 U.S. 614, 627 and 628 (1976).

23. In *Enochs v. Williams Packing Co.,* 370 U.S. 1, 7 (1962), the Court determined that ". . . *the question will be resolved on the basis of the information available to the Government at*

*the time of the suit.*" upon review, the unsupported standalone Forms 4340 – Certificate of Assessment do not provide any cognizable *basis* of information that could be construed to satisfy this requirement.

24. Like a collection agency sending transcripts of delinquent accounts, neither Declarants Genis nor Drake participated in, nor are they concerned about or aware of, the underlying history or method used by unknown employees of the IRS to assess the liability claimed on the Government transcripts; and they have no firsthand knowledge as to the accuracy or validity of the uncertified transcripts. *"Absent a foundation for receipt of computer generated data, the results of computer operations is hearsay"*; see *United States v. Johnson*, 413 F.2d 1396 (5th Cir. 1969).

25. In *United States v. Wallace*, 323 F.3d 1109 (8th Cir. 2003) the Court ruled that the

> *". . . reasonable person test is necessary to avoid (1) being dependent upon self-serving declarations of agents and . . . (2) placing the burden upon the agents to anticipate the frailties and idiosyncracies of every person whom they question."* *Berkemer*, 468 U.S. at 442 & n. 35, 104 S.Ct. 3138

thus, at best, Declarants Pat S. Genis and Linda L. Drake have acknowledged the existence of Forms 4340 Certificate of Assessment within the meaning of Fed.R.Evid. 902(8).

26. In *S.E.C. v. Phan*, 500 F.3d 895 (9th Cir. 2007) the Court noted that:

> *". . . declarations oftentimes will be 'self-serving'"* *United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir.1999). In most cases, consequently, *"[t]hat an affidavit is selfserving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact." Id. Only in certain instances — such as when a declaration "state[s] only conclusions, and not `such facts as would be admissible in evidence,'" — can a court disregard a selfserving declaration for purposes of summary judgment. Id.* (quoting FED. R. CIV. P. 56(e))"

Thus, neither Declarant Genis nor Drake are cognizable to the material facts presumed to be represented by their submission of Forms 4340. The self-serving declaration submitted by Genis is conclusory, as Genis' personal knowledge is limited to him/her certifying that Exhibits 1

through 5 are "true and correct copies" of IRS Forms 4340 Certificate of Assessment hearsay transcript, and nothing beyond that can be drawn.

27. Declarant Pat S. Genis, Trial Attorney, received the Forms 4340 Certificate of Assessment sent by employee Linda L. Drake. The government computer-generated "transcript," pyramiding an "inference on an inference," is not drawn directly from any known fact capable of forming the basis for the inferred facts from which further inferences can be drawn, and Pat S. Genis is not the actual source from which the transcripts were derived. Pat S. Genis, Trial Attorney, has no firsthand knowledge as to who, what, when, where, how or from what original source of information these transcripts were derived, nor that the computer-generated mathematical computations and accounting methods on the transcripts are accurate. In *Dubois v. Ass'n Apartment Owners*, 453 F.3d 1175 (9th Cir. 2006), the district court properly dismissed for failure of proof determining that:

> ". . . *their uncorroborated and self-serving declarations, which alone do not create any genuine issues of material fact.* See *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002), *Id.* at 1180.

28. In summary, Pat S. Genis has received computer-generated transcripts maintained by a system of records of the Internal Revenue Service. It can be ascertained that Pat S. Genis possesses no firsthand knowledge of the factual basis from which these computations were contrived. Pat S. Genis can only attest to his/her limited knowledge and belief that the uncertified transcript is a true and correct computer-generated printout maintained in an automated data retrieval system controlled by the Government; furthermore, Genius cannot attest to the correctness of the data referenced on the computer-generated government printout, as he/she did not include any documents to support the financial claims alleged therein. The Courts have held that: **"*The summary record, through supporting records . . .*"** (See *Stallard v.*

*United States*, 806 F. Supp. 152 (W.D. Tex. 1992), aff'd 12. F.3d 499 (5th Cir. 1994) are what is necessary to support the presumption of correctness enjoyed by the Government's issuance of Form 4340 - and none have been provided here.

## V.
### Plaintiff Is Not Seeking A Refund Under 26 U.S.C. § 7422, Did Not And Is Not Required To Exhaust Under This Statutory Provision

29. Defendants' Counsel on page 9 § IV at ¶ mischaracterizes that the Plaintiff McKean's complaint in an attempt to convert what is clearly an action for damages against the IRS for unlawful collection activity into one of a claim for a tax refund. This *softheaded* position taken by Counsel would require the alleged [taxpayer] to pay the tax first – a part of the administrative exhaustion under the statute (26 U.S.C § 7422) and citing the most quoted case of *Flora v. United States*, 362 U.S. 145 (1960). Thus, the Defendant erroneously contends that this Court is without jurisdiction because the Plaintiff failed to file a claim for a refund, and that (h)e must pay the tax in full and file a refund claim with the IRS. Although the Court will find that the Plaintiff's claim does not fall within the purview of § 7422 *et seq.*, exhaustion requirement, the Plaintiff notes that in *Howard* the court ruled,

> *"By statutes authorizing suits for tax refunds United States waived sovereign immunity from suit, and did away with necessity of payment under protest in all actions for recovery of taxes." Howard v. United States,* (1942, CA5 La) 125 F.2d 986, 42-1 USTC ¶ 10134, 28 AFTR 1198.

30. With limited but necessary discussion, there is no question that the Plaintiff did not file the Verified Complaint seeking a claim for a refund. When we consider the extortionate fines and penalties alleged by the IRS and compounded at up to an interest rate of 120%, causing the alleged liability to triple, it can be deduced that this statute creates a hardship and is burdensome. Thus, it effectively blocks the Plaintiff's, and most average Citizens', access to the Court with the Supreme Court's "pay first, litigate later" doctrine.

31. This unconstitutional doctrine requires that a potential (idiot), a person not of average intelligence - give the king what he believes to be his booty (although there is no evidence that the person owes it) and then requests its return through the king's courts in a costly, convoluted, complex maze and institutionalized, biased and political judicial forum – with the high probability that he will never recover his property because of the political climate, as recognized in the decision of *Murphy v. Internal Revenue Service*, 05-5139 (D.C. Cir. 2006). Here, *Murphy*, paid the tax first, engaged in nine years of costly litigation, got a favorable ruling from the D.C. Circuit who was pressured and forced by the political, social and judicial powers to ignore binding Supreme Court precedent and change its ruling – and on its own motion, vacated its original ruling that was favorable to *Murphy*, and reinterpreted it to one favorable to the IRS on July 3, 2007, and determined that *Murphy* was not entitled to her refund.

32. What sane person in his right mind would petition to suffer this injustice? Without belaboring the issue, the Plaintiff exhausted his administrative remedies pursuant to 26 U.S.C. § 7433 of the *prima facie* internal revenue laws, and not § 7422. The Plaintiff's property was unlawfully collected by the IRS, compelling the Plaintiff to file an action for damages under 7433 of the [Code]. As the Court records indicate, the Plaintiff has met the requirements of 26 U.S.C. § 7433, rendering the necessity for statutory exhaustion under § 7422 of any kind moot. Thus, the Defendants' motion for summary judgment must be denied as a just and proper remedy.

## VI.
## United States Has Waived Its Sovereign Immunity For The Claims Asserted In A Quiet Title Action Under 28 U.S.C. § 2410

33. Counsel acting on behalf of the United States asserts on page 5 § II, states: ". . . *the Internal Revenue Service and the Social Security Administration must be dismissed as party*

*defendants because, as agencies of the federal government, they are immune from suit . . . "* However, the Plaintiff filed a multi-jurisdictional suit, meticulously citing specific causes of action applicable to the violation of law advanced by unknown employees of the IRS.

34. The Plaintiffs' Verified Compliant enjoined all parties under a single cause of action pursuant to Fed.R.Civ.P. 18 in the interest of judicial economy. The United States Supreme Court held that: *". . . separate grounds for relief arising from the same set of operative facts give rise to but one cause of action."* See *Herns v. Oursler*, 289 U.S. 238, 245-246, 53 S. Ct. 586, 77 L. Ed. 1148 (1933). Thus *". . . if the joined claims do arise from the same case or controversy, the court may exercise supplemental jurisdiction over the claims."* See *Leham v. Revolution Portfolio LLC*, 166 F.3d 389, 394, (1st Cir. 1999).

35. Plaintiff completely agrees, as his Verified Complaint reflects on pages 12 through 15 at Count I, ¶¶ 7 through 25, that he specifically filed a quiet title action to challenge the procedural validity of the Notices of Levy. Nowhere do these separate Counts challenge the merits of the underlying assessment, as Counsel would have this Court believe. The Quiet Title Act at 28 U.S.C. § 2410(a) waives the federal government's sovereign immunity with respect to suits to determine title to real or personal property on which the United States has or claims a lien. See *Harrell v. United States*, 13 F.3d 233, 234 (7th Cir. 1993). *"A federal suit to clear a federal tax lien is governed by federal law – federal common law if the applicable statutes have gaps."* *United States v. Brosnan*, 363 U.S. at 240-42, 80 S.Ct. at 1111-12; *Dupnik v. United States*, 848 F.2d at 1484; *McEndree v. Wilson*, 774 F. Supp. At 1295-96. As the court stated: *"All the quiet-title act does is waive sovereign immunity."*

*36.* Counsel for the United States admits in § III, page 8 of his/her memorandum that *"Section 6213 also provides that no assessment or collection activity may be done until the expiration*

*of the 90-dy or 150-day period, or if a Tax Court petition has been filed, until a decision is*

*reached. 26 U.S.C. § 6213."* In this case, Plaintiff either rescinded or did not receive the

Notices of Deficiency — which calls the procedural validity of the levies issued into question.

37. In *Aqua Bar & Lounge, Inc. v. U.S. Dept. of Treasury*, 539 F.2d 935, 937, 938-39 (3rd Cir.

1976), the Plaintiff was permitted to challenge the procedural validity of the liens. In *Aqua Bar*

the court,

> *". . . turn first to the question of whether, based on the allegations contained in the complaint, this suit may be treated as an action to quiet title to property on which the United States has a lien. We think that this question must be answered in the affirmative . . . Not only are we unpersuaded by the government's arguments for prohibiting a taxpayer from bringing a properly limited suit against the United States under § 2410, we also find strong policy reasons for permitting such an action." Id.* 937, 939 and 940.

> The inviolability of private ownership has long been a fundamental principle of our nation's jurisprudence. See *Thatcher v. Powell*, 19 U.S. 119, 125 (1821), 5 L.Ed. 221. In recognition of this principle, Congress has imposed precise strictures on the seizure and sale of an individual's property by the IRS to satisfy legitimate tax deficiencies. These provisions, which the Plaintiff contends were not complied with in the instant case, are for the obvious protection of the taxpayer faced with the loss of their property. *Reece v. Scoggins*, 506 F.2d 967, 971 (5th Cir. 1975). *Yet, if § 2410 is construed to lift the barrier of sovereign immunity only to actions brought by parties other than the taxpayer whose property is at stake, <u>the taxpayer would have no available means of enforcing compliance with the procedures enacted for their benefit. In the absence of a Congressional directive to the contrary, we refuse to place such a narrowing construction on § 2410 and thus deprive a taxpayer of any remedy against arbitrary administrative action.</u> We therefore hold that § 2410 constitutes a waiver of sovereign immunity to a suit brought by a taxpayer against the United States which challenges the validity of a federal tax lien* and sale so long as the taxpayer refrains from contesting the merits of the underlying tax assessment itself. *The district court thus had jurisdiction to hear this action under that provision in combination with 28 U.S.C. § 1340."*

38. The Court went on to explain:

> *"It does not authorize quiet-title suits; it does not confer federal jurisdiction over them; it merely clears away the obstacle that sovereign immunity would otherwise place in the path of such a suit. Harrell* has no problem, *however, finding a basis for federal jurisdiction for their quiet-title suit; it is 28 U.S.C. § 1340, which bestows on the federal district courts original jurisdiction of any civil action*

> *arising under the internal revenue laws.* See *Harrell v. United States*, 13 F.3d 232
> (7th Cir. 1993)."

39. As cited in the Plaintiff's Complaint at page 2, ¶ 1, the jurisdictional requisites are complete,

as in this instant case, the United States is the proper party and the authority to file the quiet title

action has been established under the internal revenue laws, *Id.* Plaintiff has successfully stated

a quiet-title action in his complaint, pursuant to 28 U.S.C. § 2410; therefore, Defendants'

motion for summary judgment must be denied.

## VII.
### Mr. McKean Foreclosed On The Exhaustion Of His Administrative
### Remedies, Leaving This Court With Subject Matter Jurisdiction

40. Counsel for the UNITED STATES erroneously asserts on page 11, ¶ 3 that *"under section*

*7433(a), prior to bringing a suit... a taxpayer must exhaust his administrative remedies"* and

at page 12 ¶ 3 he states: *"In this case, plaintiff filed an administrative claim for damages for*

*the Avanta levy, but not for the levies of plaintiff's social security benefits."* Again Counsel's

assertions are not only incorrect, but also intentionally misleading, as the Plaintiff McKean

satisfied exhaustion under both 7432 and 7433. Although the Supreme Court recently held in

*Jones v. Bock*, __U.S.__, 127 S. Ct. 910 (2007), that the:

> *"failure to exhaust [administrative] remedies is no basis for dismissal [under*
> *Federal Rule of Civil Procedure 12(b)(6)], but is, rather, an affirmative defense."*
> See also *Jones* __ U.S. at __, 127 S.Ct. at 920-21 (holding that an exhaustion
> defense cannot be "subsumed" within the larger rubric of the defense of "failure to
> state a claim" under Rule(12)(b)(6) because *"[w]hether a particular ground for*
> *opposing a claim may be basis for dismissal for failure to state a claim depends on*
> *whether the allegations in the complaint suffice to establish that ground, not the*
> *nature of the ground in the abstract"*),

41. Plaintiff has exhausted his administrative remedies and meticulously spelled out his

exhaustion, as stated in his Verified Complaint on pages 6 through 8, and pages 10 through 12,

fully establishing the occurrence of events leading up to his exhaustion under § 7433 – that

includes exhibits in support of said exhaustion, as it can get no clearer than that. As the Plaintiff's Verified Complaint and supporting exhibits clearly establish, he has documentary evidence of having administratively petitioned the IRS, on numerous occasions, in an attempt to resolve those matters. During the entire administrative process the IRS made their hardline position clear and have refused or denied all claims filed by McKean and have been unwilling to resolve his concerns regarding the alleged tax liability.

> *"An adverse decision can also be certain if an agency has articulated a clear position on the issue which it has demonstrated it would be unwilling to reconsider."* Id. (citing *Etelson v. Office of Pers. Mgmt.*, 684 F.2d 918, 925 (D.C. Cir. 1982).

42. It is important to note that these written claims were addressed and mailed to the Area 11 Director, Compliance Technical Support Manager, at 600 17th Street, Denver, CO 80202-2490, as well as Donald L. Korb, Chief Counsel, the U.S. Attorney General and others, which the IRS ignored, like it routinely does to those exercising their right of redress of grievance. Plaintiff has properly exhausted his administrative remedies and no more is necessary to establish that exhaustion has come to fruition in this instant case; and the UNITED STATES Defendants have waived sovereign immunity and have consented to being sued. There is no question that the Plaintiff has fully exhausted his remedies under §§ 7432 and 7433 of the Code. Therefore, the Court must deny the UNITED STATES' motion for summary judgment.

## VIII.
### The Legally Fictitious Notices Of Deficiency Were Rescinded By Mr. McKean, Rendering The Issuance Of The Notices Null And Void

43. Counsel for the UNITED STATES asserts in § VII, page 15, ¶ 2: *"plaintiff seeks to assert that his claims fall within an exception to the Anti-Injunction Act, since it alleges violations of sections 6212 and 6213,"* and went on to state that "*however, the Internal Revenue Service*

*fully complied with sections 6212 and 6213. Therefore Plaintiff is not entitled to injunctive relief,*" however, Plaintiff rescinded Notices of Deficiency for tax years ending 1999, 2000 and 2001. (26 U.S.C. § 6212(d)).

44. As the record indicates, in response to the Notices of Deficiency, the Plaintiff filed a "Petition of Protest and Notice of Defense" to rescind Notices of Deficiency due to the failure of the Defendants to disclose statutory method of accounting pursuant to 26 U.S.C. § 446 of the internal revenue laws. The notices basis of liability and presumed assessments, merely ambiguously cited as "INDIVIDUAL INCOME" tax does not satisfy an assessment and notice requirement within the meaning of 26 U.S.C. § 6201. Therefore, the Plaintiff exercised the right to rescind the notices of deficiency pursuant to 26 U.S.C. § 6212 (d), which states in pertinent part:

> *"The Secretary may, with the consent of the taxpayer, rescind any notice of deficiency mailed to the taxpayer. Any notice so rescinded shall not be treated as a notice of deficiency. . . and the taxpayer shall have no right to file a petition with the Tax Court based on such notice."*

45. Hence, the Plaintiff was statutorily barred from petitioning the Tax Court, as it was the duty of the Defendants to administratively respond to and to dispose of the notice to rescind the deficiency that the Plaintiff disputed and contested. Furthermore, the Plaintiff raised issues of both a constitutional and equitable nature, and cannot be heard by the United States Tax Court, which is an Article I administrative court, not created under any act of Congress. (see 28 U.S.C. § 3002(2)). In *Wright v. Commissioner of Internal Revenue*, 381 F.3d 41 (2nd Cir. 2004), the court pointed to the binding precedent of the Supreme Court and reiterated:

> "The Tax Court is an Article I *"court of limited jurisdiction and lacks general equitable powers." Comm'r v. McCoy,* 484 U.S. 3, 7 (1987) (per curiam). *Its subject matter jurisdiction is statutorily granted by 26 U.S.C. § 7442, and is defined and limited by Title 26 of the United States Code. Estate of Branson,* 264 F.3d at 908. See also *Gorospe v. Commissioner of Internal Revenue*, 04-73277 (9th Cir. 2006)

46. The Plaintiff, with the knowledge that the Tax Court is a court of limited jurisdiction and has no constitutional or equitable powers, did not seek to petition the administrative court to resolve matters beyond the scope of its authority.

47. IRS Treasury Regulations at 26 CFR § 601.201(a)(1) states in pertinent part,

> *"It is the practice of the Internal Revenue Service to answer inquiries of individuals and organizations, as to their status for tax purposes, and as to the tax effects of their acts or transaction,"*

yet the IRS, presumed to be acting on behalf of the United States, seeking to deprive the Plaintiff of his personal and real property, has never complied with this regulation. The Supreme Court has repeatedly stated that due process of law commands,

> *". . . if government action will deprive an individual of a significant property interest, that individual is entitled to an opportunity to be heard."* Boddie v. Connecticut, 401 U.S. 371, 379, 91 S. Ct. 780, 786, 28 L. Ed.2d 113 (1971). Emphasis added.

48. In a brief but necessary discussion, the Plaintiff will clarify his reasonableness for rescinding the notices of deficiency, as they are "void for vagueness." To begin, the Notices of Deficiency are "legal fictions." The Defendants entered evidence Forms 5564 – "NOTICE OF DEFICIENCY – WAIVER," that references tax years ending December 31, 1996 through 2002, and Plaintiff contested IRS's clerically flawed and inaccurate assessment, computations of penalties and interest associated therewith. In every instance Forms 5564 identify the **"Kind of Tax"** as **"INDIVIDUAL INCOME**," but DID NOT identify the specific statutory tax under the IRC that imposed the initial liability. This is significant when we consider that the Forms clearly identify 6662(a) and 6662(b)(1) as *specific IRC Sections imposing alleged penalty assessments*.

49. Plaintiff asserts that any man or woman of average intelligence would conclude that before there can be an assessment of penalties and interest, there must first be a code section establishing and identifying the statutory *basis* and authority to assess a liability. Identifying "**Kind of Tax**" as "**INDIVIDUAL INCOME**" *does NOT identify a statutory tax liability* imposed under the internal revenue laws. **Just as the Defendants are able to identify the code sections that assessed Plaintiff penalties and interest, it is fundamental and reasonable that they should also be able to identify the tax imposed**.

50. As indicated on their face, the Notices of Deficiency do not comply with 26 U.S.C. § 7491, which states that prior to assessment, a tax liability must be imposed by some statute identifiable within the Code. It is axiomatic that

> "*. . . the collection of taxes should be extracted only from persons upon whom a tax liability is imposed by some statute*". *Botta v. Scanlon*, 288 F.2d 504, 506 (1961).

51. Thus, the prerequisite to having "INDIVIDUAL INCOME" is the ability to identify the statutory tax imposed that would identify with particularity what "INDIVIDUAL INCOME" the Plaintiff has been made statutorily liable and therefore assessed.

52. The Plaintiff notes the United States Supreme Court's own admitted confusion of what Congress intended regarding what constitutes "taxable income" in so stating:

> ". . . 26 USC 1 and 3 . . . *impose a tax on the taxable income, "of every individual's*." *The statutes however, have not specified what that phrase includes. The Act goes no farther, and furnishes no other standard or definition of what constitutes an individual's income*." See *United States v. Mitchell*, 403 U.S. 190 (1971) at 194 and 195 (Emphasis Added).

53. The obvious question is, if the Supreme Court cannot readily determine what "**constitutes an individual's income**," under what specific statutory authority and accounting method did the Defendants compute the alleged liabilities? The Notices of Deficiency ambiguously allege

the Plaintiff's unknown tax liability as "INDIVIDUAL INCOME," which is not a statutory tax

imposed identifiable under the internal revenue laws.

> "*Without question, a taxing statute must describe with some certainty the transaction, service, or object to be taxed, and in the typical situation it is construed against the Government.*" *United States v. Community TV, Inc.*, 327 F.2d 797 (10th Cir. 1964), and *Hassett v. Welch*, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938);

54. The Notices of Deficiency for tax years 1996, 1997, 1998, 1999, 2000, 2001, and 2002

clearly identify the "Kind of Tax" as "INDIVIDUAL INCOME" – and this is NOT a tax under

the internal revenue laws that imposes the liability pursuant to any Act of Congress and does

NOT identify the statutory tax imposed under the internal revenue laws.

55. The United States Supreme Court held in *Heiner v. Donnan*, 285 U.S. 312 (1932):

> "*. . . a statute which imposes a tax upon an assumption of fact which the [presumed] taxpayer is forbidden to controvert is so arbitrary and unreasonable that it cannot stand under the Fourteenth Amendment.*"

56. In *Commissioner v. Shapiro*, 424 U.S. 614, 616-617, the Court held that:

> "*. . . the Internal Revenue Service may not "assess" a tax or collect it, by levying on or otherwise seizing a taxpayer's assets, until the taxpayer has had an opportunity to exhaust his administrative remedies, which include an opportunity to litigate his tax liability fully in the Tax Court, 26 U.S.C. § 6212, 6213 . . . and if the Internal Revenue Service does attempt to collect the tax by levy or otherwise, before such exhaustion of remedies in violation of § 6213, the collection is not protected by the Anti-Injunction Act and may be restrained by a United States district court at the instance of the taxpayer. §§ 6213(a), 7421(a).*"

57. The Anti-Injunction Act precludes this Court from exercising jurisdiction over actions that

seek to restrain the assessment and collection of federal income taxes.

Section 7421(a) of the Internal Revenue Code provides in relevant part as follows:

"(a) Tax. Except as provided in sections 6015 (e), 6212 (a) and (c), 6213 (a), 6225 (b), 6246 (b), 6330 (e)(1), 6331 (i), 6672 (c), 6694 (c), and 7426 (a) and (b)(1), 7429 (b) and 7436, *no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person,* whether or not such person is the person against whom such tax was assessed."

58. As cited in the Plaintiff's Verified Complaint on pages 12 through 16, Counts I, II and III,

cogent documentary evidence concludes that the IRS has proceeded in violation of 26 U.S.C. §§

6212(a), 6213(a), 6751(b), giving rise to an action cognizable under 7429(a)(1), as the Plaintiff

effectively demonstrated that the jurisdictional bar of the AIA is waived by the UNITED

STATES at 26 U.S.C. § 7421(a) when the IRS failed to comply with 26 U.S.C. §§ 6212(a) and

6213(a) and did not issue any Notices of Deficiency prior to filing the administrative Notices of

Levy – one of the exceptions to the AIA.

59. The fact that the Plaintiff exercised the right to formally rescind the Notices of Deficiency

pursuant to 26 U.S.C. § 6212(d) renders said notices a nullity. After rescinding the notices, IRS

was required to reissue new Notices of Deficiency that disclosed its method of computation, and

they did not.  Therefore, the Court must deny the UNITED STATES' motion for summary

judgment and compel the Defendants to answer the Plaintiff's Complaint as the only just and

proper remedy.

## IX.
## Summary, Conclusion And Prayer For Relief

The Plaintiff, Jay McKean, has presented cogent and irrefutable documentary evidence before

this Court that the IRS proceeded in the unlawful collection activity and did not have the

authority to redefine and contrive false financial claims against McKean under color of the

internal revenue laws and must be held accountable for their nonfeasance, misfeasance, and

malfeasance of office. Plaintiff McKean effectively disputes the following genuine issues of

material facts:

(a) Unknown employees of IRS engaged in unlawful collection activity and proceeded under

color of the *prima facie* internal revenue laws to simulated legal process and cause "legally

fictitious" Notices of Deficiency, Notices of Levy, Notices of Federal Tax Lien and Forms 4340 – Certificate of Assessment to issue and unlawfully take Plaintiff's property.

(b) Unknown employees of IRS engaged in unlawful collection activity and proceeded under color of the *prima facie* internal revenue laws when they well knew Plaintiff McKean did not earn income, taxable income or gross income.

(c) Unknown employees of IRS engaged in unlawful collection activity and proceeded under color of the *prima facie* internal revenue laws when they knew the Plaintiff McKean exercised the right to rescind the legally fictitious Notices of Deficiency that do not comply with the statutory method of accounting required pursuant to 26 U.S.C. § 446 *et seq.*, of this act of Congress.

(d) Unknown employees of the IRS engaged in unlawful collection activity and proceeded under color of the *prima facie* internal revenue laws when they knew the Plaintiff McKean was never offered a Collection Due Process hearing as required by 26 U.S.C. § 6330(e) of the internal revenue laws prior to causing the Notices of Levy to issue.

(e) Unknown employees of IRS engaged in unlawful collection activity and proceeded under color of the prima facie internal revenue laws when they did not assess Plaintiff McKean according to the method of accounting proscribed by an act of Congress and did an exaction of a naked assessment against his personal property as forbidden by *United States v. Janis*, 428 U.S. 433 (1976).

(f) Unknown employees of IRS engaged in unlawful collection activity and proceeded under color of the prima facie internal revenue laws when they intentionally misrepresented the law to third parties and submitted several false instrument for filing titled "Notices of Levy," resulting in the extortion of Plaintiff McKean's personal property.

(g) Unknown employees of IRS engaged in unlawful collection activity and proceeded under color of the prima facie internal revenue laws when they knew they were required to obtain approval from the Secretary prior to issuing frivolous filing penalties against Plaintiff McKean's property.

**WHEREFORE**, in consideration of the foregoing, stated herein above, and in the interest of justice and considering the entire record, Plaintiff moves this Honorable Court to deny the Defendants' Motion For Summary Judgment and order Defendants to answer the Verified Complaint as the only just and proper remedy.

Respectfully submitted.

## VERIFICATION

I, Jay McKean, declare under penalty of perjury pursuant to 28 U.S.C. § 1746(1) and under the laws of the United States of America that I believe the above to be true and correct to the best of my knowledge, understanding and belief. All Rights retained without recourse.

On this 24 day of June 2008

_Jay McKean_
Jay McKean, Plaintiff

## CERTIFICATE OF SERVICE

I, <u>Jay McKean</u>, hereby certify that on the 24 day of June 2008, I served a true and correct copy of the above "Plaintiff's Response to Defendant United States' Motion For Summary Judgment" with Memorandum of Law and Brief in Support and Declaration with Exhibits and Proposed Order by first-class mail, postage fully prepaid and addressed as follows:

Pat S. Genis
US Department of Justice
Post Office Box 227
Ben Franklin Station
Washington, DC 20044

Jay McKean

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Jay McKean, a sentient human being, | ) | Civil No. 1:07-cv-02202-ESH |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| UNITED STATES, a Federal corporation, et al., | ) | |
| Defendants. | ) | |

The Court, having considered Jay McKean's Response to the United States' Motion for Summary Judgment and having reviewed all documents and papers filed in connection with this matter, and any reply thereto, concludes that the United States' Motion for Summary Judgment should be denied. Accordingly, on this ____ day of _____, 2008, it is

**ORDERED** that the United States' Motion for Summary Judgment for lack of subject matter jurisdiction and for failure to state a claim is DENIED; it is further

**ORDERED** that the United States shall answer the Complaint within 20 days from the date of this Order; it is further

**ORDERED** that the Clerk shall distribute conformed copies of this order to the representative of the parties listed below.

_____
United States District Judge

1

**EXHIBIT A:**

GAO FINANCIAL AUDIT - IRS's Fiscal Years 2007 and 2006 Financial Statements
(51 pages)

United States Government Accountability Office

# GAO

Report to the Secretary of the Treasury

November 2007

# FINANCIAL AUDIT

# IRS's Fiscal Years 2007 and 2006 Financial Statements



**G A O**
Accountability ★ Integrity ★ Reliability

GAO-08-166



# GAO
# Highlights

Highlights of GAO-08-166, a report to the Secretary of the Treasury

November 2007

# FINANCIAL AUDIT

## IRS's Fiscal Years 2007 and 2006 Financial Statements

## Why GAO Did This Study

Because of the significance of Internal Revenue Service (IRS) collections to overall federal receipts and, in turn, to the consolidated financial statements of the U.S. government, which GAO is required to audit, and Congress's interest in financial management at IRS, GAO audits IRS's financial statements annually to determine whether (1) the financial statements are reliable, and (2) IRS management maintained effective internal controls. GAO also tests IRS's compliance with selected provisions of significant laws and regulations and its financial systems' compliance with the Federal Financial Management Improvement Act of 1996 (FFMIA).

## What GAO Recommends

Based on prior audits, GAO made numerous recommendations to IRS to address the internal control and compliance issues that persisted during fiscal year 2007. GAO will continue to monitor IRS's progress in implementing the 144 recommendations that remain open as of the date of this report, of which 69 relate to the material weakness in information security.

IRS agreed with the report's findings and noted that it fairly presented IRS's progress and challenges. IRS noted that improving information security continues to be a priority, and that it has a solid management team in place to address remaining financial management challenges.

For a fuller understanding of GAO's opinion on IRS's fiscal years 2007 and 2006 financial statements, readers should refer to the complete audit report, available by clicking on GAO-08-166, which includes information on audit objectives, scope, and methodology. For more information, contact Steven J. Sebastian, (202) 512-3406, sebastians@gao.gov.

## What GAO Found

In GAO's opinion, IRS's fiscal years 2007 and 2006 financial statements are fairly presented in all material respects. However, serious internal control and financial management systems deficiencies continued to make it necessary for IRS to rely on resource-intensive compensating processes to prepare its financial statements. Because of these and other deficiencies, IRS did not, in GAO's opinion, maintain effective internal controls over financial reporting (including safeguarding of assets) or compliance with laws and regulations, and thus did not provide reasonable assurance that losses, misstatements, and noncompliance with laws and regulations material in relation to the financial statements would be prevented or detected on a timely basis.

IRS has continued to make significant strides in addressing its financial management challenges and has substantially mitigated several material weaknesses in its internal controls. For example, IRS (1) enhanced its reporting of tax receipts and accelerated its certification of excise tax receipts to recipient trust funds, (2) issued its first cost accounting policy to serve as guidance for costing its services and activities, (3) enhanced its use of available information to better target collection efforts on outstanding tax debt and reduce the risk of improper refund disbursements, and (4) made progress in establishing the framework for implementing a subsidiary ledger for its tax administration activities. However, IRS's ability to fully address its remaining financial management issues largely depends on addressing the limitations of its automated systems used to process tax-related activities. IRS has also not determined how to apply the cost information that resides in its core general ledger system for non-tax activities to the activities processed by its separate tax processing systems. Thus, it is unclear how or when these issues will be resolved. GAO continues to consider issues related to IRS's controls over financial reporting, management of unpaid assessments, collection of revenue and issuance of tax refunds, and information security to be material weaknesses. Additionally, while IRS continued to make progress in addressing weaknesses in controls over hard-copy taxpayer receipts and data, GAO concluded that remaining issues related to this activity constituted a significant deficiency. Also, GAO found that IRS was not always in compliance with the law concerning the timely release of tax liens.

IRS management faces serious challenges from its continued use of obsolete financial management systems that do not conform to the requirements of FFMIA. These challenges adversely affect IRS's ability to fulfill its responsibilities as the nation's tax collector because it is unable to routinely obtain comprehensive, timely, accurate, and useful information for day-to-day decision making. In addition, as IRS continues to progress toward ever more automated financial management processes, the presence of material weaknesses in controls over these systems, especially in the area of information security, could have serious implications for our ability to determine whether IRS's financial statements are fairly stated.

_____ **United States Government Accountability Office**

# Contents

| | | |
|---|---|---|
| **Letter** | | 1 |
| **Auditor's Report** | | 6 |
| | Opinion on IRS's Financial Statements | 11 |
| | Opinion on Internal Controls | 11 |
| | Compliance with Laws and Regulations | 13 |
| | Systems Compliance with the Requirements of FFMIA | 14 |
| | Consistency of Other Information | 15 |
| | Objectives, Scope, and Methodology | 15 |
| | Agency Comments and Our Evaluation | 16 |
| **Management Discussion and Analysis** | | 18 |
| **Financial Statements** | | 51 |
| | Balance Sheets | 52 |
| | Statements of Net Cost | 53 |
| | Statements of Changes in Net Position | 54 |
| | Statements of Budgetary Resources | 55 |
| | Statements of Custodial Activity | 56 |
| | Notes to the Financial Statements | 57 |
| **Required Supplementary Information** | | 76 |
| **Other Accompanying Information** | | 78 |
| **Appendixes** | | |
| | Appendix I: **Material Weaknesses, Significant Deficiency, and Compliance Issues** | 83 |
| | Material Weaknesses | 83 |

Contents

|                  | Significant Deficiency                          | 99  |
|                  | Compliance Issues                               | 102 |
| Appendix II:     | Details on Audit Methodology                    | 108 |
| Appendix III:    | Comments from the Internal Revenue Service      | 110 |

This is a work of the U.S. government and is not subject to copyright protection in the
United States. The published product may be reproduced and distributed in its entirety
without further permission from GAO. However, because this work may contain
copyrighted images or other material, permission from the copyright holder may be
necessary if you wish to reproduce this material separately.



**Comptroller General
of the United States**

**United States Government Accountability Office
Washington, D.C. 20548**

November 9, 2007

The Honorable Henry M. Paulson, Jr.
The Secretary of the Treasury

Dear Mr. Secretary:

The accompanying report presents the results of our audits of the financial statements of the Internal Revenue Service (IRS) as of, and for the fiscal years ending, September 30, 2007, and 2006. We performed our audits in accordance with the Chief Financial Officers (CFO) Act of 1990, as expanded by the Government Management Reform Act of 1994. This report contains our (1) unqualified opinions on IRS's financial statements, (2) opinion that IRS's internal controls were not effective as of September 30, 2007, (3) conclusion that IRS did not comply with one provision of the laws and regulations we tested, and (4) conclusion that IRS's financial management systems were not in substantial compliance with the requirements of the Federal Financial Management Improvement Act of 1996 as of September 30, 2007.

Our unqualified opinions on IRS's fiscal years 2007 and 2006 financial statements were made possible in part by the continued extraordinary efforts of IRS senior management and staff to compensate for serious internal control and financial management systems deficiencies. IRS is currently in the midst of a major business systems modernization that is ultimately intended to resolve its most serious financial systems challenges. However, it is unclear when this effort will be completed or if it will be fully successful. In the interim, preparing reliable financial statements will continue to be a difficult challenge for IRS, requiring continued reliance on extraordinary compensating measures. To date, these measures have proved successful: for the eighth consecutive year, we have been able to render an unqualified opinion on IRS's financial statements.

IRS has made great strides over the last several years in addressing its financial management challenges and has resolved or substantially mitigated several material weaknesses and other less significant weaknesses in its internal controls. This progress continued in fiscal year 2007. For example, during fiscal year 2007, IRS accelerated the certification of excise tax receipts, thereby improving the timeliness of distributions of such taxes to recipient trust funds. IRS also has begun presenting estimates of its Social Security and Medicare tax collections in other information

accompanying its financial statements, and presenting the most recent available information on the amount of excise tax receipts certified to the Airport and Airways, Black Lung Disability, and Highway Trust Funds in its Management Discussion and Analysis. These actions enhanced the quality and disclosure of the information presented to financial statement users, and enabled us to conclude that these reporting issues no longer constitute internal control deficiencies. IRS also made notable progress in using existing management information to enable it to make more informed decisions regarding collection of unpaid taxes and payment of refunds. However, IRS has not yet developed the agencywide cost-benefit information needed to assist in determining the optimum level of resources to devote to maximizing collections of unpaid taxes and minimizing payments of improper tax refunds in the context of its overall mission and responsibilities, or to develop related cost-based performance measures to assist in monitoring progress and adjusting strategies to better address areas of noncompliance. IRS developed a cost accounting policy during fiscal year 2007 that provides guidance on managerial cost concepts for the agency, and has initiated cost pilot projects to explore ways to apply its cost information to its various activities. These actions represent a major step forward for IRS in its efforts to develop the cost-benefit information it needs to make better informed managerial decisions. However, the results of the cost pilots are not expected until the last quarter of fiscal year 2008, and how effectively IRS will apply the cost principles embodied in its new policy remains unclear. In addition, IRS has continued to progress in its efforts to develop detailed subsidiary records for its tax administrative activities, but much remains to be done on this multiyear effort. IRS has also continued to improve controls over hard-copy taxpayer receipts and information at its submission processing centers and lockbox banks. However, IRS has not yet reduced the risk of loss of taxpayer receipts and information to an acceptable level.

IRS cannot fully address the financial management issues caused by the limitations of its automated financial management systems without additional modernization. In formulating its strategy for dealing with these issues, IRS will also need to address how it will ultimately apply cost information to its tax administration functions, including collection of taxes, payment of tax refunds, and management of unpaid tax assessments, which are accounted for in automated systems that are physically separate from the Integrated Financial System that encompasses IRS's cost module. As noted above, IRS has initiated several pilot projects intended to explore ways of addressing this issue, but the ultimate solution remains unclear. In 1995, we designated financial management and systems modernization at

IRS as high-risk areas.[1] We continue to consider these issues as high risk and include them in our Business Systems Modernization high-risk area.[2]

Among the most serious financial management issues still remaining to be addressed is the continued material weakness in IRS's information security. As IRS continues its efforts to modernize its financial and operational systems, it is critical that IRS take actions to establish and maintain more effective information security controls on a continuing basis, through an ongoing cycle of risk management activities, to protect the processing, storage, and transmission of financial and sensitive data. Until IRS successfully manages its information security risks, management will not have adequate assurance of the integrity and reliability of the information generated from its financial management systems. In addition, as IRS continues to progress toward ever more automated financial management processes, options for alternate procedures to verify the accuracy of the information contained in these systems without relying on automated controls within them diminish. If IRS does not resolve this issue before these options disappear, it could have serious implications for our ability to determine whether IRS's financial statements are fairly stated.

We commend IRS for the improvements it has continued to make in its financial processes and operations. The agency has made substantial progress in improving its financial management since our first attempt to audit its financial statements in fiscal year 1992. Nonetheless, IRS management and staff will continue to be challenged to sustain the level of extraordinary effort needed to produce reliable financial statements that it has demonstrated over the past 8 years. Until the agency is able to fully address the underlying systems and internal control issues that have made this process so time consuming and resource intensive, such efforts will continue to be necessary. While it has made important progress, IRS continues to lack accurate, useful, and timely financial information and sound controls with which to make fully informed decisions day-to-day and to ensure ongoing accountability, which is a primary objective of the CFO Act. It is therefore important that its financial management initiatives continue in order to achieve comprehensive and lasting financial management reform.

---

[1] GAO, *High-Risk Series: An Overview*, GAO/HR-95-1 (Washington, D.C.: February 1995).

[2] GAO, *High-Risk Series: An Update*, GAO-07-310 (Washington, D.C.: January 2007).

IRS also continues to face a significant challenge in strengthening its enforcement of the nation's tax laws, another challenge that we have designated as high risk.[3] As we have previously reported, the resources IRS has been able to dedicate to enforcing the tax laws have not kept pace with the increases it has seen in its enforcement workload. At the same time, IRS continues to face significant compliance-related issues, including combating abusive tax shelters and tax schemes, on which it is placing a high priority. Critical to IRS's efforts in improving enforcement and, ultimately, taxpayer compliance, is the need to have current information on the rate of compliance, both overall and by type of taxpayer. In 2006, IRS completed a study of the rate of compliance with the nation's tax laws by individuals and some small business taxpayers, and is in the process of conducting a study of S-corporations' compliance.[4] In October 2007, IRS also initiated a study of individual income reporting compliance, and has requested funding for fiscal year 2008 to support multiple, simultaneous compliance studies, potentially including corporate taxpayers, partnerships, employment taxpayers, or tax-exempt entities. However, until such studies have been conducted, and the results analyzed, IRS will lack current information on compliance rates. Additionally, the continued lack of reliable cost-benefit information and a systematic, agencywide strategy to effectively employ it will hamper IRS's ability to make the most effective use of the information acquired during such efforts to enable IRS to better fulfill its mission.

The accompanying report also discusses other significant issues that we identified in performing our audit that we believe should be brought to the attention of IRS management and users of IRS's financial statements.

We are sending copies of this report to the Chairmen and Ranking Members of the Senate Committee on Appropriations; Senate Committee on Finance; Senate Committee on Homeland Security and Governmental Affairs; Subcommittee on Taxation and IRS Oversight, Senate Committee on Finance; House Committee on Appropriations; House Committee on Ways and Means; and House Committee on Oversight and Government Reform. We are also sending copies of this report to the Chairman and Vice

---

[3]GAO-07-310.

[4]An S-corporation is a corporation with a limited number of stockholders (100 or fewer) that elects not to be taxed as a regular corporation and meets certain other requirements.

Chairman of the Joint Committee on Taxation, the Acting Commissioner of Internal Revenue, the Director of the Office of Management and Budget, the Chairman of the IRS Oversight Board, and other interested parties. The report is available at no charge on GAO's Web site at http://www.gao.gov.

This report was prepared under the direction of Steven J. Sebastian, Director, Financial Management and Assurance, who can be reached at (202) 512-3406 or sebastians@gao.gov. If I can be of further assistance, please call me at (202) 512-5500. Contact points for our Offices of Congressional Relations and Public Affairs may be found on the last page of this report.

Sincerely yours,

David M. Walker
Comptroller General
of the United States



**G A O**

United States Government Accountability Office
Washington, D.C. 20548

**Comptroller General
of the United States**

To the Acting Commissioner of Internal Revenue

In accordance with the Chief Financial Officers (CFO) Act of 1990, as
expanded by the Government Management Reform Act of 1994,[1] this report
presents the results of our audits of the financial statements of the Internal
Revenue Service (IRS) for fiscal years 2007 and 2006. The financial
statements report the assets, liabilities, net position, net costs, changes in
net position, budgetary resources, and custodial activity related to IRS's
administration of its responsibilities for implementing federal tax
legislation. The financial statements do not include an estimate of the
amount of taxes that are owed the federal government but have not been
paid by taxpayers, often referred to as the tax gap,[2] nor do they include
information on tax expenditures.[3]

In its role as the nation's tax collector, IRS has a demanding responsibility
in collecting taxes, processing tax returns, and enforcing the nation's tax
laws. IRS is a large and complex organization, adding unique operational
challenges for management. IRS employs tens of thousands of people in its
Washington, D.C., headquarters, 10 service center campuses, 3 computing
centers, and numerous other field offices throughout the United States. In
fiscal years 2007 and 2006, IRS collected about $2.7 trillion and $2.5 trillion,
respectively, in tax payments; processed hundreds of millions of tax and
information returns; and paid about $292 billion and $277 billion,
respectively, in refunds to taxpayers.

One of the largest obstacles continuing to face IRS management is the
agency's lack of an effective financial management system capable of
producing the reliable, useful, and timely information IRS managers need

---

[1]CFO Act of 1990, Pub. L. No. 101-576, 104 Stat. 2838 (Nov. 15, 1990); Government
Management Reform Act of 1994, Pub. L. No. 103-356, 108 Stat. 3410 (Oct. 13, 1994).

[2]IRS includes an estimate of the tax gap in its Management Discussion and Analysis and in
the other accompanying information to the financial statements. This estimate is based on a
study conducted to measure the compliance rate of individual filers based on an
examination of a statistical sample of tax returns filed for tax year 2001.

[3]Tax expenditures are revenue losses—the amount of revenue that the government
forgoes—resulting from federal tax law provisions that (1) allow a special exclusion,
exemption, or deduction from gross income, or (2) provide a special credit, preferential
rate, or deferred tax liability. Under U.S. generally accepted accounting principles, tax
expenditure amounts are not required to be disclosed as part of federal agencies' financial
statements, but certain information on tax expenditures can be included as other
accompanying information to the financial statements.

to assist in making day-to-day decisions, which is a primary objective of the CFO Act. IRS continued to make progress in modernizing its financial management capabilities, and continued to make strides in addressing its financial management challenges. IRS nonetheless continued to confront many of the pervasive internal control weaknesses that we have reported each year since our first attempt to audit its financial statements in fiscal year 1992.[4] In fiscal year 2007, for the eighth consecutive year, IRS was able to produce financial statements covering its tax administration and nontax administrative activities that are fairly stated in all material respects. However, until IRS resolves the issues affecting the automated systems it relies on to process the administration of tax-related transactions, it will continue to be challenged to sustain the level of effort needed to produce reliable financial statements in a timely manner.

During fiscal year 2007, IRS continued to make significant progress in its efforts to address its weaknesses in controls over several critical areas, including reliability of financial reporting, management of unpaid tax assessments, collections of unpaid taxes and disbursements of improper tax refunds, and security over hard-copy taxpayer receipts and refunds. For example, IRS separately reported estimated receipts of Social Security and Medicare taxes in the other accompanying information to its financial statements, and significantly accelerated its certification of excise tax receipts to the recipient trust funds. On the basis of these improvements, we no longer consider these matters, which have been long-standing components of broader IRS financial reporting issues, to represent internal control deficiencies.

IRS also continued to enhance the capabilities of its Custodial Detail Data Base (CDDB), which is intended to ultimately serve as a subsidiary ledger for IRS's tax administration activities, including tax revenue receipts, tax refund disbursements, and unpaid tax debt. IRS plans for CDDB to achieve this goal by linking account information in IRS's master files[5] with its general ledger for tax administration activities. In fiscal year 2006, IRS

---

[4]GAO, *Financial Audit: Examination of IRS' Fiscal Year 1992 Financial Statements*, GAO/AIMD-93-2 (Washington, D.C.: June 30, 1993).

[5]IRS's master files contain detailed records of taxpayer accounts. However, the master files do not contain all the details necessary to properly classify or estimate collectibility for unpaid tax assessment accounts. There are several master files, the most significant of which are the individual master file, which contains tax records of individual taxpayers, and the business master file, which contains tax records of corporations and other businesses.

implemented the first phase of CDDB, which primarily consisted of computer programs that analyze and classify related taxpayer accounts from IRS's masterfile that are associated with unpaid payroll taxes.[6] However, these programs only had the capability to process less complex accounts recorded in IRS's masterfiles beginning in August of 2001. During fiscal year 2007, IRS enhanced CDDB to process a larger percentage of accounts associated with unpaid payroll taxes. Also, during fiscal year 2007, IRS implemented CDDB programs to begin journalizing tax debt information from its master files to its general ledger weekly, a first step in establishing CDDB's capability to serve as a subsidiary ledger for unpaid tax debt. However, IRS is still unable to use CDDB as its subsidiary ledger for external reporting, and must continue to use a labor-intensive, manual compensating process to estimate the year-end balances of the various categories of unpaid tax assessments to avoid material misstatements to its financial statements.[7] For example, IRS had to make over $20 billion in adjustments to the year-end gross taxes receivable balance produced by CDDB as a result of its manual estimation process for financial reporting. Full operational capability of CDDB is several years away and depends in part on the successful implementation of future system releases.

During fiscal year 2007, IRS continued to expand processing of the less complex individual tax returns through its Customer Account Data Engine (CADE), the system IRS is implementing to replace its individual master files. However, because of problems IRS identified during testing, start-up of the latest release of CADE was delayed and it did not achieve the level of processing originally planned. According to IRS, this latest release of CADE

---

[6]When a company does not pay the taxes it withholds from employees' wages, such as Social Security or individual income tax withholdings, IRS has the authority to assess all responsible officers individually for the taxes withheld from employees. Although assessed to multiple parties, the liability need only be paid once. Thus, IRS may record tax assessments against each of several individuals for the employee-withholding component of the payroll tax liability of a given business in an effort to collect the total tax liability of the business. The tax assessments made against business officers are known as trust fund recovery penalties. See 26 U.S.C. § 6672 and implementing IRS guidance in the *Internal Revenue Manual* at § 4.23.9.13, Trust Fund Recovery Penalty (Mar. 1, 2003).

[7]Unpaid tax assessments consist of (1) federal taxes receivable, which are taxes due from taxpayers for which IRS can support the existence of a receivable through taxpayer agreement or a favorable court ruling; (2) compliance assessments where neither the taxpayer nor the court has affirmed that the amounts are owed; and (3) write-offs, which represent unpaid tax assessments for which IRS does not expect further collections because of factors such as the taxpayer's death, bankruptcy, or insolvency. Of these three classifications of unpaid tax assessments, only net federal taxes receivable are reported on the principal financial statements.

did not become fully operational until May 2007, which was about 5 months behind schedule. IRS informed us that it originally intended CADE to process 33 million tax returns during fiscal year 2007, which would have been over four times the 7.3 million tax returns processed by CADE during fiscal year 2006. However, due to the delay, CADE did not achieve this goal. During fiscal year 2007, CADE processed 11.2 million tax returns, including 10.9 million tax refunds totaling $11.6 billion, which represented about 4 percent of all tax refunds disbursed by IRS in fiscal year 2007. It is unclear when IRS will be able to rely on CADE to process all individual tax collections and related tax refunds. In addition, once fully implemented, CADE is only intended to replace the individual master files; it is unclear how or when IRS will replace the business master files.

IRS has made notable progress in using existing management information as a basis for more informed decisions on collection of unpaid taxes and payment of tax refunds. However, IRS has not yet developed the agency-wide cost-benefit information needed to better determine the optimum level of resources to devote to maximizing collections of unpaid taxes and minimizing payments of improper tax refunds in the context of its overall mission and responsibilities, or to develop related cost-based performance measures to assist in monitoring progress and adjusting strategies to better address areas of noncompliance. IRS has developed a cost policy to provide guidance on managerial cost accounting concepts for the agency and has initiated cost pilot projects to explore ways to apply its cost information to its various activities. These actions represent a major step forward for IRS in its efforts to develop the cost-benefit information it needs to provide a basis for well-informed management decisions. However, the results of the cost pilots are not expected until the last quarter of fiscal year 2008, and how effectively IRS will apply the cost accounting principles embodied in its new policy remains unclear.

While IRS has made notable improvements throughout fiscal year 2007, control deficiencies over financial reporting, management of unpaid tax assessments, and collection of tax revenue and issuance of tax refunds

continued to represent material weaknesses.[8] These weaknesses are caused primarily by IRS's continued reliance on outdated automated systems to provide the financial information that management needs to make well-informed decisions, and similar weaknesses and problems will continue to exist until these legacy systems are replaced. In addition, we continue to consider issues related to information security to be a material weakness. The persistent, serious deficiencies in information security increase the risk that confidential IRS and taxpayer information will be compromised, and have serious implications related to the reliability of financial management information produced by IRS's systems. As IRS continues to increase the automation of accounting and reporting processes, the need for effective security over the data these systems process becomes increasingly more critical. Absent effective information security, confidential taxpayer records will remain at risk and we, as IRS's auditors, will continue to be unable to rely on the automated controls built into these systems to obtain assurance that the reported balances generated by them are reliable. Opportunities for us to utilize the types of alternate audit procedures we have applied in the past to compensate for this condition, such as reviewing comparisons between automated systems and utilizing remaining hard-copy records, are diminishing as IRS's modernization efforts progress. If IRS does not resolve its information security material weaknesses before these options disappear, it could have serious implications for our ability to determine whether IRS's financial statements are fairly stated.

Opportunities for further improvement in IRS's financial reporting in the near term are unclear. IRS has not fully addressed how it will apply the cost information provided by its Integrated Financial System to the tax-administration-related transactions, which are processed by the separate systems that support financial management of IRS's tax administration functions, including its collection of tax revenue receipts, disbursement of tax refunds, and identification, management, and collection of outstanding federal taxes. It is therefore unclear how or when IRS will acquire the

---

[8]A material weakness is a significant deficiency, or a combination of significant deficiencies, that result in more than a remote likelihood that a material misstatement of the financial statements will not be prevented or detected. A significant deficiency is a control deficiency, or combination of control deficiencies, that adversely affects the entity's ability to initiate, authorize, record, process, or report financial data reliably in accordance with generally accepted accounting principles such that there is more than a remote likelihood that a misstatement of the entity's financial statements that is more than inconsequential will not be prevented or detected.

ability to fully measure the cost-effectiveness of its operational activities or develop related cost-based performance measures to facilitate informed decision-making by management, and to more effectively support requests to Congress for additional resources.

## Opinion on IRS's Financial Statements

IRS's financial statements, including the accompanying notes, present fairly, in all material respects, in conformity with U.S. generally accepted accounting principles, IRS's assets, liabilities, net position, net costs, changes in net position, budgetary resources, and custodial activity as of, and for the fiscal years ended, September 30, 2007, and September 30, 2006.

However, misstatements may nevertheless occur in other financial information reported by IRS as a result of the internal control deficiencies described in this report.

IRS's financial statements include tax revenues collected during the fiscal year as well as the total unpaid taxes for which IRS and the taxpayers or courts agree on the amounts owed. Cumulative unpaid tax assessments for which there is no future collection potential or for which there is no agreement on the amounts owed are not reported in the financial statements. Rather, they are reported as write-offs and compliance assessments, respectively, in required supplemental information to IRS's financial statements. Also, in conformity with U.S. generally accepted accounting principles, to the extent that taxes owed in accordance with the nation's tax laws are not reported by taxpayers and are not identified through IRS's various enforcement programs, they are not reported in the financial statements nor in required supplemental information to the financial statements. Additionally, in conformity with U.S. generally accepted accounting principles, tax expenditures represent the amount of revenue the government forgoes resulting from federal tax law provisions that (1) allow a special exclusion, exemption, or deduction from gross income, or (2) provide a special credit, preferential rate, or deferred tax liability. Tax expenditures are not reported in the financial statements but rather presented as other accompanying information.

## Opinion on Internal Controls

Because of the material weaknesses in internal controls discussed below, IRS did not maintain effective internal controls over financial reporting (including safeguarding of assets) or compliance with laws and regulations, and thus did not provide reasonable assurance that losses, misstatements,

and noncompliance with laws material in relation to the financial statements would be prevented or detected on a timely basis. Our opinion is based on criteria established under 31 U.S.C. § 3512 (c), (d), commonly referred to as the Federal Managers' Financial Integrity Act of 1982 (FIA), and Office of Management and Budget (OMB) Circular No. A-123, *Management's Responsibility for Internal Control.*

Despite its material weaknesses in internal controls and its systems deficiencies, IRS was able to prepare financial statements that were fairly stated in all material respects for fiscal years 2007 and 2006. Nonetheless, IRS continues to face the following key issues that represent material weaknesses in internal controls:

- weaknesses in controls over the financial reporting process, resulting in IRS not (1) being able to prepare reliable financial statements without extensive compensating procedures and (2) having current and reliable ongoing information to support management decision making and to prepare cost-based performance measures;

- weaknesses in controls over unpaid tax assessments, resulting in IRS's inability to properly manage unpaid tax assessments and leading to increased taxpayer burden;

- weaknesses in controls over the collection of tax revenues due the federal government and over the issuance of tax refunds, resulting in lost revenue to the federal government and potentially billions of dollars in improper tax refund payments; and

- weaknesses in information security controls, resulting in increased risk of unauthorized individuals accessing, altering, or abusing proprietary IRS programs and electronic data and taxpayer information.

These material weaknesses in internal controls may adversely affect any decision by IRS's management that is based, in whole or in part, on information that is inaccurate because of these deficiencies. In addition, unaudited financial information reported by IRS, including performance information, may also contain misstatements resulting from these deficiencies. The issues encompassed by these material weaknesses were reflected in the material weaknesses reported by IRS in its fiscal year 2007 FIA assurance statement to the Department of the Treasury (Treasury).

In addition to the material weaknesses discussed above, we identified one internal control deficiency that although not a material weakness, represents a significant deficiency in the design or operation of internal control that adversely affects IRS's ability to meet the internal control objectives described in this report.[9] This deficiency entails weaknesses in IRS's controls over hard-copy taxpayer receipts and related information that increase the risk that this information may be lost, stolen, or compromised. IRS included this issue as a significant deficiency in its fiscal year 2007 FIA assurance statement to the Treasury.

We have reported on these material weaknesses and the significant deficiency in prior audits and have provided IRS recommendations to address these issues.[10] One hundred and forty-four recommendations were still open as of the date of this report, of which 69 relate to the material weakness in information security. IRS continues to make strides in resolving these matters. We will follow up in future audits to monitor IRS's progress in implementing these recommendations. For more details on these issues, see appendix I.

## Compliance with Laws and Regulations

Our tests of compliance with selected provisions of laws and regulations disclosed one area of noncompliance that is reportable under U.S. generally accepted government auditing standards and OMB guidance. This area relates to IRS not releasing federal tax liens against taxpayers'

---

[9] We reported this issue as a reportable condition in fiscal year 2006 and in prior years. Reportable conditions involved matters coming to the auditor's attention that, in the auditor's judgment, should be communicated because they represent significant deficiencies in the design or operation of internal control, and could adversely affect an agency's ability to meet key control objectives. In May 2006, the American Institute of Certified Public Accountants issued Statement on Auditing Standards (SAS) 112, and subsequently made conforming changes to the Statements on Standards for Attestation Engagements (AT 501). AT 501 eliminated the term reportable condition and it is no longer used. AT 501 also established standards related to a new definition for the terms significant deficiency and material weakness, and the auditor's responsibilities for identifying, evaluating, and communicating matters related to an entity's internal control over financial reporting. Under these new standards, the auditor is required to communicate control deficiencies that are considered to be significant deficiencies or material weaknesses in internal controls.

[10] GAO, *Internal Revenue Service: Status of GAO Financial Audit and Related Financial Management Report Recommendations*, GAO-07-629 (Washington, D.C.: June 7, 2007).

property on time.[11] Except as noted above, our tests for compliance with laws and regulations disclosed no other instances of noncompliance that would be reportable under U.S. generally accepted government auditing standards or OMB audit guidance. However, the objective of our audit was not to provide an opinion on overall compliance with laws and regulations. Accordingly, we do not express such an opinion. For more details on these issues, see appendix I.

## Systems Compliance with the Requirements of FFMIA

We found that IRS's financial management systems did not substantially comply with the requirements of the Federal Financial Management Improvement Act of 1996 (FFMIA) as of September 30, 2007.[12] Specifically, IRS's systems did not substantially comply with *Federal Financial Management System Requirements* (FFMSR), federal accounting standards (U.S. generally accepted accounting principles), and the *U.S. Government Standard General Ledger* (SGL) at the transaction level. Our conclusion is based on criteria established under FFMIA; OMB Circular No. A-127, *Financial Management Systems*[13] (which includes the Joint Financial Management Improvement Program (JFMIP)/OMB series of system requirements documents); U.S. generally accepted accounting principles; and the SGL.[14]

The issues resulting in IRS's nonconformance with the requirements of FFMIA relate to the material weaknesses discussed above, and were reflected in the material weaknesses in IRS's fiscal year 2007 FIA assurance

---

[11]Tax law requires IRS to release a federal tax lien within 30 days after the date the tax liability is satisfied or has become legally unenforceable, or the Secretary of the Treasury has accepted a bond for the assessed tax. 26 U.S.C. § 6325 (a).

[12]Pub. L. No. 104-208, div. A, § 101(f), title VIII, 110 Stat. 3009, 3009-389 (Sept. 30, 1996).

[13]Office of Management and Budget, Circular No. A-127, *Financial Management Systems* (Washington, D.C.: Dec. 1, 2004). FFMSR require application of the SGL at the transaction level and state that conformance requires, among other items, that transaction detail for SGL accounts be readily available in the financial management systems and directly traceable to specific SGL account codes.

[14]JFMIP was originally formed under the authority of the Budget and Accounting Procedures Act of 1950 as a cooperative undertaking of the OMB, the Treasury, the Office of Personnel Management, and GAO, working in cooperation with each other and with operating agencies to improve financial management practices in the federal government. On December 1, 2004, JFMIP ceased to exist as a separate organization, with OMB's Office of Federal Financial Management assuming many JFMIP functions.

statement to Treasury. IRS's FFMIA remediation plan details its planned corrective actions for the weaknesses that render its financial management systems noncompliant with the requirements of FFMIA. For more details on these issues, see appendix I.

## Consistency of Other Information

IRS's Management Discussion and Analysis and required supplementary and other accompanying information contain a wide range of data, some of which are not directly related to the financial statements. We did not audit and do not express an opinion on this information. However, we compared this information for consistency with the financial statements and discussed the methods of measurement and presentation with IRS officials. Based on this limited work, we found no material inconsistencies with the financial statements, U.S. generally accepted accounting principles, or OMB guidance.

## Objectives, Scope, and Methodology

Management is responsible for (1) preparing the annual financial statements in conformity with U.S. generally accepted accounting principles; (2) establishing, maintaining, and assessing internal control to provide reasonable assurance that the broad control objectives of 31 U.S.C. § 3512 (c), (d) (FIA) are met; (3) complying with applicable laws and regulations; and (4) ensuring that IRS's financial management systems substantially comply with the requirements of FFMIA.

We are responsible for obtaining reasonable assurance about whether (1) the financial statements are presented fairly, in all material respects, in conformity with U.S. generally accepted accounting principles, and (2) management maintained effective internal controls, the objectives of which are the following:

- Financial reporting—transactions are properly recorded, processed, and summarized to permit the preparation of financial statements in conformity with U.S. generally accepted accounting principles and assets are safeguarded against loss from unauthorized acquisition, use, and disposition.

- Compliance with laws and regulations—transactions are executed in accordance with laws governing the use of budget authority and with other laws and regulations that could have a direct and material effect

on the financial statements and any other laws, regulations, and governmentwide policies identified by OMB audit guidance.

We are also responsible for (1) testing compliance with selected provisions of laws and regulations that have a direct and material effect on the financial statements and laws for which OMB audit guidance requires testing, (2) testing whether IRS's financial management systems substantially comply with the three requirements of FFMIA, and (3) performing limited procedures with respect to certain other information appearing in these annual financial statements. For more details on our methodology and the laws and regulations we tested, see appendix II.

We did not evaluate all internal controls relevant to operating objectives as broadly defined by FIA, such as controls relevant to preparing statistical reports and ensuring efficient operations. We limited our internal control testing to testing controls over financial reporting and compliance with laws and regulations. We did not test compliance with all laws and regulations applicable to IRS. We limited our tests of compliance to those laws and regulations that had a direct and material effect on the financial statements or that were required to be tested by OMB audit guidance that we deemed applicable to IRS's financial statements for the fiscal years ended September 30, 2007, and 2006. We caution that noncompliance may occur and not be detected by these tests and that such testing may not be sufficient for other purposes. We performed our work in accordance with U.S. generally accepted government auditing standards and OMB audit guidance.

## Agency Comments and Our Evaluation

In responding to this report, IRS agreed that the report fairly presents its financial management progress and remaining management and systems challenges. IRS also noted its significant accomplishments in addressing its financial management challenges, including (1) implementation of another phase of the CDDB, which created an interface between CDDB and IRACS for posting summary unpaid assessment and accrual data to IRACS, (2) improvement in the timely release of liens to an 88 percent timeliness rate, which represented a 19 percentage point increase over the timeliness rate in fiscal year 2006, (3) achievement of a 21 percent increase in the Trust Fund Recovery Penalty accuracy rate through the use of CDDB, (4) issuing of IRS's first cost accounting policy, and (5) improvement in its capability to capitalize or expense assets and properly account for Business Systems Modernization costs in internal use software.

IRS also recognized the importance of the information security issues discussed in the material weakness in information security, and noted certain steps it has taken to address these issues. These steps include (1) establishing an Office of Privacy, Information Protection, and Data Security to provide direction and oversight of the security and protection of sensitive information, (2) developing an integrated Information Technology Security Schedule and Plan and a comprehensive security strategy, (3) encrypting all laptop data and tapes used in electronic data exchanges, and (4) implementing an enterprise anti-virus internet gateway solution to detect and quarantine malicious content from invading systems. IRS also recognized that while challenges remain, it has a solid management team dedicated to promoting the highest standard of financial management, and will continue to focus on information security while improving financial reporting.

The complete text of IRS's response is included in appendix III.

David M. Walker
Comptroller General
of the United States

November 5, 2007

Appendix I

# Material Weaknesses, Significant Deficiency, and Compliance Issues

## Material Weaknesses

During our audits of the Internal Revenue Service's (IRS) fiscal years 2007 and 2006 financial statements, we continued to identify four material weaknesses in internal controls. These material weaknesses have given rise to significant management challenges that have (1) impaired management's ability to prepare financial statements and other financial information without extensive compensating procedures, (2) limited the availability of reliable information to assist management in effectively managing operations on an ongoing basis, (3) reduced IRS's effectiveness in enforcing the Internal Revenue Code, (4) resulted in errors in taxpayer accounts, (5) increased taxpayer burden, and (6) reduced assurance that data processed by IRS's information systems are reliable and appropriately protected. The issues that we have identified and discuss in this report relate to IRS's controls over (1) financial reporting, (2) unpaid tax assessments, (3) tax revenue and refunds, and (4) information security. We reported on each of these issues last year[1] and in prior audits. We highlight these issues and a significant deficiency related to hard-copy tax receipts and taxpayer information in the following sections. Less significant weaknesses we identified in IRS's system of internal controls and its operations will be reported to IRS separately.

In previous years, we reported, as a component of the material weakness in financial reporting, that IRS did not separately report the amounts of revenue it collected for three of the federal government's three largest revenue sources—Social Security, hospital insurance, and individual income taxes. Additionally, we reported that IRS was unable to determine, at the time of payment of excise taxes, to which trust funds the excise tax receipts are attributable. This resulted in the federal government depending on a complex, multistep process that is susceptible to error to distribute excise taxes to the recipient trust funds. IRS has taken action to address both of these issues. During fiscal year 2007, IRS disclosed information relating to Social Security and hospital insurance revenue sources as other accompanying information to its financial statements, and also began presenting the most recent available information on the amount of excise tax receipts certified to the Airport and Airways, Black Lung Disability, and Highway Trust Funds in its Management Discussion and Analysis. Including more specific information on the federal government's major revenue sources and disclosing information on excise tax

---

[1]GAO, *Financial Audit: IRS's Fiscal Years 2006 and 2005 Financial Statements*, GAO-07-136 (Washington, D.C.: Nov. 9, 2006).

distributions enhances the usefulness of the information being reported. In addition, in fiscal year 2007, IRS began to accelerate the timing of its certification of excise tax receipts to recipient trust funds.[2] Specifically, in fiscal year 2007, IRS was able to certify as accurate 9 months of the fiscal year's excise tax receipt distributions to the trust funds, as opposed to only 6 months of receipt distributions as was previously the case. This, in turn, reduces the risk to the recipient trust funds that they may not receive the appropriate distribution of excise tax revenues within a given fiscal year. Based on IRS's actions, we no longer consider these issues to represent internal control deficiencies.

## Financial Reporting

In fiscal year 2007, as in prior years, IRS did not have financial management systems adequate to enable it to accurately generate and report, in a timely manner, the information needed to both prepare financial statements and manage operations on an ongoing basis. To overcome these systemic deficiencies with respect to preparation of its annual financial statements, IRS was compelled to employ extensive compensating procedures. During fiscal year 2007, IRS (1) did not have an adequate general ledger system for tax-related transactions, and (2) was unable to readily determine the costs of its activities and programs and did not have cost-based performance information to assist in making or justifying resource allocation decisions. Although reliance on compensating procedures resulted in financial statements that were fairly stated as of September 30, 2007, and 2006, they do not afford real-time data needed to assist in managing operations on a day-to-day basis and to provide an informed basis for making or justifying resource allocation decisions.

Similar to our findings discussed in last year's report,[3] during fiscal year 2007, IRS's core general ledger system for tax-administration-related transactions was not supported by adequate audit trails for any of its

---

[2] Payers of excise taxes are generally required to make semimonthly deposits to cover their quarterly tax liability. When making tax deposits, taxpayers identify them as excise taxes, but are not required to provide the related specific tax-type information. Consequently, IRS cannot classify the deposit amounts by tax type or trust fund until the related excise tax returns are submitted. Based on information later reported on the excise tax returns, IRS quarterly certifies excise tax receipts to be distributed to trust funds based on the type and amount of taxes paid and the amount of tax assessed. Because of the delay between the end of the quarter and the receipt of the tax returns, IRS certifies distributions of excise tax receipts to the trust funds 4-1/2 months after the end of the tax quarter.

[3] GAO-07-136.

material balances, including tax revenue, tax refunds, and taxes receivable. Financial data related to tax revenue and tax refund transactions were posted to IRS's core general ledger for administration of tax activities (the Interim Revenue Accounting Control System, or IRACS) at a summary level, and were not traceable to source documents for individual transactions to appropriately document, and to allow independent verification, that transactions were recorded in conformance with the posting requirements of the *U.S. Government Standard General Ledger* (SGL). In addition, IRS's reported balance for net federal taxes receivable, which comprised over 83 percent of IRS's total assets as reported on its fiscal year 2007 balance sheet, was not posted to IRACS.[4] This was because it was the product of a complex statistical estimation process rather than the traditional posting of individual transactions. Hence, it also was not traceable to underlying transaction detail. Consequently, IRACS does not substantially comply with the (1) SGL at the transaction level; (2) *Federal Financial Management Systems Requirements* (FFMSR) embodied in Office of Management and Budget (OMB) Circular No. A-127, *Financial Management Systems*;[5] or (3) requirements of the Federal Financial Management Improvement Act of 1996 (FFMIA).

As detailed in our discussion of the material weakness in IRS's management of unpaid tax assessments which follows, IRS is in the process of implementing the Custodial Detail Data Base (CDDB), which is ultimately intended to provide appropriate detail transaction traceability for all tax-related transactions. However, while IRS continued to make progress on CDDB in fiscal year 2007, IRS expects it will be several years before CDDB will fully achieve this objective. Also, IRS uses two separate general ledgers, one to account for its tax administration activities and another to capture the funding for, and costs of conducting, those activities. This greatly complicates efforts to measure the cost of IRS's tax administration efforts. It remains unclear how IRS will overcome this additional obstacle to reliably measure the costs and benefits of its tax

---

[4]IRS reports federal taxes receivable on its balance sheet, net of an allowance for amounts considered uncollectible.

[5]Office of Management and Budget, Circular No. A-127, *Financial Management Systems* (Washington, D.C.: Dec. 1, 2004). FFMSR require application of the SGL at the transaction level and state that conformance requires, among other items, that transaction detail for SGL accounts be readily available in the financial management system and traceable to specific SGL account codes.

administration activities to permit informed management decision making and more effectively support related requests to Congress for resources.

During fiscal year 2006, we reported that IRS improved its cost accounting capabilities by developing and implementing a methodology for allocating its costs of operations to its business units. However, we also reported that IRS was unable to either readily determine the costs of activities and programs that involve activities in multiple business units, such as the Automated Underreporter Program, or segregate the costs for each activity in cases where multiple activities are performed by a single business unit, such as the processing of different types of tax returns.

During fiscal year 2007, IRS continued to make progress in improving its cost accounting capabilities. Specifically, IRS issued its first cost accounting policy in August 2007, which provides guidance on the concepts and requirements for managerial cost accounting within IRS. The purpose of this policy is to outline a clear set of guidelines for IRS to use to accumulate and report on the full costs of its programs, activities, and associated outputs to allow for better decision making. In addition, IRS is conducting cost pilots in an effort to establish the relationship between its costs and its products and services. IRS does not anticipate the results of these pilots to be available until the last quarter of fiscal year 2008. These pilots, when completed, could help IRS to develop a practical approach to use cost information within the Integrated Financial System (IFS) to systemically produce managerial cost accounting data that are defensible, reliable, and consistent. While these are positive steps, IRS at present remains unable to readily determine the full costs of specific activities and programs. It will likely require several years and further analysis of the relationship between IRS's costs and its products and services before the full potential of its cost accounting capabilities will be realized.

Despite progress made during fiscal year 2007, the continued existence of these financial reporting weaknesses once again compelled IRS to expend more time and effort to maintain its accounting records and generate financial management information than would otherwise have been necessary. Further, despite these monumental efforts, IRS continued to lack reliable and timely financial information to assist in managing operations throughout fiscal year 2007. Addressing the financial reporting deficiencies discussed above would enhance this process by providing management the reliable and timely information that it needs to support informed decision making without having to resort to costly and time-consuming procedures to compensate for information system deficiencies.

## Unpaid Tax Assessments

During fiscal year 2007, we continued to find serious internal control issues that affected IRS's management of unpaid tax assessments. Specifically, we continued to find (1) IRS lacked a subsidiary ledger for unpaid tax assessments that would allow it to produce accurate, useful, and timely information with which to manage and report externally, and (2) errors and delays in recording taxpayer information, payments, and other activities. While IRS is making progress in addressing these issues, these conditions nevertheless continued to hinder IRS's ability to effectively manage its unpaid tax assessments.[6]

IRS continues to lack a detailed listing, or subsidiary ledger, that tracks and accumulates unpaid tax assessments and their status on an ongoing basis for external reporting. IRS recognizes the seriousness of this deficiency and is working to address this matter. In fiscal year 2006, IRS began a phased-in implementation of CDDB. One of the key objectives of CDDB is to ultimately serve as a subsidiary ledger for IRS's tax administration activities, including tax revenue receipts, tax refund disbursements, and unpaid tax debt, by linking account information in IRS's master files[7] with IRACS. The first phase of CDDB primarily consisted of implementing computer programs that analyze and classify related taxpayer accounts from IRS's master file that are associated with unpaid payroll taxes. However, these programs only had the capability to process less complex accounts recorded after August 2001. During fiscal year 2007, IRS enhanced CDDB to analyze and classify a larger percentage of unpaid payroll tax accounts, though it is still unable to process all such accounts. Additionally, IRS enhanced CDDB to begin journalizing tax debt information from its master files to its general ledger weekly. This is a significant step in establishing CDDB's capability to serve as a subsidiary ledger for unpaid tax debt. However, IRS is presently unable to use CDDB as its subsidiary

---

[6]Unpaid tax assessments consist of (1) federal taxes receivable, which are taxes due from taxpayers for which IRS can support the existence of a receivable through taxpayer agreement or a favorable court ruling; (2) compliance assessments where neither the taxpayer nor the court has affirmed that the amounts are owed; and (3) write-offs, which represent unpaid tax assessments for which IRS does not expect further collections because of factors such as the taxpayer's death, bankruptcy, or insolvency. Of these three classifications of unpaid tax assessments, only net federal taxes receivable are reported on the principal financial statements.

[7]IRS's master files contain detailed records of taxpayer accounts. However, the master files do not contain all the details necessary to properly classify or estimate collectibility for unpaid tax assessment accounts.

ledger for posting tax debt information to its general ledger in a manner that ensures reliable external reporting.

Specifically, to report balances for taxes receivable and other unpaid tax assessments in its financial statements and required supplemental information, IRS must continue to apply statistical sampling and estimation techniques to master file data processed through CDDB at year-end. Even though CDDB is capable of analyzing master file data weekly to produce tax debt information classified into the various financial reporting categories (taxes receivable, compliance assessments, and write-offs), this information contains material inaccuracies. For example, through its use of its statistical sampling and estimation techniques, IRS identified errors necessitating over $20 billion in adjustments to the year-end gross taxes receivable balance produced by CDDB. Thus, while the use of CDDB has refined this process, it continued to take IRS several months to complete, required multibillion-dollar adjustments, and produced amounts that after adjustments were still only reliable as of the last day of the fiscal year. Consequently, the lack of a fully functioning subsidiary ledger continues to inhibit IRS's ability to develop reliable and timely financial management reports useful for ongoing management decisions and external reporting. Full operational capability of CDDB is still several years away and depends on the successful implementation of future system releases planned through 2009.

IRS's management of unpaid tax assessments also continued to be hindered by inaccurate tax records. We continued to find errors and omissions in taxpayer records resulting from IRS's failure to record information accurately and timely. Such errors directly affect the accuracy of the classified tax debt information produced by CDDB. Additionally, such errors in IRS records can cause frustration to taxpayers who either do not owe the debt or owe significantly lower amounts.

For example, during our audit we found that IRS erroneously created a second account for the same taxpayer when it recorded the taxpayer's $24 million estate tax assessment into an account with an invalid taxpayer identification number. The taxpayer had previously made payments to fully pay the amount of the estate tax. However, because IRS erroneously recorded the tax assessment into this second account, it created a balance due, which triggered a notice for taxes due being sent to the taxpayer with related penalties and interest for over $32 million. IRS identified this error when it selected the taxpayer's account as part of its statistical sampling and estimation process for deriving the balances of net taxes receivable

and other unpaid tax assessments for year-end financial reporting. In another example, IRS assessed almost $5 million in penalties against a business for failing to provide a required supporting schedule along with its quarterly payroll tax return. When IRS subsequently examined the taxpayer's return, it determined that the required schedule was in fact attached to the return. In both of these cases, IRS subsequently identified and corrected its error, but not before inconveniencing the taxpayers. Additionally, IRS had to make multimillion-dollar adjustments to the account balances because these errors were in IRS's master file records at the point in time that IRS extracted the account information to estimate and record its balance of taxes receivable and other unpaid tax assessments for year-end financial reporting.

As in prior years,[8] we continued to find errors involving IRS's failure to properly record payments to all related taxpayer accounts associated with unpaid payroll taxes.[9] IRS's current systems continued to be unable to automatically link each of the multiple tax assessments made for the one tax liability. Consequently, if the business or any officer of that business paid some or all of the outstanding taxes, IRS's systems were unable to automatically reflect the payment as a reduction in the amounts owed on any related accounts. Over the past several years, IRS has taken several steps to compensate for the lack of an automated link between related accounts. For example, IRS manually inputs a code in each account that cross-references it to other related accounts. In addition, since August 2001, IRS has established procedures to more clearly link each penalty assessment against an officer to a specific tax period of the business account. In July 2003, IRS also began phasing in the use of an automated trust fund recovery penalty system that is intended to properly cross-reference payments received and thus eliminate the opportunity for errors that plague the current manual process.

---

[8] GAO-07-136.

[9] When a company does not pay the taxes it withholds from employees' wages, such as Social Security or individual income tax withholdings, IRS has the authority to assess all responsible officers individually for the taxes withheld from employees. Although assessed to multiple parties, the liability need only be paid once. Thus, IRS may record tax assessments against each of several individuals for the employee-withholding component of the payroll tax liability of a given business in an effort to collect the total tax liability of the business. The tax assessments made against business officers are known as trust fund recovery penalties. See 26 U.S.C. § 6672 and implementing IRS guidance in the *Internal Revenue Manual* at § 4.23.9.13, Trust Fund Recovery Penalty (Mar. 1, 2003).

Although IRS is making improvements in its processes for recording trust fund recovery penalties, our work in fiscal year 2007 continued to find deficiencies in this process, leading to errors in taxpayers' accounts. In our testing of 76 statistically selected payments recorded on trust fund recovery penalty accounts established since August 2001, we found 9 instances in which IRS did not properly record payments received on all related taxpayer accounts. Based on our testing, we estimate that about 12 percent of trust fund recovery penalty payment transactions posted to accounts established since August 2001 could contain inaccuracies.[10]

IRS processing errors or delays also contribute to inaccurate tax records and result in IRS having to make adjustments as part of its process for estimating the balances of net taxes receivable and other unpaid tax assessments, which IRS reports on its balance sheet and the required supplemental information to its financial statements, respectively. During our audit, we found a case where a taxpayer signed a document in November 2006 agreeing to $1.4 million of additional taxes owed. However, as of July 2007, IRS had not recorded this tax assessment on the taxpayer's master file account. Since this was a valid tax assessment agreed to by the taxpayer and established during fiscal year 2007, IRS had to make a $1.4 million adjustment to the balance in the taxpayer's account.

Furthermore, such processing errors and delays contribute to IRS's inability to timely release federal tax liens against taxpayers once taxpayers have fully satisfied or are otherwise relieved of their tax liability. As with the other issue previously described, delays by IRS in recording bankruptcy discharges and in researching and applying taxpayer payments that cover multiple tax periods result not only in inaccurate tax records but delays in IRS's release of federal tax liens. This, in turn, causes undue hardship and burden to taxpayers who are attempting to sell property or apply for commercial credit.[11]

The progress IRS has made to date with CDDB is an important step in moving toward a subsidiary ledger that links account information in IRS's master files with its general ledger for tax administration activities. However, IRS must still address the issues that prevent it from using unadjusted CDDB information to support the general ledger for external

---

[10]We are 95 percent confident that the error rate does not exceed 20 percent.

[11]This issue is discussed further in the Compliance Issues section of this report.

reporting. This will require further enhancements to CDDB to enable it to more accurately distinguish between the three categories of unpaid tax assessments—taxes receivable, compliance assessments, and write-offs—so that balances are ultimately recorded in the proper general ledger accounts. Also, in order to ensure accurate financial reporting and to minimize undue burden on taxpayers, IRS faces a continuing challenge to address the factors that cause inaccuracies in taxpayer account records and to maintain the integrity of the account information going forward.

## Tax Revenue and Refunds

During fiscal year 2007, we continued to find that IRS's internal controls were not fully effective in ensuring that it is maximizing the federal government's ability to collect tax revenues owed and minimizing the risk of paying improper tax refunds. IRS has a broad array of operational management information available to it and has used innovative approaches to develop and apply this information to increase tax collections and reduce improper tax refunds. However, IRS does not, at present, have agencywide cost-benefit information, related cost-based performance measures, or a systematic process for ensuring it is using its resources to maximize its ability to collect what is owed and minimize the disbursements of improper tax refunds in the context of its overall mission and responsibilities. These deficiencies inhibit IRS's ability to appropriately assess and routinely monitor the relative merits of its various initiatives and adjust its strategies as needed. This, in turn, can significantly affect both the level of tax revenue collected and the magnitude of improper refunds paid.

As of September 30, 2007, IRS's inventory of cumulative unpaid tax assessments totaled $263 billion. Of this amount, $26 billion, about 10 percent, is estimated to be collectible.[12] In addition, based on data accumulated during a study of individual tax returns filed in 2001, IRS estimated that taxes totaling about $345 billion were not paid to the federal government. Of this amount, IRS estimates that its enforcement efforts will eventually recover about $55 billion, leaving a net $290 billion uncollected. With respect to improper tax refunds, IRS successfully stopped over

---

[12]The $26 billion represents those unpaid tax assessments that meet the definition of federal taxes receivable under federal accounting standards and which IRS expects to collect.

$3.1 billion in potential improper tax refund payments from 2002 through 2005.[13] However, the magnitude of total improper tax refunds that are not prevented and are thus paid each year is unknown. IRS has done some targeted studies of improper refunds related to the Earned Income Tax Credit (EITC)[14] program, which constituted $38 billion of the $292 billion (about 13 percent) in total refunds paid during fiscal year 2007. Based on a study conducted of EITC claims filed for tax year 2001, IRS estimated that at least $10 billion in improper EITC tax refunds may have been disbursed in fiscal year 2007.[15] However, IRS has not estimated the magnitude of improper refunds not related to EITC, and thus the magnitude of total improper tax refunds disbursed each year is unknown. Because of these and other issues, we have designated enforcement of tax laws as a high-risk area in the federal government.[16]

In its efforts to identify and pursue the correct amount of taxes owed and to ensure that only proper tax refunds are disbursed, IRS faces numerous challenges, many of which are beyond its control. These include the complexity of the tax code, the timeliness of corroborative information, time constraints on issuing refunds, and resource constraints. For example, the amounts of both tax liabilities due the federal government and tax refunds due to taxpayers are based on taxpayer interpretations of the requirements of the very complex and frequently changing tax laws, and are submitted to IRS on tax returns that encompass largely unsubstantiated assertions that IRS has a limited capacity to verify. In addition, taxpayers

---

[13]Treasury Inspector General for Tax Administration: *The Electronic Fraud Detection System Redesign Failure Resulted in Fraudulent Returns and Refunds Not Being Identified*, 2006-20-108 (Washington, D.C.; Aug. 9, 2006).

[14]Enacted in 1975, EITC was originally intended to offset the burden of Social Security taxes and provide a work incentive for low-income taxpayers. The EITC, which has been modified by subsequent laws and is codified at 26 U.S.C. § 32, is a refundable tax credit, meaning that qualifying working taxpayers may receive a refund greater than the amount of income tax they paid for the year.

[15]In Appendix C of OMB Circular No. A-123, which sets out guidance implementing the Improper Payments Information Act of 2002 (IPIA), OMB assessed the EITC program as ineffective because of the significant level of noncompliance, and identified it as a program subject to the reporting requirements of IPIA (Pub. L. No. 107-300, 116 Stat. 2350 (Nov. 26, 2002)), until Treasury can document a minimum of 2 consecutive years of improper payments at less than $10 million annually. Additionally, IRS has reported EITC noncompliance as a material weakness in its 2007 Federal Managers' Financial Integrity Act of 1982 (FIA) assurance statement to the Treasury.

[16]GAO, *High-Risk Series: An Update*, GAO-07-310 (Washington, D.C.: January 2007).

do not always file the required tax returns, or properly calculate and report their taxable income. Some third-party information, such as the data provided by taxpayers with their tax returns on W-2s[17] and IRS 1099 forms,[18] is also later transmitted to IRS electronically and in that form can be used by IRS to help corroborate the amount of wages and income reported by taxpayers. However, the electronic version of this information is not required to be filed until after the start of the tax filing season. Consequently, the utility of the comparison of this information with tax return data as a tool to address improper refunds is problematic because IRS does not have time to prepare third-party data for matching prior to the payment of tax refund claims related to these data. Additionally, the time available to IRS to verify the information on tax returns claiming refunds before it must make payment is limited by statutory requirements that tax refunds be paid within set time constraints or be subject to interest charges.[19] Consequently, many of IRS's efforts have traditionally been focused on detective controls, such as examinations and automated matching of tax returns with third-party data to identify for collection underreported taxes and improper tax refunds. However, these efforts are not undertaken until months after the tax returns have been filed and, consequently, in the case of tax returns claiming tax refunds, do not prevent improper tax refunds from being disbursed.

While IRS faces a number of constraints that are largely beyond its control, effectively deploying its resources should be within its control. Like other agencies, IRS has limited resources to deploy to a wide range of programs and activities. These programs and activities are not only focused on enforcement of the tax law, but also on providing various services to taxpayers, including processing tax returns. In this context, IRS must weigh its options in terms of deployment of its limited resources to these and other responsibilities critical to the day-to-day operations of the agency. Additionally, while IRS should strive to maximize collections of tax revenue and minimize payment of improper tax refunds, we recognize that it has a responsibility to ensure it is applying the tax code fairly. Having

---

[17]IRS Form W-2 is the Wage and Tax statement, which is provided to taxpayers by their employers and provides a record of their salary and deductions for amounts withheld for taxes and other purposes.

[18]IRS 1099 forms are used by third parties, such as financial institutions, to report taxpayers' interest income, dividend distributions, and other miscellaneous income.

[19]By statute, IRS must pay interest on tax refunds not paid within 45 days of receipt or due date, whichever is later. 26 U.S.C. § 6611.

agencywide cost-benefit information and cost-based performance data, and a systematic process for using this information, would improve IRS's ability to ensure it is, in fact, deploying its resources to most effectively address its core mission and responsibilities. We have been reporting on the need for IRS to have good cost benefit information for its various collection and enforcement programs to assist in resource allocation decision making since our fiscal year 1999 financial audit, and have made several recommendations which remain open as of the date of this report.[20]

IRS has recognized the need to have sound cost-benefit data with which to make better informed resource allocation decisions. As discussed in the material weakness over financial reporting section, IRS has initiated a number of cost pilots in an effort to establish a relationship between its costs and its various activities. IRS also recognizes that it will likely take several years before it can fully use this information as an agencywide resource planning tool. In the interim, IRS has undertaken initiatives to make more effective use of existing information to better target its enforcement efforts.

For example, as we have reported in prior years, IRS does not pursue collection action against all tax debt owed to the federal government. IRS has "shelved" billions of dollars of the tax debt cases due to lack of resources, and billions more are in a queue of cases that are not being actively pursued while they wait to be assigned to a collection official. Over the past 3 years, IRS has employed various approaches, including sophisticated computer modeling and risk assessment techniques, to assist it in more effectively identifying the tax debt cases with the greatest collection potential, and to facilitate prioritizing of these cases for collection. IRS has also employed these techniques to identify the most effective collection approach to take for the various types of outstanding tax debt. IRS has estimated that several billion dollars in additional tax collections have been realized through the use of these techniques. Although these efforts have significantly helped IRS target cases for collection, its ability to assess the relative merits of these efforts is hampered by its inability to reliably measure how much it collects as a

---

[20]GAO, *Financial Audit: IRS' Fiscal Year 1999 Financial Statements*, GAO/AIMD-00-76 (Washington, D.C.: Feb. 29, 2000), and *Internal Revenue Service: Recommendations to Improve Financial and Operational Management*, GAO/01-42 (Washington, D.C.: Nov. 17, 2000); and, *Internal Revenue Service: Status of GAO Financial Audit and Related Financial Management Report Recommendations*, GAO-07-629 (Washington, D.C.: June 7, 2007).

result of these efforts, compared to their associated costs. Additionally, these efforts are primarily focused on only one of IRS's operating divisions; thus, they do not presently represent an agencywide, systematic approach to managing the collection of unpaid taxes across the scope of IRS's activities. IRS has additional projects under way to enhance its management of tax collection cases; however, these projects are not scheduled to be fully implemented until 2009. Thus, their full potential is unknown.

IRS has a number of methods for identifying those taxpayers that potentially underreport their income or overstate their deductions. For example, IRS uses its Automated Underreporter Program (AUR) to perform automated matches between information reported on tax returns and related information provided electronically by third parties. Based on these comparisons, IRS identifies thousands of potential cases of underreported taxes every year. However, due to constraints in the level of resources allocated to the AUR function, IRS only investigates a portion of these cases. In deciding which cases to pursue, IRS conducts an analysis to identify the types of cases that have historically resulted in the largest additional tax assessments when investigated further. This approach has yielded notable progress; for tax year 2005,[21] the cases IRS investigated accounted for about 87 percent of the total dollars of potential unreported taxes identified through these matches. This represents a substantial increase over 2002, when IRS investigated about 48 percent of the total dollars of potential unreported taxes. However, at present, decisions made by AUR personnel on which cases to pursue for assessment are not routinely linked to decisions made by collection personnel as to which types of cases that are not immediately paid by the taxpayer will be pursued for collection. We recognize the need for IRS to consider other factors, such as ensuring appropriate coverage of varying types of potential underreporter cases, in determining which ones to investigate. However, knowledge of the collection potential of such cases, and the costs associated with pursuing them, are also important factors to consider in case selection. Absent this information, it is difficult for IRS to assess fully the most appropriate level of resources to devote to this program, or to compare it with other various compliance initiatives in terms of cost-effectiveness.

---

[21]The most recent year for which complete Automated Underreporter Program results are available.

IRS has also made significant strides in applying the information it does have available to address the problem of improper tax refunds as it relates to the EITC program. Specifically, by using the management information available to it, IRS was able to identify sources of EITC taxpayer errors and develop methods to combat abusive and fraudulent activity that contribute to improper tax refunds. For example, an IRS task force study found that the leading cause of errors resulting in improper tax refunds associated with the EITC program was taxpayers claiming nonqualified children. IRS tested the potential for reducing the amount of improper tax refunds issued as a result of this type of error by requiring that when filing their tax returns, selected taxpayers document that their qualifying child lived with them for more than half the tax year.[22] According to IRS, the test results suggested that the certification requirement reduced improper EITC claims; IRS estimated that for the 25,000 taxpayers in the study, it deterred from $5.8 million to $6.8 million in improper claims.

IRS has also begun to establish performance measures to better enable it to assess the effectiveness of its various EITC compliance initiatives. For example, in 2004, IRS established the Percentage of EITC Claims Paid in Error as one of its long-term measures for the EITC program. During fiscal years 2006 and 2007, IRS also established measures for specific functions within the EITC program, including the (1) EITC assessment rate from post-refund treatment program, which is the rate of EITC dollars assessed from examination and document-matching programs, and (2) EITC improper payment rate, which is an estimate of the percentage of ineligible claims that are paid and not recovered. Establishing these and other related performance measures represents a major step forward in IRS's management of EITC compliance and, if effectively used, could provide management with important tools to better assess the effectiveness of its various EITC initiatives and enable IRS to institute appropriate adjustments over time. However, IRS has not yet implemented all the measures it established and those that have been implemented are relatively new. Consequently, it is too early to tell whether they will be effective tools to assist IRS in reducing the rate of improper tax refunds as it relates to EITC.

---

[22]IRS rules require that the qualifying child live with the taxpayer for more than half the tax year, but only requires the taxpayer to substantiate residency if the taxpayer is audited by IRS.

We commend the studies and initiatives IRS has undertaken to address aspects of this material weakness and believe important progress has been made. However, IRS has not yet institutionalized these activities to cover the totality of unpaid taxes and potential improper tax refunds. Additionally, the absence of agencywide cost-benefit information and related cost-based performance measures continues to hamper IRS's ability to formulate a focused, effective, and efficient strategy for the collection of unpaid taxes and prevention of improper tax refunds.

Given the environment in which it operates, IRS cannot be expected to collect all taxes owed or prevent all improper tax refunds claimed from being disbursed through enhancements to its internal controls alone. As noted earlier, the level of uncollected taxes and improper refunds is affected by many factors beyond IRS's control. Also, in deploying its resources to its various programs and activities, IRS must consider other factors besides maximizing revenue collections, minimizing improper refund payments, and minimizing costs incurred, such as ensuring it is applying the tax code fairly and improving overall compliance. Nevertheless, it is incumbent upon IRS to make optimum use of its available resources and to be able to credibly demonstrate it is doing so to Congress and the public. In fiscal year 2007, the continued lack of reliable and timely agencywide cost-based information and related cost-based performance measures, coupled with the lack of an agencywide strategy to employ these tools, inhibited IRS's ability to meet these objectives.

## Information Security

To effectively fulfill its tax processing responsibility, IRS relies extensively on computerized systems to support its financial and mission-related operations. Effective information system controls are essential to ensuring that taxpayer and financial information is adequately protected from inadvertent or deliberate misuse, fraudulent use, improper disclosure, or destruction. Ineffective system controls can impair the accuracy, completeness, and timeliness of information used by management and, in the absence of effective compensating procedures, increase the potential for undetected material misstatements in the agency's financial statements.

Significant weaknesses in information security controls continue to threaten the confidentiality, integrity, and availability of IRS's financial processing systems and information. In fiscal year 2007, we identified further weaknesses in controls for protecting access to systems and information, as well as other information security controls that affect key financial systems—particularly IFS and IRACS. For example, sensitive

information, including user IDs, passwords, and software code for mission-critical applications, was accessible on an internal Web site to anyone who could connect to IRS's internal network—without having to log in to the network. The information gained through this access could be used to alter data flowing to and from IFS. In addition, configuration flaws in the mainframe allowed users unrestricted access to all programs and data on the mainframe, including IRACS. Because this access was not controlled by the security system, no security violation logs would be created, reducing IRS's ability to detect unauthorized access. Weaknesses also existed in other areas, such as protecting against unauthorized physical access to sensitive computer resources and patching servers to protect against known vulnerabilities.

IRS has made limited progress in resolving previously reported security weaknesses in the controls for its financial and tax processing systems and information. To its credit, IRS implemented controls for user IDs on certain critical servers, improved physical protection for its procurement system, developed a security plan for IRACS, and upgraded servers that had been using obsolete operating systems. However, IRS has not completed corrective actions for other previously reported weaknesses. About 70 percent of the 98 weaknesses we previously identified that remained unresolved at the end of our fiscal year 2006 audit had not been corrected at the end of our fiscal year 2007 audit. These weaknesses included having passwords that were not complex enough to avoid being guessed or cracked, not physically protecting sensitive computer resources, and not encrypting sensitive information, such as user IDs and passwords, as it is transferred across the network. The agency's procurement system was particularly at risk, with issues such as not (1) appropriately restricting access to sensitive programs, (2) logging security-relevant events to provide audit trails, and (3) applying vendor-supplied system patches in a timely manner to protect against known vulnerabilities. These outstanding weaknesses, along with the new weaknesses identified during our fiscal year 2007 financial audit, increase the risk that data processed by the agency's financial management systems are not reliable.

A key reason for the presence of these information security weaknesses in IRS's financial systems was that it has not yet fully implemented a security

program[23] to ensure that controls are effectively established and maintained. Although IRS continues to make important progress in implementing such a program, it has not fully or consistently implemented program requirements for key information systems. For example, policies for monitoring security-relevant activities on the mainframe were not adequate to ensure that critical system changes were identified and authorized. In addition, IRS had not updated contingency plans for key general support systems, or documented that those plans were tested annually. Furthermore, the plans did not identify essential IRS business processes required to be restored if normal operations were disrupted. Until IRS takes additional steps to fully implement key elements of its information security program, its facilities, computing resources, and information will remain vulnerable to inappropriate use, modification, or disclosure, and agency management will have limited assurance of the integrity and reliability of its financial and taxpayer information.

The newly identified deficiencies in fiscal year 2007 and the unresolved deficiencies from prior audits represent a material weakness in IRS's internal controls over its financial systems. Collectively, these deficiencies reduce IRS's ability to secure its financial and sensitive taxpayer information and, in the absence of effective compensating procedures, increase the potential for undetected material misstatements in the agency's financial statements. We plan to issue a separate report on the newly identified deficiencies and the status of previously identified IRS information security deficiencies.

## Significant Deficiency

In addition to the material weaknesses previously discussed, we identified a significant deficiency concerning weaknesses in IRS's internal controls over hard-copy tax receipts and taxpayer information.

## Hard-Copy Tax Receipts and Taxpayer Information

IRS manually processes hundreds of billions of dollars of hard-copy taxpayer receipts and related taxpayer information at its service center campuses, field office taxpayer assistance centers, other field office units,

---

[23]In December 2002, Congress enacted the Federal Information Security Management Act of 2002 (FISMA), which requires agencies to develop, document, and implement an information security program. FISMA was enacted as title III of the E-Government Act of 2002 (Pub. L. No. 107-347, 116 Stat. 2946) (Dec. 17, 2002). This requirement was codified at 44 U.S.C. § 3544(b).

and commercial lockbox banks.[24] In previous audits, we have reported that weaknesses in IRS's controls designed to safeguard these taxpayer receipts and information increase the risk that receipts in the form of checks, cash, and the like could be misappropriated or that the information could be compromised.[25] During our fiscal year 2007 audit, we identified improved controls relating to courier security, processing of high-dollar receipts, and control of restricted areas, which mitigated some of these weaknesses. For example, we found that at the sites we visited, couriers transporting taxpayer deposits to depository institutions (1) were always on approved lists authorizing them access to taxpayer receipts and information, (2) always returned deposit slips by the next business day, and (3) never transported taxpayer receipts with related individuals. In addition, we found that IRS employees followed proper procedures when identifying high-dollar taxpayer receipts during the extraction and candling processes.[26] Finally, we found that IRS strictly enforced its prohibition against bringing personal belongings into restricted receipt processing areas.

Despite these improvements at its various processing facilities, IRS's controls over hard-copy taxpayer receipts and related information were not adequate to sufficiently limit the risk of theft, loss, or misuse of these funds and information. Specifically, we found the following:

---

[24]IRS's receipt processing facilities include service center campuses, which process tax returns and payments submitted by taxpayers and deposit tax payments in depository institutions; taxpayer assistance centers, which accept payments from and provide assistance directly to taxpayers; commercial lockbox banks that operate under contract with Treasury's Financial Management Service to provide tax receipt processing and deposit services on behalf of IRS; and other business operating divisions that provide taxpayer audit and assistance centers. Other business operating divisions are organized along the following business lines: Large and Mid-Size Businesses, Small-Business/Self-Employed, and Tax Exempt/Government Entities.

[25]See GAO-07-136; GAO, *Management Report: Improvements Needed in IRS's Internal Controls*, GAO-07-689R (Washington, D.C.: May 11, 2007); and *Internal Revenue Service: Status of GAO Financial Audit and Related Financial Management Report Recommendations*, GAO-07-629 (Washington, D.C.: June 7, 2007).

[26]In the extraction process, IRS opens the taxpayer mail it receives and removes (1) any correspondence for appropriate follow-up, (2) tax returns for posting to IRS records, and (3) remittances, such as checks, money orders, and cash, for deposit in financial institutions. Subsequent to extraction, the envelopes in which the taxpayer mail was received are subject to further inspection known as candling, to verify that no remittances or other taxpayer information has been overlooked. Once candling is complete, the empty envelopes are shredded.

- *Weaknesses in physical security controls designed to prevent unauthorized access to IRS's receipt processing facilities.* For example, during our fiscal year 2007 audit, we observed that (1) critical utilities, such as telephone and electrical feeds, were vulnerable to unauthorized access and tampering (at one taxpayer assistance center and two lockbox banks); (2) guards did not respond timely to alarms (at two service center campuses); (3) security cameras did not provide unobstructed 360 degree coverage of the building exterior or the facility's external perimeter (at three service center campuses and one lockbox bank); and (4) newly hired IRS employees were allowed to access facilities that process taxpayer receipts and information before proper fingerprint check results were received (53 IRS employees hired during the period October 1, 2006, through April 30, 2007).

- *Weaknesses in procedural safeguards and controls designed to account for, control, and protect taxpayer receipts.* For example, during our fiscal year 2007 audit, we found that IRS (1) was not always aware when contractors entered taxpayer assistance centers during nonoperating hours (at four taxpayer assistance centers), (2) was unable to provide evidence indicating that janitorial contractors with unescorted access to IRS facilities received favorable background investigations before being granted access (at three taxpayer assistance centers and three field office locations),[27] (3) was unable to provide evidence that contractor employees who participated in shredding federal taxpayer information at off-site facilities received favorable background investigations before being granted access to the information (at five taxpayer assistance centers and three field office locations), and (4) did not always ensure that employees receiving taxpayer payments had adequate system access restrictions to prevent improper recording of the payments received (at four taxpayer assistance centers).

- *Weaknesses in transfer security controls designed to safeguard hard-copy taxpayer receipts and related taxpayer information during transport between IRS business units and to or from third parties, such as depository institutions and post offices.* For example, during our fiscal year 2007 audit, we found that (1) there was no evidence that IRS employees sending packages containing taxpayer receipts and information followed up with responsible parties at the recipient

---

[27] IRS field offices can include such units as Small Business/Self-Employed, Large and Mid-Sized Businesses, and Tax-Exempt/Government Entities.

location when document transmittal forms, which are used to
specifically identify the contents of the packages shipped, remained
unacknowledged by the recipient (at one service center campus, two
taxpayer assistance centers, and five field office locations);
(2) personally identifiable information, including federal taxpayer
information, that is sent off-site was not encrypted (at four lockbox
banks); and (3) there was no evidence documenting managerial review
of transfer-related documents[28] (at one service center campus, seven
taxpayer assistance centers, and one field office location).

IRS's progress in addressing these issues has been hampered by a lack of
effective communication on newly implemented guidance and policies.
Although IRS issued new guidance or revised existing requirements during
fiscal year 2006 to address previously identified weaknesses, we often
continued to find the same or similar weaknesses in fiscal year 2007
because IRS staff were unaware of the recent changes. For example, we
found that most IRS employment office staff did not follow new juvenile
hiring policies and requirements; taxpayer assistance center employees did
not perform required payment and processing reviews; and, at one service
center campus, a security analyst used an incorrect and outdated version of
a security audit management checklist when performing a review. These
internal control weaknesses increase IRS's vulnerability to theft or loss and
expose taxpayers to increased risk of losses from financial crimes
committed by individuals who inappropriately gain access to taxpayer
receipts and confidential information entrusted to IRS.

## Compliance Issues

Our work on compliance with selected provisions of laws and regulations
disclosed one instance of noncompliance that is reportable under U.S.
generally accepted government auditing standards and OMB guidance. This
instance relates to the release of federal tax liens against taxpayers'
property. We also found that IRS's financial management systems do not
substantially comply with the requirements of FFMIA.

---

[28]Transfer-related documents include courier, mail, and deposit logs and Forms 795 and
3210, which accompany taxpayer receipts and other information shipped to other IRS
locations.

Appendix I
Material Weaknesses, Significant Deficiency,
and Compliance Issues

## Release of Federal Tax Liens

The Internal Revenue Code grants IRS the power to file a lien against the property of any taxpayer who neglects or refuses to pay all assessed federal taxes. The lien becomes effective when it is filed with a designated office, such as a courthouse in the county where the taxpayer's property is located.[29] The lien serves to protect the interest of the federal government and as a public notice to current and potential creditors of the government's interest in the taxpayer's property. For example, federal tax liens are disclosed in credit reports of individuals. Under section 6325 of the Internal Revenue Code, IRS is required to release federal tax liens within 30 days after the date the tax liability is satisfied or has become legally unenforceable or the Secretary of the Treasury has accepted a bond for the assessed tax.

In our prior audits, we found that IRS did not always release the applicable federal tax lien within 30 days of the tax liability being either paid off or abated, as required by the Internal Revenue Code.[30] In response, IRS has taken a number of actions over the past several years to improve its lien processing. For example, IRS centralized all lien processing at its Cincinnati Service Center Campus in 2005. In addition, in July 2006, IRS enhanced various lien processing-related exception reports to include a cumulative list of unresolved lien releases, allowing it to more readily track the release status and take corrective action.

Despite the actions IRS has taken to date to improve its lien release process, our work in fiscal year 2007 continued to find that IRS did not always timely release all tax liens. In prior audits, we tested a statistical sample of tax cases with liens in which the taxpayers' total outstanding tax liabilities were either paid off or abated during the fiscal year under audit. Beginning in fiscal year 2006, IRS began performing its own test of the effectiveness of its lien release process as part of implementing the

---

[29] 26 U.S.C. §§ 6321, 6323.

[30] GAO-07-136.

Appendix I
Material Weaknesses, Significant Deficiency,
and Compliance Issues

requirements of the revised OMB Circular No. A-123[31] and we reviewed its test results. For fiscal year 2007, we once again reviewed and validated IRS's test results.

In its testing of 59 statistically selected tax cases with liens in which the taxpayers' total outstanding tax liabilities were either paid off or abated during fiscal year 2007, IRS found 7 instances in which it did not release the applicable federal tax lien within the statutorily mandated 30 days. The time between satisfaction of the liability and release of the lien ranged from 35 days to 135 days. Based on its sample, IRS estimated that for about 12 percent of unpaid tax assessment cases in which it had filed a tax lien that were resolved in fiscal year 2007, it did not release the lien within 30 days.[32]

Various processing delays resulted in IRS not releasing these liens timely. In two of these cases, IRS received the taxpayers' satisfying payment just prior to recording the lien in its automated systems. Due to the processing time it takes for IRS to record information into the taxpayers' master file accounts, the payments did not post to the taxpayers' account until after IRS recorded the filing of the liens. Because IRS recorded the actual receipt date of the payment, which was prior to the date it recorded the lien filing, IRS's systems did not recognize that the payment had fully satisfied the outstanding tax liability. Consequently, its systems did not initiate the lien release process. In both cases, IRS released the liens only after it identified that they had not been released during its A-123 testing. In another case, IRS did not properly credit all of the taxpayer's outstanding accounts when the taxpayer sent in one payment to satisfy the tax liability of multiple tax accounts. Consequently, one of the taxpayer's accounts remained open, even though the taxpayer satisfied the total tax liability. This, in turn, prevented the initiation of the lien release process for this taxpayer. In

---

[31]OMB's revised Circular No. A-123, *Management's Responsibility for Internal Control*, became effective on October 1, 2005. Circular No. A-123 provides updated internal control guidance and new requirements for executive branch agencies to follow in conducting management's assessment of the effectiveness of internal control over financial reporting. Based on this assessment, agency management is required to prepare an assurance statement on the effectiveness of internal controls over financial reporting to be included in its performance and accountability report. These requirements are applicable to the 24 Chief Financial Officers Act agencies, including Treasury, of which IRS is a significant component.

[32]IRS is 95 percent confident that the percentage of cases in which the lien was not released within 30 days does not exceed 21 percent.

another case, IRS did not timely update the taxpayer's account to reflect that the taxpayer had been discharged of the taxes in bankruptcy court. In yet another case, IRS failed to timely resolve issues with the account when it showed up on an exception report. In the two remaining cases, IRS received the taxpayers' satisfying payments just prior to, or during, the annual 3 week period when IRS was scheduled to perform maintenance on its master files. During this period, IRS could not record the payment in the taxpayers' master file accounts, which delayed the initiation of the lien release process. This delay, in turn, resulted in IRS releasing the liens more than 30 days after receipt of the satisfying payments. However, the delays in these two cases exceeded the 30 day limit by only a few days.

These issues are similar to those we reported in prior audits.[33] We issued reports in January 2005 and May 2007 that discussed the factors contributing to IRS's failure to timely release federal tax liens, along with our recommendations to address those issues.[34] The continued failure to promptly release tax liens could cause undue hardship and burden to taxpayers who are attempting to sell property or apply for commercial credit.

## Financial Management Systems' Noncompliance With FFMIA

In fiscal year 2007, we continued to find that IRS's financial management systems did not substantially comply with the requirements of FFMIA. Specifically, IRS's systems did not substantially comply with FFMSR, federal accounting standards (U.S. generally accepted accounting principles), and the SGL at the transaction level. We found that IRS cannot rely solely on information from its general ledger to prepare its financial statements because the reported balance for taxes receivable, which accounted for over 83 percent of the assets reported by IRS on its balance sheet as of September 30, 2007, is the product of a complex statistical estimation process and is not supported by transaction detail or entered into IRACS. In addition, IRS (1) does not have an adequate audit trail from IRACS back to detailed records and transaction source documents for any of its material tax-related balances—tax revenues, tax refunds, and taxes receivable—and (2) cannot produce managerial cost information

---

[33]GAO-07-136.

[34]GAO, *Opportunities to Improve Timeliness of IRS Lien Releases*, GAO-05-26R (Washington, D.C.: Jan. 10, 2005), and *Management Report: Improvements Needed in IRS's Internal Controls*, GAO-07-689R (Washington, D.C.: May 11, 2007).

consistent with Statement of Federal Financial Accounting Standards No 4, *Managerial Cost Accounting Standards*.

IRS's implementation of the first release of IFS represented a major step forward and has provided significant benefits, such as enhanced audit trails for nontax amounts and a cost module. However, IRS continues to rely on obsolete systems to process tax revenues, tax refunds, and unpaid tax assessments, including taxes receivable. IRS will need to address the limitations of these tax administration systems if it is to fully resolve many of its long-standing financial management challenges. In addition, since these systems do not interface with IFS—which accounts for and reports only IRS's nontax administrative activities—IRS will also need to determine how to overcome this separation to successfully apply the cost information in IFS to its tax-related transactions. As discussed earlier, IRS has initiated several pilot projects intended to explore ways of addressing this issue, but the ultimate solution remains unclear.

This noncompliance with FFMIA is a result of the material weaknesses discussed earlier in this report related to the inability of IRS's financial management systems to produce auditable financial statements and related disclosures that conform to U.S. generally accepted accounting principles without substantial compensating processes and significant adjustments, as well as IRS's continued inability to routinely accumulate and report the full cost of its activities. Since IRS's systems do not substantially comply with FFMSR, U.S. generally accepted accounting principles, and the SGL, they also do not comply with OMB Circular No. A-127, *Financial Management Systems* (revised Dec. 1, 2004). In its Federal Managers' Financial Integrity Act of 1982 assurance statement to Treasury, IRS reported that its financial management systems did not substantially comply with the requirements of FFMIA in fiscal year 2007.

IRS has established a remediation plan to address the conditions affecting its systems' inability to substantially comply with the requirements of FFMIA. This plan outlines the actions to be taken to resolve these issues, but because of the long-term nature of IRS's systems modernization efforts, which IRS expects will resolve many of the most serious issues, many of the planned time frames exceed the 3-year resolution period specified in FFMIA. OMB concurred with Treasury's determination that IRS could not bring its systems into substantial compliance within 3 years, and OMB

monitors IRS's progress in remediating its systems deficiencies on an ongoing basis.[35]

---

[35]Section 803(c)(4) of FFMIA requires that Treasury, with the concurrence of the Director of OMB, specify the most feasible date for binging its systems into substantial compliance with the three FFMIA system requirements and designate a Treasury official who shall be responsible for bringing its systems into substantial compliance by that date.

Appendix II

# Details on Audit Methodology

To fulfill our responsibilities as the auditor of IRS's financial statements, we did the following:

- We examined, on a test basis, evidence supporting the amounts and disclosures in the financial statements. This included selecting statistical samples of unpaid assessment, revenue, refund, accrued expenses, payroll, nonpayroll, property and equipment, accounts payable, and undelivered order transactions. These statistical samples were selected primarily to substantiate balances and activities reported in IRS's financial statements. Consequently, dollar errors or amounts can and have been statistically projected to the population of transactions from which they were selected. In testing some of these samples, certain attributes were identified that indicated deficiencies in the design or operation of internal control. These attributes, where applicable, can be and have been statistically projected to the appropriate populations.

- We assessed the accounting principles used and significant estimates made by management.

- We evaluated the overall presentation of the financial statements.

- We obtained an understanding of internal controls related to financial reporting (including safeguarding assets) and compliance with laws and regulations (including the execution of transactions in accordance with budget authority).

- We obtained an understanding of the design of the internal controls relating to the existence and completeness assertions related to the performance measures reported in IRS's Management Discussion and Analysis, and determined that they have been placed in operation.

- We tested relevant internal controls over financial reporting (including safeguarding assets) and compliance, and evaluated the design and operating effectiveness of internal controls.

- We considered IRS's process for evaluating and reporting on internal controls and financial management systems under 31 U.S.C. § 3512 (c), (d), commonly referred to as the Federal Managers' Financial Integrity Act of 1982, and OMB Circular No. A-123, *Management's Responsibility for Internal Control*.

- We tested compliance with selected provisions of the following laws and regulations: Anti-Deficiency Act, as amended (31 U.S.C. § 1341(a)(1) and 31 U.S.C. § 1517(a)); Purpose Statute (31 U.S.C. § 1301); Release of lien or discharge of property (26 U.S.C. § 6325); Interest on underpayment, nonpayment, or extensions of time for payment of tax (26 U.S.C. § 6601); Interest on overpayments (26 U.S.C. § 6611); Determination of rate of interest (26 U.S.C. § 6621); Failure to file tax return or to pay tax (26 U.S.C. § 6651); Failure by individual to pay estimated income tax (26 U.S.C. § 6654); Failure by corporation to pay estimated income tax (26 U.S.C. § 6655); Prompt Payment Act (31 U.S.C. § 3902(a), (b), and (f) and 31 U.S.C. § 3904); Pay and Allowance System for Civilian Employees (5 U.S.C. §§ 5332 and 5343, and 29 U.S.C. § 206); Federal Employees' Retirement System Act of 1986, as amended (5 U.S.C. §§ 8422, 8423, and 8432); Social Security Act, as amended (26 U.S.C. §§ 3101 and 3121 and 42 U.S.C. § 430); Federal Employees Health Benefits Act of 1959, as amended (5 U.S.C. §§ 8905, 8906, and 8909); Revised Continuing Appropriations Resolution, 2007, Pub. L. No. 110-5, §§ 101, 103, 104, 21050, 21053, 121 Stat. 8, 9, 54 (Feb. 15, 2007), which incorporates by reference certain provisions in the Department of the Treasury Appropriations Act, 2006, Pub. L. No. 109-115, div. A, tit. II, 119 Stat. 2432, 2436-7 (Nov. 30, 2005); and Revised Continuing Appropriations Resolution, 2007, Pub. L. No. 110-5, §§ 21051, 21052, 121 Stat. 8, 54 (Feb. 15, 2007), which incorporates by reference certain provisions in Title II of H.R. 5576 (109th Congress, June 14, 2006); Department of the Treasury Appropriations Act, 2006, Pub. L. No. 109-115, div. A, tit. II, 119, Stat. 2396, 2432 (Nov. 30, 2005).

- We tested whether IRS's financial management systems substantially comply with the three requirements of the Federal Financial Management Improvement Act of 1996 (Pub. L. No. 104-208, div. A, § 101(f), tit. VIII, 110 Stat. 3009, 3009-389 (Sept. 30, 1996).

Appendix III

# Comments from the Internal Revenue Service



**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**WASHINGTON, D.C. 20224**

DEPUTY COMMISSIONER

November 5, 2007

Mr. David M. Walker
Comptroller General
U.S. Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Dear Mr. Walker:

Thank you for the opportunity to comment on the draft report titled, *Financial Audit: IRS's Fiscal Years 2007 and 2006 Financial Statements*. We are pleased that the Internal Revenue Service (IRS) received an unqualified opinion on the combined financial statements for the eighth consecutive year. The unqualified opinion demonstrates that the IRS accurately accounts for approximately $2.7 trillion in tax revenue receipts, $292 billion in tax refunds, and $11 billion in IRS appropriated funds.

The report recognizes the significant accomplishments the IRS made this year in addressing outstanding audit issues. It is also noteworthy that we implemented another phase of the Custodial Detail Data Base (CDDB) that created the interface between CDDB and Interim Revenue Accounting Control System (IRACS) for posting to IRACS summary unpaid assessment and accrual data.

We are dedicated to continuing to improve financial management at the IRS, as evidenced by the following additional FY 2007 achievements:

- Conducted A-123 activities by testing transaction processes material to Treasury's Consolidated Financial Statements, including 29 administrative processes related to $10 billion in administrative transactions and 6 custodial tax processes related to $2 trillion in tax revenues
- Completed required Federal Information Security Management Act activities, including contingency plan testing on 260 applications and systems and live disaster recovery testing for all major applications
- Improved the timely release of liens to 88 percent, a 19 percentage point increase from the 69 percent timeliness rate in FY 2006
- Achieved a 21 percent improvement in the Trust Fund Recovery Penalty accuracy rate through the use of CDDB to resolve issues
- Issued first published cost accounting policy
- Improved capability to capitalize or expense assets and properly account for Business System Modernization costs in internal use software
- Established the Custodial Financial Requirements Board to ensure that custodial financial requirements are included in Business System Modernization projects

2

Improving information security continues to be a priority for the IRS. The IRS established the Office of Privacy, Information Protection, and Data Security to provide direction and oversight of the security and protection of sensitive information. We also developed an integrated Information Technology Security Schedule and Plan and a comprehensive IRS security strategy. We encrypted all laptop data and tapes used in electronic data exchange and implemented an enterprise anti-virus Internet gateway solution to detect and quarantine malicious content from invading systems.

I want to recognize the Government Accountability Office's support throughout the audit. While challenges remain, the IRS has established its ability to consistently produce accurate and reliable financial statements. We have a solid management team dedicated to promoting the highest standard of financial management, and we continue to increase the focus on information security and internal controls while improving financial reporting.

Sincerely,

Richard A. Spires

| | |
|---|---|
| **GAO's Mission** | The Government Accountability Office, the audit, evaluation, and investigative arm of Congress, exists to support Congress in meeting its constitutional responsibilities and to help improve the performance and accountability of the federal government for the American people. GAO examines the use of public funds; evaluates federal programs and policies; and provides analyses, recommendations, and other assistance to help Congress make informed oversight, policy, and funding decisions. GAO's commitment to good government is reflected in its core values of accountability, integrity, and reliability. |
| **Obtaining Copies of GAO Reports and Testimony** | The fastest and easiest way to obtain copies of GAO documents at no cost is through GAO's Web site (www.gao.gov). Each weekday, GAO posts newly released reports, testimony, and correspondence on its Web site. To have GAO e-mail you a list of newly posted products every afternoon, go to www.gao.gov and select "E-mail Updates." |
| **Order by Mail or Phone** | The first copy of each printed report is free. Additional copies are $2 each. A check or money order should be made out to the Superintendent of Documents. GAO also accepts VISA and Mastercard. Orders for 100 or more copies mailed to a single address are discounted 25 percent. Orders should be sent to: |
| | U.S. Government Accountability Office<br>441 G Street NW, Room LM<br>Washington, D.C. 20548 |
| | To order by Phone:  Voice: (202) 512-6000<br>TDD: (202) 512-2537<br>Fax:   (202) 512-6061 |
| **To Report Fraud, Waste, and Abuse in Federal Programs** | Contact:<br>Web site: www.gao.gov/fraudnet/fraudnet.htm<br>E-mail: fraudnet@gao.gov<br>Automated answering system: (800) 424-5454 or (202) 512-7470 |
| **Congressional Relations** | Gloria Jarmon, Managing Director, jarmong@gao.gov, (202) 512-4400<br>U.S. Government Accountability Office, 441 G Street NW, Room 7125<br>Washington, D.C. 20548 |
| **Public Affairs** | Chuck Young, Managing Director, youngc1@gao.gov, (202) 512-4800<br>U.S. Government Accountability Office, 441 G Street NW, Room 7149<br>Washington, D.C. 20548 |

 PRINTED ON RECYCLED PAPER

**EXHIBIT B:**
Title 26 U.S.C. § 446 – General Rule For Methods of Accounting
(1 page)

*26 USC 446*

NB: *This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).*

# TITLE 26 - INTERNAL REVENUE CODE
## Subtitle A - Income Taxes
### CHAPTER 1 - NORMAL TAXES AND SURTAXES
#### Subchapter E - Accounting Periods and Methods of Accounting
##### PART II - METHODS OF ACCOUNTING
###### Subpart A - Methods of Accounting in General

## § 446. General rule for methods of accounting

### (a) General rule

Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

### (b) Exceptions

If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.

### (c) Permissible methods

Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting—

(1) the cash receipts and disbursements method;

(2) an accrual method;

(3) any other method permitted by this chapter; or

(4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary.

### (d) Taxpayer engaged in more than one business

A taxpayer engaged in more than one trade or business may, in computing taxable income, use a different method of accounting for each trade or business.

### (e) Requirement respecting change of accounting method

Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary.

### (f) Failure to request change of method of accounting

If the taxpayer does not file with the Secretary a request to change the method of accounting, the absence of the consent of the Secretary to a change in the method of accounting shall not be taken into account—

(1) to prevent the imposition of any penalty, or the addition of any amount to tax, under this title, or

(2) to diminish the amount of such penalty or addition to tax.

(Aug. 16, 1954, ch. 736, 68A Stat. 151; Pub. L. 94–455, title XIX, § 1906 (b)(13)(A), Oct. 4, 1976, 90 Stat. 1834; Pub. L. 98–369, div. A, title I, § 161(a), July 18, 1984, 98 Stat. 696.)

### Amendments

1984—Subsec. (f). Pub. L. 98–369 added subsec. (f).

1976—Subsecs. (b), (c), (e). Pub. L. 94–455 struck out "or his delegate" after "Secretary".

### Effective Date of 1984 Amendment

Section 161(b) of Pub. L. 98–369 provided that: "The amendment made by this section [amending this section] shall apply to taxable years beginning after the date of the enactment of this Act [July 18, 1984]."

**EXHIBIT C**

Treasury Regulations 26.6001-1(d) – Notice Requirement to Keep Books and Records,
Letters 978, 979 and Delegation Order No. 24
(10 pages)

Internal Revenue Service

Department of the Treasury

Social Security or
   Employer Identification Number:

Date:

Person to Contact:

Contact Telephone Number:

Our review shows that you are not keeping adequate records to determine your correct Federal tax liability. The reasons why your records are not adequate are explained below.

You are required by law to keep permanent records and supporting documents. Penalties may be charged for your not doing so. The applicable provisions of the Internal Revenue Code and Regulations are printed on the back of this letter.

This letter is your official notice to keep complete records so your correct tax liability may be determined. The records you keep must show all of the following information:

(1) The date and a description of each transaction you engaged in.

(2) The date and amount of each item of gross income received.

(3) A description of the nature of income received.

(4) The date and amount of each payment you made.

(5) The name and address of the payee.

(6) A description of the nature of each payment.

If your have any question, please contact the person whose name and telephone number are shown above.

Sincerely yours,

(over)

Letter 978 (DO) (Rev. 2-87)
Cat. No. 40412G

## APPLICABLE PROVISIONS OF THE INTERNAL REVENUE CODE AND REGULATIONS

Section 6001 of the Internal Revenue Code provides as follows:

"Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe. Whenever in the judgment of the Secretary it is necessary, he may require any person, by notice served upon such person or by regulations, to make such returns, render such statements, or keep such records, as the Secretary deems sufficient to show whether or not such person is liable for tax under this title."

 Section 1.6001 - 1 (e) of the Regulations under the Internal Revenue Code provides as follows:

"(e) Retention of Records. - The books or records required by this section shall be kept at all times available for inspection by authorized Internal Revenue officers or employees, and shall be retained so long as the contents thereof may become material in the administration of any Internal Revenue law."

Section 7203 of the Internal Revenue Code provides as follows:

"Any person required under this title to pay any estimated tax or tax , or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations , shall in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($1 00,000 in the case of a corporation), or imprisoned not more than 1 year, or both, together with the costs of prosecution."

---

### ORIGINAL OR THIS NOTICE SERVED AS INDICATED

| Taxpayer's name | Social Security or employer identification number |
|---|---|

Date (day, month, year) taxpayer was verbally told records were not adequate

| Agreement Form 2807 solicited<br>☐ Secured  ☐ Not Secured | Date solicited (day, month, year) |
|---|---|
| Original of this notice personally served on (name) | Date (day, month, year) |

Address where notice was served

| Signature of person serving notice | Title |
|---|---|

Letter 978 (DO) (Rev. 2-87)

Cat. No. 40412G

**Internal Revenue Service**                          **Department of the Treasury**

Date:

Form Number:

Kind of Tax:

Social Security or Employer Identification Number:

Person to Contact:

Employee Identification Number:

Contact Telephone Number:

Dear

Our review of your records shows they do not adequately verify your Federal tax liability identified above. Our reasons for believing they are not adequate are explained at the bottom of this letter.

You are required by law to keep permanent records and supporting documents (the applicable provisions of the Internal Revenue Code and Regulations are printed on the back of this letter). These records may consist of documents such as invoices, bills, tapes, and receipts for a timely kept account book, diary or statement of expenses and supporting receipts, paid bills, or canceled checks. These must be sufficiently detailed and arranged so that your liability can be accurately reported and verified.

Please send us, within the next 6 months, an explanation of how you are correcting your record keeping to meet the requirements of the law.

If you have any questions, please contact the person whose name and telephone number are shown above.

Sincerely yours,

Letter 979 (DO) (Rev. 2-1987)
Catalog Number: 40413R

**Reasons why records are not adequate:**

## APPLICABLE PROVISIONS OF THE INTERNAL REVENUE CODE

**Section 6001 of the Internal Revenue Code provides in part:**

"Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe ..."

**Section 7203 of the Internal Revenue Code also states:**

"Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year, or both, together with the costs of prosecution."

**Applicable Regulations under the Internal Revenue Code are:**

### ORIGINAL OF THIS NOTICE SERVED AS INDICATED

| Taxpayers name | Social Security or employer identification number |
|---|---|
| | |

Date (day, month, year) taxpayer was verbally notified about inadequacy of records

Date (day, month, year) original of this notice was served

| Address where notice was served | ☐ In Person    ☐ By Mail |
|---|---|
| Signature of person serving notice | Title |

Letter 979 (DO) (Rev. 2-1987)
Catalog Number: 40413R

**Internal Revenue Service, Treasury**                    **§ 1.6001-1**

return for the taxable year including such December 31. The statement shall set forth the name, address, employer identification number, and taxable years of each of the other component members (including wholly owned subsidiaries) of the controlled group. Such other members shall attach a copy of the statement to their income tax returns for their taxable years including such December 31. An election plan adopted by a controlled group with respect to a particular December 31 shall be valid only for the taxable year of each member of the group which includes such December 31.

(3) Each component member of a controlled group which is a wholly owned subsidiary of such group with respect to a December 31 shall be deemed to consent to an election with respect to such December 31, provided each component member of the group which is not a wholly owned subsidiary consents to the election plan. A component member of a controlled group shall be considered to be a wholly owned subsidiary of the group with respect to a December 31 if, on each day preceding such date during its taxable year which includes such date, all of its stock is owned directly by one or more corporations which are component members of the group on such December 31.

[T.D. 7181, 37 FR 8071, Apr. 25, 1972]

## Procedure and Administration

### INFORMATION AND RETURNS

#### RETURNS AND RECORDS

SOURCE: Sections 1.6001-1 to 1.6091-4 contained in T.D. 6500, 25 FR 12108, Nov. 26, 1960, unless otherwise noted.

RECORDS, STATEMENTS, AND SPECIAL RETURNS

**§ 1.6001-1  Records.**

(a) *In general.* Except as provided in paragraph (b) of this section, any person subject to tax under subtitle A of the Code (including a qualified State individual income tax which is treated pursuant to section 6361(a) as if it were imposed by chapter 1 of subtitle A), or any person required to file a return of information with respect to income,

shall keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information.

(b) *Farmers and wage-earners.* Individuals deriving gross income from the business of farming, and individuals whose gross income includes salaries, wages, or similar compensation for personal services rendered, are required with respect to such income to keep such records as will enable the district director to determine the correct amount of income subject to the tax. It is not necessary, however, that with respect to such income individuals keep the books of account or records required by paragraph (a) of this section. For rules with respect to the records to be kept in substantiation of traveling and other business expenses of employees, see § 1.162-17.

(c) *Exempt organizations.* In addition to such permanent books and records as are required by paragraph (a) of this section with respect to the tax imposed by section 511 on unrelated business income of certain exempt organizations, every organization exempt from tax under section 501(a) shall keep such permanent books of account or records, including inventories, as are sufficient to show specifically the items of gross income, receipts and disbursements. Such organizations shall also keep such books and records as are required to substantiate the information required by section 6033. See section 6033 and §§ 1.6033-1 through 1.6033-3.

(d) *Notice by district director requiring returns statements, or the keeping of records.* The district director may require any person, by notice served upon him, to make such returns, render such statements, or keep such specific records as will enable the district director to determine whether or not such person is liable for tax under subtitle A of the Code, including qualified State individual income taxes, which are treated pursuant to section 6361(a) as if they were imposed by chapter 1 of subtitle A.

(e) *Retention of records.* The books or records required by this section shall

57

# Manual Transmittal

Department of the Treasury

Internal Revenue Service

**1229–220**

**August 12, 1997**

## Purpose

This transmits revised Table of Contents and Delegation Order No. 14 (Rev. 5), Extension of Time for Filing Statement of Grounds; Delegation Order No. 23 (Rev. 15), Settlement of Tort Claims, Claims under the Small Claims Act, and Claims Made by an Employee of the Internal Revenue Service for Damage to or Loss of Personal Property Incident to Service; Delegation Order No. 24 (Rev. 24), Recordkeeping Requirement; Delegation Order No. 35 (Rev. 15), Agreements Treated as Determinations; Delegation Order No. 57 (Rev. 9), Notice of Additional Inspection of Books of Account; Delegation Order No. 67 (Rev. 23), Signing the Commissioner's name or on the Commissioner's Behalf; Delegation Order No. 164 (Rev. 5), Authority to Prescribe Identification Media; Delegation Order No. 182 (Rev. 7), Execute Returns; Delegation Order No. 228 (Rev. 3), Abate Interest Due to IRS Error or Delay; Delegation Order No. 231 (Rev. 4), Abate Interest on Erroneous Refunds; Delegation Order No. 244 (Rev. 1), IRS Employees' Returns Selected for Examination; and the revocations of Delegation Order No. 46 (Rev. 6), Authority for Management and Disposal of Records; and Delegation Order No. 201, Authority to Certify to the Destruction of IRS Records for Court Purposes, for IRM 1229, Handbook of Delegation Orders.

## Nature of Changes

Delegation Order No. 14 (Rev. 4) is retitled and revised to simplify and reformat and to add redelegation authority by the Regional Commissioners to Chief, Quality Measurement Staff and Revenue Agents (Reviewers) not lower than GS-13.

Delegation Order No. 23 (Rev. 14) is being revised to indicate that the Chief, Facilities Management Branch, and Regional Offices no longer have authority under the Military Personnel and Civilian Employees' Claims Act (31 U.S.C.§ 3721) to settle and pay claims by employees for damage to or loss of personal property incident to their service. Such authority is now vested exclusively in the Claims Manager, National Office. Reference to the Austin Compliance Center is removed because the Austin Compliance Center merged with the Austin Service Center effective December 8, 1996.

Delegation Order No. 24 (Rev. 1) is retitled and revised to simplify and reformat and to provide for redelegation to Examination and EP/EO Group Managers.

Delegation Order No. 35 (Rev. 14) is retitled and revised to simplify and reformat. No substantive changes have been made.

Delegation Order No. 46 (Rev. 6) is revoked because it is procedural in nature. Procedures for the management and disposal of records are in IRM 1(15)00, Records Administration, and IRM 1(15)59.31, General Records Schedule.

## Filing Instructions

| Remove: | Insert: |
|---|---|
| 1229–1 through 1229–2.3 | 1229–1 through 1229–2.3 |
| 1229–7 through 1229–9 | 1229–7 through 1229–9 |
| 1229–13 through 1229–15 | 1229–13 through 1229–15 |
| 1229–19 through 1229–25 | 1229–19 through 1229–25 |
| 1229–60.1 | 1229–60.1 |
| 1229–65 | 1229–65 |
| 1229–71 | 1229–71 |
| 1229–72.7 through 1229–73 | 1229–72.7 through 1229–73 |
| 1229–74.5 | 1229–74.5 |

Manual Transmittal Cont.

Delegation Order No. 57 (Rev. 8) is retitled and revised to simplify and reformat the content. No substantive changes are made.

Delegation Order No. 67 (Rev. 22) is revised to reflect that all outstanding authorizations to sign the name of, or on behalf of, Margaret Milner Richardson, are hereby amended to authorize the signing of the name of, or on behalf of, Michael P. Dolan, Acting Commissioner of Internal Revenue.

Delegation Order No. 164 (Rev. 4) is revised to reflect organizational changes and to simplify and reformat.

Delegation Order No. 182 (Rev. 6) is retitled and revised to simplify and reformat the content. Detroit Computing Center authorization is changed to reflect GS-9 rather than GS-8 grade level for Employment Tax Adjustment Program (ETAP) Support Managers and reference to 6020(b) managers is deleted since the position no longer exists. In addition, reference to Austin Compliance Center is removed because the Austin Compliance Center merged

with the Austin Service Center effective December 8, 1996.

Delegation Order No. 201 is revoked because it is procedural in nature. Procedures for the certification and destruction of IRS records are in IRM 1(15)00, Records Administration.

Delegation Order Nos. 228 (Rev. 2) and 231 (Rev. 3) are retitled and revised to simplify and reformat the content. No substantive changes have been made.

Delegation Order 244 is retitled and revised to simplify and reformat the content. Reference to the compliance center is removed because the Austin Compliance Center merged with the Austin Service Center effective December 8, 1996.

Charlotte Elaine Perdue
National Director,
Strategic Planning Division

Handbook of Delegation Orders

# List of Current Pages

| Page No. | | Page No. | | Page No. | | Page No. | | Page No. | |
|---|---|---|---|---|---|---|---|---|---|
| 01 | (8–12–97) | 28.1 | (7–8–91) | 51 | (7–8–91) | 72.5 | (5–14–97) | 91 | (4–3–91) |
| 02.1 | (8–12–97) | 29 | (5–14–97) | 53 | (7–8–91) | 72.7 | (8–12–97) | 93 | (10–4–90) |
| 02.3 | (8–12–97) | 30.1 | (5–14–97) | 55 | (7–8–91) | 73 | (8–12–97) | 95 | (10–4–90) |
| 03 | (10–11–94) | 31 | (12–31–96) | 57 | (7–8–91) | 74.1 | (3–3–97) | 97 | (4–3–91) |
| 05 | (10–11–94) | 33 | (4–5–96) | 58.1 | (4–25–94) | 74.3 | (3–3–97) | 99 | (10–4–90) |
| 07 | (8–12–97) | 35 | (5–11–95) | 59 | (12–31–96) | 74.5 | (8–12–97) | 101 | (4–3–91) |
| 09 | (8–12–97) | 37 | (10–25–96) | 60.1 | (8–12–97) | 74.7 | (4–1–97) | 103 | (1–12–89) |
| 11 | (11–10–93) | 39 | (5–14–97) | 61 | (7–29–97) | 75 | (10–16–92) | 105 | (1–12–89) |
| 13 | (8–12–97) | 40.1 | (10–25–96) | 63 | (12–31–96) | 77 | (10–16–92) | 107 | (1–12–89) |
| 15 | (8–12–97) | 41 | (5–14–97) | 65 | (8–12–97) | 79 | (4–3–91) | 109 | (4–3–91) |
| 17 | (7–29–97) | 43 | (7–23–96) | 67 | (12–31–96) | 81 | (4–3–91) | 111 | (6–17–90) |
| 19 | (8–12–97) | 45 | (12–31–96) | 69 | (12–31–96) | 83 | (4–3–91) | 113 | (6–17–90) |
| 21 | (8–12–97) | 47 | (12–31–96) | 71 | (8–12–97) | 85 | (4–3–91) | 115 | (1–12–89) |
| 23 | (8–12–97) | 48.1 | (8–29–96) | 72.1 | (5–14–97) | 87 | (4–3–91) | 117 | (1–12–89) |
| 25 | (8–12–97) | 49 | (7–8–91) | 72.3 | (5–14–97) | 89 | (10–4–90) | 119 | (12–21–89) |
| 27 | (3–3–97) | | | | | | | | |

Current Manual Supplements

Handbook of Delegation Orders

**page 1229-1**
(8-12-97)

# Table of Contents

| | |
|---|---|
| 4 ................. | Authority to Issue Summonses, to Administer Oaths and Certify, and to Perform Other Functions |
| 5 ................. | Order of Succession and Designation to Act as Commissioner of Internal Revenue Service |
| 8 ................. | Authority to Sign Agreements as to Liability for Personal Holding Company Tax |
| 9 ................. | Use of Government Owned or Leased Automobiles Between Home and Work |
| 11 ................. | Authority to Accept or Reject Offers in Compromise |
| 12 ................. | Designation of Acting Supervisory Officials |
| 13 ................. | Redelegation of Regional Authority to Service Centers and the Austin Compliance Center |
| 14 ................. | Extension of Time for Filing Statements of Grounds |
| 16 ................. | Authorization to Approve Confidential Expenditures |
| 17 ................. | Authorization to Approve Confidential Expenditures for Money Laundering Investigations |
| 19 ................. | Payment of Expenses Incident to Transfers or Appointments of Employees to New Official Stations, Tour Renewal Agreement Travel, and Similar Items |
| 20 ................. | Extension of Time to Pay Excess Profits, Estate and Gift Taxes |
| 21 ................. | Extension of Time to File Returns and Pay Certain Excise Taxes |
| 23 ................. | Settlement of Tort Claims, Claims under the Small Claims Act, and Claims Made by an Employee of the Internal Revenue Service for Damage to or Loss of Personal Property Incident to Service |
| 24 ................. | Recordkeeping Requirement |
| 25 ................. | Reimbursement for Actual Subsistence, Certain Emergency Travel Situations or Temporary Relocation |
| 27 ................. | Authority to Administer Oaths Required by Law in Connection with Employment in the Federal Service |
| 28 ................. | Designation of Officers and Employees as Authorized Certifying Officers |
| 29 ................. | Certification and Approval of Internal Revenue Collections |
| 35 ................. | Agreements Treated as Determinations |
| 39 ................. | Tours of Duty and Overtime |
| 40 ................. | Credits and Refunds |
| 42 ................. | Authority to Execute Consents Fixing the Period of Limitations on Assessment or Collection Under Provisions of the 1939, 1954, and 1986 Internal Revenue Codes |
| 46 ................. | (Revoked) |
| 47 ................. | Authority to Authorize or Approve Attendance at Meetings at Government Expense |
| 48 ................. | Foreign Travel |
| 50 ................. | Withholding Compensation Due Personnel |
| 51 ................. | Authority to Sign Proofs of Claim and Other Documents |
| 56 ................. | Gasoline and Lubricating Oil Bonds |
| 57 ................. | Notice of Additional Inspection of Books of Account |
| 60 ................. | 26 CFR 601.106: Appeals Functions. Settlement of Cases Docketed in the United States Tax Court |
| 66 ................. | Authority of Regional Director of Appeals in Protested and Tax Court Cases |

2. To consider, ascertain, adjust, and determine under 31 U.S.C. § 3723 claims for reimbursement of bank charges arising out of erroneous Service levies or bank charges for stopping payment on a check, which the Service lost or misplaced and requested the taxpayer to replace.

**Delegated to:**

1. The authority in paragraph 1 above is delegated to the Claims Manager, National Office.

2. The authority in paragraph 2 above is delegated to the Assistant Commissioner (International); District Directors; and Service Center Directors for matters under their jurisdiction.

**Redelegation:**

1. The authority delegated above to the Claims Manager, National Office may not be redelegated.

2(a). The authority delegated above to the Assistant Commissioner (International); District Directors; and Service Center Directors to consider, ascertain, adjust, and determine claims for reimbursement of bank charges for stopping payment on a check may be redelegated but not lower than to first line supervisors.

2(b). The authority delegated above to the Assistant Commissioner (International); District Directors; and Service Center Directors to consider, ascertain, adjust, and determine claims for reimbursement of bank charges arising out of erroneous Sevice levies may be redelegated but not lower than to branch chiefs.

**Sources of Authority:** Treasury Orders 101–06 and 101–15.

To the extent that the authority previously exercised consistent with this order may require ratification, it is hereby approved and ratified. This order supersedes Delegation Order No. 23 (Rev. 14), effective September 20, 1993.

Michael P. Dolan
Deputy Commissioner

## Order No. 24 (Rev. 2)
Effective Date: 5–12–97
**Recordkeeping Requirement**

**Authority:** To require any person, by notice served them, to keep records reflecting whether or not the person is liable for tax.

**Delegated to:** Assistant Commissioner (International) and District Directors.

**Redelegation:** This authority may be redelegated to Examination and Employee Plans and Exempt Organizations Group Managers.

**Source of Authority:** IRC Section 6001.

## Order No. 23
IR Manual

MT 1229–220

To the extent that the authority previously exercised consistent with this order may require ratification, it is hereby approved and ratified. This order supersedes Delegation Order No. 24 (Rev. 1) effective May 12, 1986.

John M. Dalrymple
for James E. Donelson
Acting Chief Compliance Officer

## Order No. 25 (Rev. 20)
Effective Date: 4–3–91
**Reimbursement for Actual Subsistence, Certain Emergency Travel Situations or Temporary Relocation**

1. Pursuant to authority delegated to the Commissioner of Internal Revenue by Treasury Directive 74–07 and FPMR 101–7, when the unusual circumstances of the travel assignment justify, the officials named below are delegated authority to:

(a) authorize or approve reimbursement for subsistence expenses on an actual expense basis,

(b) authorize or approve travel and transportation expenses for emergency purposes,

(c) authorize or approve travel and transportation expenses for threatened law enforcement and investigative employees and their immediate family.

(d) authorize advances of funds related to the travel specified in 1a, 1b, and 1c.

2. This authority applies to employees traveling on official business in accordance with the General Travel Order or individual travel orders subject to the limitations prescribed by the Federal Travel Regulations.

3. List of delegated officials:
   Chief Counsel
   Chief Inspector
   Assistants to the Commissioner
   Assistant to the Deputy Commissioner
   Assistant Commissioners
   Division Directors (or equivalent level positions)
   Director, Detroit Computing Center
   Director, Martinsburg Computing Center
   Regional Counsel
   Regional Directors of Appeals
   Assistant Regional Commissioners
   Regional Inspectors
   District Directors
   Service Center Directors
   Director, Austin Compliance Center

**EXHIBIT D**
Form 4340 Certificate of Assessments, Payments and Other
Specified Matters for Jay McKean signed by Linda L. Drake
(30 pages)



# United States of America

### Department of the Treasury
### Internal Revenue Service

Date:    Feb. 06, 2008

## CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed: is a true Form 4340, Certificate of Assessments, Payments and Other Specified Matters for Jay McKean, SSN: ███████, for U.S. Individual Income Tax Return (Form 1040), for the tax period ending December 31, 2003, consisting of three pages —————————

under the custody of this office.



IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

*Linda L. Drake*

Linda L. Drake
Supervisor Accounting Technician
Ogden W&I Submission Processing
SW Delegation Order 198

Catalog Number 19002E

Form 2866 (Rev. 09-1997)

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY MCKEAN                                    EIN/SSN: ▉▉▉▉▉▉▉

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040      TAX PERIOD: DEC  2003

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|----------------------------------|
| | ADJUSTED GROSS INCOME 23,735.00 | | | |
| | TAXABLE INCOME 15,935.00 | | | |
| 03-18-2005 | SUBSTITUTE FOR RETURN 29210-888-00000-5 | | 0.00 | 04-11-2005 |
| | LATE FILING PENALTY 20060408 | | 458.78 | 02-06-2006 |
| | ADDITIONAL TAX ASSESSED BY EXAMINATION AUDIT DEFICIENCY PER DEFAULT OF 90 DAY LETTER 29247-410-00088-6  20060408 | | 2,039.00 | 02-06-2006 |
| 02-06-2006 | RENUMBERED RETURN 29247-410-00088-6 | | | |
| | INTEREST ASSESSED 20060408 | | 263.10 | 02-06-2006 |
| | FAILURE TO PAY TAX PENALTY 20060408 | | 224.29 | 02-06-2006 |
| 01-08-2007 | MODULE BLOCKED OR RELEASED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 01-15-2007 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |
| 01-24-2007 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |

FORM 4340  (REV. 01-2002)                    PAGE    1



# United States         of America

### Department of the Treasury
### Internal Revenue Service

Date:     Feb. 06, 2008

## CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed: is a true Form 4340, Certificate of Assessments, Payments and Other Specified Matters for Jay C. McKean, SSN: ▮▮▮▮▮▮ and Spouses SSN: ▮▮▮▮▮▮ for U.S. Individual Income Tax Return (Form 1040), for the tax period ending December 31, 2000, consisting of four pages –

under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

*Linda L. Drake*

Linda L. Drake
Supervisor Accounting Technician
Ogden W&J Submission Processing
SW Delegation Order 198



Catalog Number 19002E                    Form 2866 (Rev. 09-1997)



## CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY C MCKEAN

EIN/SSN: ███████

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040     TAX PERIOD: DEC  2000

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|---|---|---|---|---|
| | ADJUSTED GROSS INCOME 23,946.00 | | | |
| | TAXABLE INCOME 17,471.00 | | | |
| 10-16-2002 | SUBSTITUTE FOR RETURN 29210-292-26200-2 | | 0.00 | 11-18-2002 |
| | LATE FILING PENALTY 20034308 | 589.72 | | 11-03-2003 |
| | ADDITIONAL TAX ASSESSED BY EXAMINATION AUDIT DEFICIENCY PER DEFAULT OF 90 DAY LETTER 29247-688-00092-3  20034308 | 2,621.00 | | 11-03-2003 |
| 11-03-2003 | RENUMBERED RETURN 29247-688-00092-3 | | | |
| | INTEREST ASSESSED 20034308 | 531.02 | | 11-03-2003 |
| | FAILURE TO PAY TAX PENALTY 20034308 | 406.25 | | 11-03-2003 |
| 05-10-2004 | MODULE BLOCKED OR RELEASED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 05-27-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | " | |
| 06-14-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |

FORM 4340  (REV. 01-2002)          PAGE    1



CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

---------------------------------------------------------------------------------------------

JAY C MCKEAN                              EIN/SSN: ███████

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040      TAX PERIOD: DEC 2000

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|--------------------------------|
| 07-12-2004 | REVERSAL OF MODULE BLOCKED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 07-12-2004 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 08-16-2004 | FEDERAL PAYMENT MATCHED OR LEVIED THROUGH FEDERAL PAYMENT LEVY PROGRAM GENERATED AND MAILED | | | |
| 08-23-2004 | FINAL NOTICE BEFORE LEVY ON SOCIAL SECURITY BENEFITS GENERATED AND MAILED | | | |
| | FAILURE TO PAY TAX PENALTY 20055908 | | 249.00 | 10-10-2005 |
| 02-05-2007 | MODULE REVERSED OUT OF FEDERAL PAYMENT LEVY PROGRAM | | | |
| 04-02-2007 | MODULE BLOCKED OR RELEASED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |

FORM 4340  (REV. 01-2002)                    PAGE    2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY C MCKEAN                              EIN/SSN: ▮▮▮▮▮▮▮

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040      TAX PERIOD: DEC  2000

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|------------------------------------|----------------------------|--------------------------------|
| 05-29-2007 | OVERPAID CREDIT APPLIED 1040      199912 | | 5,620.03 | |
| | INTEREST ASSESSED 20072408 | | 1,083.02 | 06-25-2007 |
| 06-25-2007 | REVERSAL OF MODULE BLOCKED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 11-03-2003 | Statutory Notice of Balance Due | | | |
| 12-08-2003 | Notice of Balance Due | | | |
| 01-12-2004 | Statutory Notice of Intent to Levy | | | |
| 10-09-2006 | Statutory Notice of Balance Due | | | |
| 01-08-2007 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)                    PAGE    3



**United States** of America

### Department of the Treasury
### Internal Revenue Service

Date:    Feb. 06, 2008

## CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed: is a true Form 4340, Certificate of Assessments, Payments and Other Specified Matters for Jay C. McKean, SSN: ▆▆▆▆▆ and Spouses SSN: ▆▆▆▆▆ for U.S. Individual Income Tax Return (Form 1040), for the tax period ending December 31, 1999, consisting of ten pages ————————————————————————

under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

*Linda L. Drake*

Linda L. Drake
Supervisor Accounting Technician
Ogden W&I Submission Processing
SW Delegation Order 198

Catalog Number 19002E

Form **2866** (Rev. 09-1997)

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY C MCKEAN                            EIN/SSN: 


TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040      TAX PERIOD: DEC  1999

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|----------------------------------|
| 07-12-2004 | REVERSAL OF MODULE BLOCKED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 07-12-2004 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 08-16-2004 | FEDERAL PAYMENT MATCHED OR LEVIED THROUGH FEDERAL PAYMENT LEVY PROGRAM GENERATED AND MAILED | | | |
| 08-23-2004 | FINAL NOTICE BEFORE LEVY ON SOCIAL SECURITY BENEFITS GENERATED AND MAILED | | | |
| 11-15-2004 | FEDERAL PAYMENT MATCHED OR LEVIED THROUGH FEDERAL PAYMENT LEVY PROGRAM GENERATED AND MAILED | | | |
| 11-03-2004 | SUBSEQUENT PAYMENT | | 151.65 | |
| 12-03-2004 | SUBSEQUENT PAYMENT | | 151.65 | |

FORM 4340  (REV. 01-2002)                    PAGE    2

## CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY C MCKEAN                                    EIN/SSN: 

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040    TAX PERIOD: DEC 1999

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|----------------------------------|
| 01-03-2005 | SUBSEQUENT PAYMENT | | 154.35 | |
| 02-03-2005 | SUBSEQUENT PAYMENT | | 154.35 | |
| 03-03-2005 | SUBSEQUENT PAYMENT | | 154.35 | |
| 04-01-2005 | SUBSEQUENT PAYMENT | | 154.35 | |
| 05-03-2005 | SUBSEQUENT PAYMENT | | 154.35 | |
| 06-03-2005 | SUBSEQUENT PAYMENT | | 154.35 | |
| 07-01-2005 | SUBSEQUENT PAYMENT | | 154.35 | |
| 08-03-2005 | SUBSEQUENT PAYMENT | | 154.35 | |
| 09-02-2005 | SUBSEQUENT PAYMENT | | 154.35 | |
| | FAILURE TO PAY TAX PENALTY 20053908 | 87.82 | | 10-10-2005 |

FORM 4340 (REV. 01-2002)                    PAGE    3

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY C MCKEAN                                    EIN/SSN: 

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040      TAX PERIOD: DEC 1999

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|---------------------------------|
| 10-03-2005 | SUBSEQUENT PAYMENT | | 154.35 | |
| 11-03-2005 | SUBSEQUENT PAYMENT | | 154.35 | |
| 12-02-2005 | SUBSEQUENT PAYMENT | | 154.35 | |
| 01-03-2006 | SUBSEQUENT PAYMENT | | 159.60 | |
| 02-03-2006 | SUBSEQUENT PAYMENT | | 159.60 | |
| 03-03-2006 | SUBSEQUENT PAYMENT | | 159.60 | |
| 04-03-2006 | SUBSEQUENT PAYMENT | | 159.60 | |
| 05-03-2006 | SUBSEQUENT PAYMENT | | 159.60 | |
| 06-02-2006 | SUBSEQUENT PAYMENT | | 159.60 | |
| 07-03-2006 | SUBSEQUENT PAYMENT | | 159.60 | |

FORM 4340  (REV. 01-2002)                    PAGE    4

## CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY C MCKEAN                                EIN/SSN: 

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040     TAX PERIOD: DEC 1999

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|---------------------------------|
| 08-03-2006 | SUBSEQUENT PAYMENT | | 159.60 | |
| 09-01-2006 | SUBSEQUENT PAYMENT | | 159.60 | |
| 10-03-2006 | SUBSEQUENT PAYMENT | | 159.60 | |
| 11-03-2006 | SUBSEQUENT PAYMENT | | 159.60 | |
| 12-01-2006 | SUBSEQUENT PAYMENT | | 159.60 | |
| 01-03-2007 | SUBSEQUENT PAYMENT | | 164.55 | |
| 02-05-2007 | MODULE REVERSED OUT OF FEDERAL PAYMENT LEVY PROGRAM | | | |
| 04-02-2007 | MODULE BLOCKED OR RELEASED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 04-25-2007 | SUBSEQUENT PAYMENT LEVY | | 367.80 | |

FORM 4340  (REV. 01-2002)                    PAGE    5

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY C MCKEAN                                    EIN/SSN: 

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040        TAX PERIOD: DEC 1999

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|----------------------------------|
| 05-23-2007 | SUBSEQUENT PAYMENT LEVY | | 367.80 | |
| | INTEREST ASSESSED 20072208 | 305.36 | | 06-11-2007 |
| 05-29-2007 | SUBSEQUENT PAYMENT LEVY | | 12,534.59 | |
| | INTEREST ASSESSED 20072408 | 330.00 | | 06-25-2007 |
| 05-29-2007 | OVERPAYMENT CREDIT TRANSFERRED 1040    200012 | | (5,620.03) | |
| 05-29-2007 | OVERPAYMENT CREDIT TRANSFERRED 1040    200112 | | (4,473.28) | |
| 05-29-2007 | OVERPAYMENT CREDIT TRANSFERRED 1040    200212 | | (2,111.08) | |
| 06-25-2007 | REVERSAL OF MODULE BLOCKED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |

FORM 4340  (REV. 01-2002)                    PAGE    6

FEB-25-2008 09:36 FROM: Case 1:07-cv-02202-ESH    Document 15-2    Filed 04/25/2008    Page 7 of 36    P.9 

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY C MCKEAN                                     EIN/SSN:

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040       TAX PERIOD: DEC 1999

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|---------------------------------|
| 06-25-2007 | SUBSEQUENT PAYMENT LEVY | | 367.80 | |
| 06-25-2007 | OVERPAYMENT CREDIT TRANSFERRED 1040      200212 | | (367.80) | |
| 07-26-2007 | SUBSEQUENT PAYMENT LEVY | | 367.80 | |
| 07-26-2007 | OVERPAYMENT CREDIT TRANSFERRED 1040      200212 | | (367.80) | |
| 08-17-2007 | SUBSEQUENT PAYMENT LEVY | | 367.80 | |
| 08-17-2007 | OVERPAYMENT CREDIT TRANSFERRED 1040      200212 | | (367.80) | |
| 09-25-2007 | SUBSEQUENT PAYMENT LEVY | | 367.80 | |
| 09-25-2007 | OVERPAYMENT CREDIT TRANSFERRED 1040      200212 | | (367.80) | |

FORM 4340  (REV. 01-2002)                    PAGE    7

FEB-25-2008 09:31 FROM:   Case 1:07-cv-02202-ESH   Document 15-2   Filed 04/25/2008   Page 8 of 36   TO:2025146966   P.10

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY C MCKEAN                              EIN/SSN: ▮▮▮▮▮▮▮▮

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040        TAX PERIOD: DEC  1999

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|----------------------------------|
| 10-22-2007 | SUBSEQUENT PAYMENT LEVY | | 367.80 | |
| 10-22-2007 | OVERPAYMENT CREDIT TRANSFERRED 1040       200212 | | (367.80) | |
| 11-16-2007 | SUBSEQUENT PAYMENT LEVY | | 367.80 | |
| 11-16-2007 | OVERPAYMENT CREDIT TRANSFERRED 1040       200212 | | (367.80) | |
| 12-21-2007 | SUBSEQUENT PAYMENT LEVY | | 391.80 | |
| 12-21-2007 | OVERPAYMENT CREDIT TRANSFERRED 1040       200212 | | (112.06) | |
| 12-21-2007 | OVERPAYMENT CREDIT TRANSFERRED 1040       200312 | | (279.74) | |
| 01-24-2008 | SUBSEQUENT PAYMENT LEVY | | 391.80 | |

FORM 4340  (REV. 01-2002)                    PAGE    8

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY C MCKEAN                              EIN/SSN: 

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040      TAX PERIOD: DEC  1999

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|--------------------------------|
| | | | (391.80) | |
| 01-24-2008 | OVERPAYMENT CREDIT TRANSFERRED 1040      200312 | | | |
| 11-03-2003 | Statutory Notice of Balance Due | | | |
| 12-08-2003 | Notice of Balance Due | | | |
| 01-12-2004 | Statutory Notice of Intent to Levy | | | |
| 10-09-2006 | Statutory Notice of Balance Due | | | |
| 01-08-2007 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)                    PAGE    9

## CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY C MCKEAN                        EIN/SSN: ▮▮▮▮▮▮▮▮

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040    TAX PERIOD: DEC 1999

BALANCE          0.00

I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN. I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

SIGNATURE OF CERTIFYING OFFICER: *Linda L. Drake*

PRINT NAME: Linda L. Drake

TITLE: Supervisor Accounting Technician, Ogden W&I Submission Processing

DELEGATION ORDER: SW Delegation Order 198

LOCATION: INTERNAL REVENUE SERVICE

ACCOUNT STATUS DATE 02/06/2008

FORM 4340  (REV. 01-2002)                    PAGE    10

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY C MCKEAN                                    EIN/SSN: ▆▆▆▆▆▆▆

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040      TAX PERIOD: DEC 2000

BALANCE          0.00

I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN. I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

SIGNATURE OF CERTIFYING OFFICER: _Linda L. Drake_

PRINT NAME: _Linda L. Drake_

TITLE: _Supervisor Accounting Technician, Ogden W&I Submission Processing_

DELEGATION ORDER: _SW Delegation Order 198_

LOCATION: INTERNAL REVENUE SERVICE

        ACCOUNT STATUS DATE 02/06/2008

FORM 4340  (REV. 01-2002)                    PAGE      4

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY MCKEAN                          EIN/SSN: ████████

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040      TAX PERIOD: DEC  2003

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|--------------------------------|
| 12-08-2007 | REVERSAL OF MODULE BLOCKED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 12-31-2007 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 12-21-2007 | OVERPAID CREDIT APPLIED 1040      199912 | | 279.74 | |
| 01-24-2008 | OVERPAID CREDIT APPLIED 1040      199912 | | 391.80 | |
| 02-06-2006 | Statutory Notice of Balance Due | | | |
| 03-13-2006 | Notice of Balance Due | | | |
| 07-17-2006 | Statutory Notice of Intent to Levy | | | |
| 11-20-2006 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)               PAGE     2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

------------------------------------------------------------------------

JAY MCKEAN                          EIN/SSN: ▓▓▓▓▓▓▓▓

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040      TAX PERIOD: DEC 2003
------------------------------------------------------------------------

BALANCE        2,313.63
------------------------------------------------------------------------

I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.  I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.
------------------------------------------------------------------------

SIGNATURE OF CERTIFYING OFFICER: _Linda L. Drake_

PRINT NAME: __Linda L. Drake_____

TITLE: __Supervisor Accounting Technician, Ogden W&I Submission Processing__

DELEGATION ORDER: __SW Delegation Order 198_____

LOCATION: INTERNAL REVENUE SERVICE

        ACCOUNT STATUS DATE 02/06/2008

FORM 4340  (REV. 01-2002)              PAGE    3



# United States    of America

### Department of the Treasury
### Internal Revenue Service

Date:    Feb. 06, 2008

## CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed: Is a true Form 4340, Certificate of Assessments, Payments and Other Specified Matters for Jay McKean, SSN: ███████ for U.S. Individual Income Tax Return (Form 1040), for the tax period ending December 31, 2002, consisting of five pages —————

under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

Linda L. Drake
Supervisor Accounting Technician
Ogden W&I Submission Processing
SW Delegation Order 198

Catalog Number 19002E

Form 2866 (Rev. 09-1997)

FEB-25-2008 09:32 FROM:                                    ID:2025146366    P.24

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
-------------------------------------------------------------------------
------------------------------------------------------

EIN/SSN: ████████████

JAY MCKEAN

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040      TAX PERIOD: DEC  2002

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|----------------------------------|
| | ADJUSTED GROSS INCOME 25,459.00 | | | |
| | TAXABLE INCOME 17,759.00 | | | |
| 06-05-2004 | SUBSTITUTE FOR RETURN 29210-888-00000-4 | | 0.00 | 06-28-2004 |
| | LATE FILING PENALTY 20044908 | | 532.35 | 12-20-2004 |
| | ADDITIONAL TAX ASSESSED BY EXAMINATION AUDIT DEFICIENCY PER DEFAULT OF 90 DAY LETTER 29247-734-00678-4  20044908 | | 2,366.00 | 12-20-2004 |
| 12-20-2004 | RENUMBERED RETURN 29247-734-00678-4 | | | |
| | INTEREST ASSESSED 20044908 | | 230.70 | 12-20-2004 |
| | FAILURE TO PAY TAX PENALTY 20044908 | | 248.43 | 12-20-2004 |
| 03-07-2005 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 03-21-2005 | FEDERAL PAYMENT MATCHED OR LEVIED THROUGH FEDERAL PAYMENT LEVY PROGRAM GENERATED AND MAILED | | | |
| 03-21-2005 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |

FORM 4340  (REV. 01-2002)                    PAGE     1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

EIN/SSN: ▬▬▬▬▬

JAY MCKEAN

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040     TAX PERIOD: DEC 2002

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|---------------------------------|
| 04-01-2005 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |
| 05-30-2005 | FINAL NOTICE BEFORE LEVY ON SOCIAL SECURITY BENEFITS GENERATED AND MAILED | | | |
| | FAILURE TO PAY TAX PENALTY 20053908 | | 201.11 | 10-10-2005 |
| | FAILURE TO PAY TAX PENALTY 20063908 | | 141.96 | 10-09-2006 |
| 02-05-2007 | MODULE REVERSED OUT OF FEDERAL PAYMENT LEVY PROGRAM | | | |
| 04-02-2007 | MODULE BLOCKED OR RELEASED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 05-29-2007 | OVERPAID CREDIT APPLIED 1040          199912 | | 2,111.08 | |

FORM 4340  (REV. 01-2002)                    PAGE     2

FEB-25-2008 09:33 FROM:     Case 1:07-cv-02202-ESH     Document 15-2     Filed 04/25/2008     Page 24 of 36

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY MCKEAN                                   EIN/SSN: ███████████

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040        TAX PERIOD: DEC  2002

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|--------------------------------|
| 06-25-2007 | OVERPAID CREDIT APPLIED 1040      199912 | | 367.80 | |
| 07-26-2007 | OVERPAID CREDIT APPLIED 1040      199912 | | 367.80 | |
| 08-17-2007 | OVERPAID CREDIT APPLIED 1040      199912 | | 367.80 | |
| 09-25-2007 | OVERPAID CREDIT APPLIED 1040      199912 | | 367.80 | |
| 10-22-2007 | OVERPAID CREDIT APPLIED 1040      199912 | | 367.80 | |
| | INTEREST ASSESSED 20074408 | 229.53 | | 11-12-2007 |
| 11-16-2007 | OVERPAID CREDIT APPLIED 1040      199912 | | 367.80 | |
| | INTEREST ASSESSED 20074808 | 367.80 | | 12-10-2007 |
| 12-08-2007 | REVERSAL OF MODULE BLOCKED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |

FORM 4340 (REV. 01-2002)                    PAGE    3

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

EIN/SSN: ███████████

JAY MCKEAN

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040     TAX PERIOD: DEC 2002

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|----------------------------------|
| 12-31-2007 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | 112.06 | |
| 12-21-2007 | OVERPAID CREDIT APPLIED 1040       199912 | | | |
| | INTEREST ASSESSED 20080408 | | 112.06 | 02-04-2008 |
| 02-04-2008 | MODULE REVERSED OUT OF FEDERAL PAYMENT LEVY PROGRAM | | | |
| 06-21-2004 | Taxpayer Deliquency Notice | | | |
| 12-20-2004 | Statutory Notice of Balance Due | | | |
| 01-10-2005 | Statutory Notice of Intent to Levy | | | |
| 10-09-2006 | Statutory Notice of Balance Due | | | |
| 01-08-2007 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)                    PAGE     4

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

EIN/SSN: ▆▆▆▆▆▆

JAY MCKEAN

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040      TAX PERIOD: DEC 2002

BALANCE          0.00

I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN. I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

SIGNATURE OF CERTIFYING OFFICER: *Linda L. Drake*

PRINT NAME: __Linda L. Drake__

TITLE: __Supervisor Accounting Technician, Ogden W&I Submission Processing__

DELEGATION ORDER: __SW Delegation Order 198__

LOCATION: INTERNAL REVENUE SERVICE

ACCOUNT STATUS DATE 02/06/2008

FORM 4340  (REV. 01-2002)                    PAGE      5



# United States of America

### Department of the Treasury
### Internal Revenue Service

Date:    Feb. 06, 2008

## CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed: is a true Form 4340, Certificate of Assessments, Payments and Other Specified Matters for Jay McKean, SSN: ▓▓▓▓▓▓ for U.S. Individual Income Tax Return (Form 1040), for the tax period ending December 31, 2001, consisting of four pages ——————

3

under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

*Linda L. Drake*

Linda L. Drake
Supervisor Accounting Technician
Ogden W&I Submission Processing
SW Delegation Order 198

Catalog Number 19002E

Form 2866 (Rev. 09-1997)

### CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY MCKEAN                              EIN/SSN: ████████████

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040      TAX PERIOD: DEC 2001

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|--------------------------------------|-----------------------------|----------------------------------|
| | ADJUSTED GROSS INCOME 23,954.00 | | | |
| | TAXABLE INCOME 17,254.00 | | | |
| 01-13-2003 | SUBSTITUTE FOR RETURN 29210-018-25125-3 | | 0.00 | 02-17-2003 |
| | LATE FILING PENALTY 20041108 | | 515.48 | 03-29-2004 |
| | ADDITIONAL TAX ASSESSED BY EXAMINATION AUDIT DEFICIENCY PER DEFAULT OF 90 DAY LETTER 29247-465-00656-4   20041108 | | 2,291.00 | 03-29-2004 |
| 03-29-2004 | RENUMBERED RETURN 29247-465-00656-4 | | | |
| | INTEREST ASSESSED 20041108 | | 294.98 | 03-29-2004 |
| | FAILURE TO PAY TAX PENALTY 20041108 | | 274.92 | 03-29-2004 |
| 07-12-2004 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 08-16-2004 | FEDERAL PAYMENT MATCHED OR LEVIED THROUGH FEDERAL PAYMENT LEVY PROGRAM GENERATED AND MAILED | | | |
| 08-16-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |

FORM 4340  (REV. 01-2002)                          PAGE     1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

EIN/SSN: ██████████

JAY MCKEAN

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040    TAX PERIOD: DEC 2001

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|-----------------------------|----------------------------------|
| 08-25-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |
| 10-25-2004 | FINAL NOTICE BEFORE LEVY ON SOCIAL SECURITY BENEFITS GENERATED AND MAILED | | | |
| | FAILURE TO PAY TAX PENALTY 20053908 | 297.83 | | 10-10-2005 |
| 02-05-2007 | MODULE REVERSED OUT OF FEDERAL PAYMENT LEVY PROGRAM | | | |
| 04-02-2007 | MODULE BLOCKED OR RELEASED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 05-29-2007 | OVERPAID CREDIT APPLIED 1040    199912 | | 4,473.28 | |
| | INTEREST ASSESSED 20072408 | 799.07 | | 06-25-2007 |
| 06-25-2007 | REVERSAL OF MODULE BLOCKED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 03-29-2004 | Statutory Notice of Balance Due | | | |

FORM 4340  (REV. 01-2002)                     PAGE    2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

EIN/SSN: ████████

JAY MCKEAN

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040    TAX PERIOD: DEC 2001

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|--------------------------------------|-----------------------------|----------------------------------|
| 05-24-2004 | Statutory Notice of Intent to Levy | | | |
| 10-09-2006 | Statutory Notice of Balance Due | | | |
| 01-08-2007 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)                    PAGE    3

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

JAY MCKEAN                          EIN/SSN: ███████

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040     TAX PERIOD: DEC 2001

BALANCE          0.00

I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.  I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

SIGNATURE OF CERTIFYING OFFICER: _Linda L. Drake_

PRINT NAME: __Linda L. Drake_____

TITLE: __Supervisor Accounting Technician, Ogden W&I Submission Processing__

DELEGATION ORDER: __SW Delegation Order 198_____

LOCATION: INTERNAL REVENUE SERVICE

ACCOUNT STATUS DATE 02/06/2008

FORM 4340  (REV. 01-2002)                    PAGE    4

**EXHIBIT E**

The Self-Serving Declaration of Pat S. Genis, Summarizing the Illusionary
Administrative Process Proffered by IRS to Allege a Liability and Assessment
(2 pages)

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

JAY C. MCKEAN                                    )
                                                 )
            Plaintiff,                           )
                                                 )
      v.                                         )      No: 1:07-cv-02202-ESH
                                                 )
UNITED STATES, et al.                            )
                                                 )
            Defendants.                          )

## DECLARATION OF PAT S. GENIS

I, Pat S. Genis, under 28 U.S.C. § 1746, declare as follows:

1.     I am a trial attorney with the Department of Justice Tax Division.  As part
of my duties, I have been assigned responsibility for litigation of the above-captioned
case.

2.     As part of my duties, I have received and reviewed documents and
records created and maintained by the Internal Revenue Service.

3.     Attached is a true and correct copy of the following documents:

| Ex. No. | Description |
| --- | --- |
| 1 | Form 4340 Certificate of Assessments, Payments, and Other Specified Matters for Jay C. McKean for tax year 1999; |
| 2 | Form 4340 Certificate of Assessments, Payments, and Other Specified Matters for Jay C. McKean for tax year 2000; |
| 3 | Form 4340 Certificate of Assessments, Payments, and Other Specified Matters for Jay C. McKean for tax year 2001; |
| 4 | Form 4340 Certificate of Assessments, Payments, and Other Specified Matters for Jay C. McKean for tax year 2002; |

5       Form 4340 Certificate of Assessments, Payments, and Other Specified
        Matters for Jay C. McKean for tax year 2003;

6       June 4, 2003 Notice of Deficiency for Jay C. & Faye McKean for tax year
        1999;

7       June 4, 2003 Notice of Deficiency for Jay C. & Faye McKean for tax year
        2000;

8       June 12, 2003 Petition of Protest for 1999 deficiencies;

9       June 12, 2003 Petition of Protest for 2000 deficiencies;

10      October 24, 2003 Notice of Deficiency for Jay C. & Faye McKean for tax
        year 2001;

11      Copy of 2001 notice of deficiency and correspondence signed by Jay C.
        McKean denying liability for 2001 taxes.

12      July 27, 2004 Notice of Deficiency for Jay C. & Faye McKean for tax year
        2002;

13      June 21, 2005 Notice of Deficiency for Jay C. & Faye McKean for tax year
        2003;

14      Transcript of account for Jay McKean for 2003 showing balance due for
        2003.

I declare under penalty of perjury that the foregoing is true to the best of my

knowledge, information and belief.

DATED:   April 24, 2008.


                              /s/ Pat Genis
                              PAT S. GENIS

**EXHIBIT F**
Pat S. Genis' "Statement of Material Facts In Support of the
United States Motion for Summary Judgment"
(4 pages)

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAY C. MCKEAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No: 1:07-cv-02202-ESH |
| | ) | |
| UNITED STATES, et al. | ) | |
| | ) | |
| Defendants. | ) | |

### STATEMENT OF MATERIAL FACTS IN SUPPORT OF
### THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

The United States and the Internal Revenue Service submits this statement of

material facts in support of its motion for summary judgment.

1.     On May 1, 2007, the Internal Revenue Service served upon plaintiff's credit

union, Avanta Federal Credit Union, a levy in the amount of $19,084.86. (Compl.

¶ 3, ex. C.)

2.     In response to the levy, Avanta sent the Internal Revenue Service the balance in

plaintiff's account which amounted to $12,660.39, and so advised plaintiff in a

letter dated May 4, 2007.   (Compl. ¶ 3, ex. C.)

3.     By letter dated January 3, 2005, the Financial Management Service in

Birmingham, Alabama wrote plaintiff that $164.35 had been forwarded to the

Internal Revenue Service from plaintiff's social security benefit payments.

(Compl. ex. E.)

4.     The Financial Management Service sent notices to plaintiff each month from

January 3, 2005 through January 3, 2007 reflecting differing amounts deducted

from plaintiff's social security benefits and sent to the Internal Revenue Service. (Compl. ex. E.)

5.  By letter dated April 9, 2007, the Social Security Administration advised plaintiff that the Internal Revenue Service had served them a notice of levy and asked them to withhold $367.80 each month from plaintiff's social security benefits payments. (Compl. ex. D.)

6.  The April 9, 2007 letter stated that the SSA had withheld $367.80 and would withhold $367.80 each month. (Compl. ex. D.)

7.  Plaintiff asserts that a total of $7,700 was seized from his social security benefits. (Compl. ¶ 5.)

8.  All the correspondence referenced in paragraphs 2 - 6 above were sent to plaintiff at RR 1 Box 2031, Roberts, MT 59070.

9.  By letter dated May 11, 2007, plaintiff wrote the Internal Revenue Service , CS Support, PO Box 24017, Fresno, CA 93779-4017 complaining of a Form 668-A(c) - Notice of Levy. (Compl. ex. A.)

10.  The May 11, 2007 claim stated that $12,660.39 had been levied from his credit union, and demanded the release of an "unauthorized notice of levy" served on Avanta. (Comp. ex. A, p.2, I.1.)

11.  Plaintiff's claim asserted that no "Statutory Notice of Deficiency TC 494 Code" appeared on his Individual Master File Complete Transcript. (Compl. ex. A. , p.3, II.b.)

12.    Plaintiff concluded that the Internal Revenue Service failed to issue a 90-day

notice of deficiency for tax years 1999 through 2003. (Compl. ex. A., p.3, II.c.)

13.    By letter dated July 11, 2007, the Internal Revenue Service denied plaintiff's

appeal, affirming that the "levy was appropriately issued." (Compl. ex. B.)

14.    Plaintiff failed to file his federal income tax returns for tax years 1999, 2000, 2001,

2002 and 2003. (Genis decl. exs. 1-5.)

15.    The Internal Revenue Service determined plaintiff's tax liabilities in connection

with the issuance of a notice of deficiency for tax years 1999, 2000, 2001, 2002, and

2003. (Genis decl. exs. 6, 7, 10, 12 & 13.)

16.    The certified transcripts of account for plaintiff indicate the following with respect

to tax years 1999 through 2003:

| Tax Year | Notice of Deficiency | Taxes Assessed |
|----------|----------------------|----------------|
| 1999 | 06.04.03 | 11.03.03 |
| 2000 | 06.04.03 | 11.03.03 |
| 2001 | 10.24.03 | 03.29.04 |
| 2002 | 07.27.04 | 12.20.04 |
| 2003 | 06.21.05 | 02.06.06 |

(Genis decl. exs. 1-5.)

17.    As of March 3 , 2008, plaintiff had an outstanding balance due on his 2003 federal

income tax liabilities of $3,110.01. (Genis decl. ex. 14.)

18.    The Internal Revenue Service sent plaintiff notices of deficiency for 1999 and 2000

on June 4, 2003. (Genis decl. ex. 6 & 7.)

3

19.   Plaintiff filed petitions of protest of 1999 and 2000 deficiencies by letters dated
      June 12, 2003. (Genis decl. exs. 8 & 9.)

20.   The Internal Revenue Service sent plaintiff a notice of deficiency for 2001 on
      October 24, 2003. (Genis decl. ex. 10.)

21.   Plaintiff returned a signed copy of the 2001 notice of deficiency to the Internal
      Revenue Service which had the notation: "Pursuant to U.C.C. § 1-301, 'REFUSAL
      FOR CAUSE', I hereby, REFUSE AND REFUTE this presentment FOR CAUSE
      and WITHOUT DISHONOR. I do not owe this. All Rights Reserved, Without
      Prejudice, UCC 1-207." (Genis decl. ex. 11.)

22.   The Internal Revenue Service sent plaintiff a notice of deficiency for 2002 on July
      27, 2004 (Genis decl. ex. 12.)

23.   The Internal Revenue Service sent plaintiff a notice of deficiency for 2003 on June
      21, 2005. (Genis decl. ex. 13.)

**EXHIBIT G**

Title 26 USC § 6212(d) – Right to Rescind Notice of Deficiency
(2 pages)

*26 USC 6212*

NB: *This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).*

**TITLE 26 - INTERNAL REVENUE CODE**
  **Subtitle F - Procedure and Administration**
    **CHAPTER 63 - ASSESSMENT**
      **Subchapter B - Deficiency Procedures in the Case of Income, Estate, Gift, and Certain Excise Taxes**

## § 6212. Notice of deficiency

### (a) In general

If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitles A or B or chapter 41, 42, 43, or 44 he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. Such notice shall include a notice to the taxpayer of the taxpayer's right to contact a local office of the taxpayer advocate and the location and phone number of the appropriate office.

### (b) Address for notice of deficiency

#### (1) Income and gift taxes and certain excise taxes

In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A, chapter 12, chapter 41, chapter 42, chapter 43, or chapter 44 if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A, chapter 12, chapter 41, chapter 42, chapter 43, chapter 44, and this chapter even if such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence.

#### (2) Joint income tax return

In the case of a joint income tax return filed by husband and wife, such notice of deficiency may be a single joint notice, except that if the Secretary has been notified by either spouse that separate residences have been established, then, in lieu of the single joint notice, a duplicate original of the joint notice shall be sent by certified mail or registered mail to each spouse at his last known address.

#### (3) Estate tax

In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by chapter 11, if addressed in the name of the decedent or other person subject to liability and mailed to his last known address, shall be sufficient for purposes of chapter 11 and of this chapter.

### (c) Further deficiency letters restricted

#### (1) General rule

If the Secretary has mailed to the taxpayer a notice of deficiency as provided in subsection (a), and the taxpayer files a petition with the Tax Court within the time prescribed in section 6213 (a), the Secretary shall have no right to determine any additional deficiency of income tax for the same taxable year, of gift tax for the same calendar year, of estate tax in respect of the taxable estate of the same decedent, of chapter 41 tax for the same taxable year, of chapter 43 tax for the same taxable year, of chapter 44 tax for the same taxable year, of section 4940 tax for the same taxable year, or of chapter 42 tax, (other than under section 4940) with respect to any act (or failure to act) to which such petition relates, except in the case of fraud, and except as provided in section 6214 (a) (relating to assertion of greater deficiencies before the Tax Court), in section 6213 (b)(1) (relating to mathematical or clerical errors), in section 6851 or 6852 (relating to termination assessments), or in section 6861 (c) (relating to the making of jeopardy assessments).

#### (2) Cross references

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

For assessment as a deficiency notwithstanding the prohibition of further deficiency letters, in the case of—

**(A)** Deficiency attributable to change of treatment with respect to itemized deductions, see section 63 (e)(3).

**(B)** Deficiency attributable to gain on involuntary conversion, see section 1033 (a)(2)(C) and (D).

**(C)** Deficiency attributable to activities not engaged in for profit, see section 183 (e)(4).

For provisions allowing determination of tax in title 11 cases, see section 505 (a) of title 11 of the United States Code.

**(d)  Authority to rescind notice of deficiency with taxpayer's consent**

The Secretary may, with the consent of the taxpayer, rescind any notice of deficiency mailed to the taxpayer. Any notice so rescinded shall not be treated as a notice of deficiency for purposes of subsection (c)(1) (relating to further deficiency letters restricted), section 6213 (a) (relating to restrictions applicable to deficiencies; petition to Tax Court), and section 6512 (a) (relating to limitations in case of petition to Tax Court), and the taxpayer shall have no right to file a petition with the Tax Court based on such notice. Nothing in this subsection shall affect any suspension of the running of any period of limitations during any period during which the rescinded notice was outstanding.

(Aug. 16, 1954, ch. 736, 68A Stat. 770; Pub. L. 85–866, title I, §§ 76, 89 (b), Sept. 2, 1958, 72 Stat. 1661, 1665; Pub. L. 88–272, title I, § 112(d)(1), Feb. 26, 1964, 78 Stat. 24; Pub. L. 91–172, title I, § 101(f)(2), (j)(40), (41), Dec. 30, 1969, 83 Stat. 524, 530; Pub. L. 91–614, title I, § 102(d)(5), Dec. 31, 1970, 84 Stat. 1842; Pub. L. 93–406, title II, § 1016(a)(10), Sept. 2, 1974, 88 Stat. 930; Pub. L. 94–455, title II, § 214(b), title XII, §§ 1204(c)(5), 1206 (c)(3), title XIII, § 1307(d)(2)(F)(ii), (G), title XVI, § 1605(b)(5), title XIX, §§ 1901(b)(31)(C), (37)(C), 1906 (b)(13)(A), Oct. 4, 1976, 90 Stat. 1549, 1698, 1704, 1728, 1754, 1800, 1803, 1834; Pub. L. 95–30, title I, § 101(d)(15), May 23, 1977, 91 Stat. 134; Pub. L. 95–600, title IV, § 405(c)(5), title VII, § 701(t)(3)(C), Nov. 6, 1978, 92 Stat. 2871, 2912; Pub. L. 96–223, title I, § 101(f)(1)(C), (4), (5), Apr. 2, 1980, 94 Stat. 252, 253; Pub. L. 96–589, § 6(d)(2), Dec. 24, 1980, 94 Stat. 3408; Pub. L. 97–34, title IV, § 442(d)(4), Aug. 13, 1981, 95 Stat. 323; Pub. L. 99–514, title I, § 104(b)(17), title XV, § 1562(a), Oct. 22, 1986, 100 Stat. 2106, 2761; Pub. L. 100–203, title X, § 10713(b)(2)(C), Dec. 22, 1987, 101 Stat. 1330–470; Pub. L. 100–418, title I, § 1941(b)(2)(B)(iii), (E), (F), Aug. 23, 1988, 102 Stat. 1323; Pub. L. 100–647, title I, § 1015(m), Nov. 10, 1988, 102 Stat. 3572; Pub. L. 105–34, title III, § 312(d)(12), Aug. 5, 1997, 111 Stat. 840; Pub. L. 105–206, title I, § 1102(b), July 22, 1998, 112 Stat. 703.)

## Amendments

1998—Subsec. (a). Pub. L. 105–206 inserted at end "Such notice shall include a notice to the taxpayer of the taxpayer's right to contact a local office of the taxpayer advocate and the location and phone number of the appropriate office."

1997—Subsec. (c)(2)(C) to (E). Pub. L. 105–34, which directed the amendment of par. (2) by striking out subpar. (C) and redesignating succeeding subpars. accordingly, was executed by redesignating subpar. (E) as (C) and striking out former subpar. (C). Prior to amendment, subpar. (C) read as follows: "Deficiency attributable to gain on sale or exchange of principal residence, see section 1034 (j)." Former subpar. (D) was repealed previously.

1988—Subsec. (a). Pub. L. 100–418, § 1941(b)(2)(B)(iii), substituted "or 44" for "44, or 45".

Subsec. (b)(1). Pub. L. 100–418, § 1941(b)(2)(E), substituted "or chapter 44" for "chapter 44, or chapter 45" and "chapter 44, and this chapter" for "chapter 44, chapter 45, and this chapter".

Subsec. (c)(1). Pub. L. 100–418, § 1941(b)(2)(F), substituted "or of chapter 42 tax" for "of chapter 42 tax" and struck out ", or of chapter 45 tax for the same taxable period" after "such petition relates".

Subsec. (d). Pub. L. 100–647 inserted sentence at end that nothing in this subsection shall affect suspension of running of period of limitations during period during which rescinded notice was outstanding.

1987—Subsec. (c)(1). Pub. L. 100–203 inserted reference to section 6852.

**EXHIBIT H**

Copies of Notices of Deficiency for Tax Years 1999 through 2003

(27 pages)



**Department of Treasury**
**Internal Revenue Service**
**OGDEN, UT   84201**

Letter Number: 3219(BC/CG)
Letter Date: JUNE 4, 2003

Taxpayer Identification Number:

7112 7667 8555 3619 1231

Tax Form: 1040

Tax Year Ended and Deficiency
DECEMBER 31, 1999     $2,509.00

JAY C & FAYE MCKEAN
RT 1 BOX 2031
ROBERTS, MT  59070-9610319

Contact Person:
MR. PARIZEK   29-61699

Contact Telephone Number:
(866) 899-9083
(TOLL FREE NUMBER)
Hours to Call:
7:00 AM TO 7:00 PM MON-FRI

Last Date to Petition Tax Court:
SEPTEMBER 2, 2003

Penalties/Additions to Tax
IRC Section  6651(a)(1)                  $627.25
IRC Section  6654(a)                     $121.42

Dear Taxpayer:

We have determined that there is a deficiency (increase) in your income tax as shown above. This letter is your NOTICE OF DEFICIENCY, as required by law. The enclosed statement shows how we figured the deficiency.

If you want to contest this determination in court before making any payment, you have until the <u>Last Date to Petition Tax Court</u> (90 days from the date of this letter or 150 days if the letter is addressed to you outside the United States) to file a petition with the United States Tax Court for a redetermination of the amount of your tax. You can get a petition form and the rules for filing a petition from the Tax Court. You should file the petition with the  United States Tax Court, 400 Second Street NW, Washington D.C. 20217.  Attach a copy of this letter to the petition.

The time in which you must file a petition with the court (90 days or 150 days as the case may be) is fixed by law and <u>the Court cannot consider your case if the petition is filed late</u>. As required by law, separate notices are sent to spouses.  If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition or each must file a separate, signed petition.

The Tax Court has a simplified procedure for small tax cases when the amount in dispute is $50,000 or less for any one tax year.  You can also get information about this procedure, as well as a petition form you can use, by writing to the Clerk of the United States Tax Court at 400 Second Street, NW, Washington, D.C. 20217.  You should write promptly if you intend to file a petition with the Tax Court.

If you decide *not* to file a petition with the Tax Court, please sign and return the enclosed waiver form to us.  This will permit us to assess the deficiency quickly and will limit the accumulation of interest.  We've enclosed an envelope you can use.  If you decide not to sign and return the waiver and you do not petition the Tax Court, the law requires us to assess and bill you for the deficiency after 90 days from the date of this letter (150 days if this letter is addressed to you outside the United States).

If you have questions about this letter, you may call the Contact Person whose name and telephone number are shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you. If you prefer, you can call the Internal Revenue Service (IRS) telephone number in your local directory. An IRS employee there may be able to help you, but the office at the address shown on this letter is most familiar with your case.

When you send information we requested or if you write to us about this letter, please provide a telephone number and the best time to call you if we need more information. Please attach this letter to your correspondence to help us identify your case. Keep the copy for your records.

The person whose name and telephone number are shown in the heading of this letter can access your tax information and help get you answers. You also have the right to contact the Taxpayer Advocate. You can call 1-877-777-4778 and ask for Taxpayer Advocate Assistance. Or you can contact the Taxpayer Advocate for the IRS Office that issued this Notice of Deficiency by calling (801) 620-7168 or writing to:

> OGDEN SERVICE CENTER
> TAXPAYER ADVOCATE
> P.O. BOX 9941, STOP 1005
> OGDEN, UT 84409

Taxpayer Advocate assistance is not a substitute for established IRS procedures such as the formal appeals process. The Taxpayer Advocate is not able to reverse legally correct tax determinations, nor extend the time fixed by law that you have to file a petition in the United States Tax Court. The Taxpayer Advocate can, however, see that a tax matter that may not have been resolved through normal channels gets prompt and proper handling.

Thank you for your cooperation.

Sincerely yours,

Commissioner
By

Timothy A. Towns

TIMOTHY A. TOWNS
COMPLIANCE CENTER
OGDEN Service Center

Enclosures:
Copy of this letter
Waiver
Envelope

Cat. No. 27500P          Letter 3219(SC/CG) (09-1999)

| FORM 5564 (Rev. June 1992) | Department of the Treasury — Internal Revenue Service<br>**NOTICE OF DEFICIENCY - WAIVER** | Symbols<br>OGDEN<br>STOP 4388 |
|---|---|---|

Name and Address of Taxpayer(s)                                    JUNE 4, 2003

JAY C & FAYE MCKEAN
RT 1 BOX 2031
, ROBERTS, MT  59070-9610319

| Kind of Tax | ☐ Copy to Authorized Representative | |
|---|---|---|
| INDIVIDUAL INCOME | | |

| Tax Year Ended | | **DEFICIENCY** | |
|---|---|---|---|
| DECEMBER 31, 1999 | Increase in Tax | $2,509.00 | Penalties |
| | IRC Section 6651(a)(1) | | $627.25 |
| | IRC Section 6654(a) | | $121.42 |

I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above, plus any interest. Also, I waive the requirement under section 6532 (a) (1) of the Internal Revenue Code that a notice of claim disallowance be sent to me by certified mail for any overpayment shown on the attached report.

I understand that the filing of this waiver is irrevocable and it will begin the 2-year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

| Signature | | | Date |
|---|---|---|---|
| | | | Date |
| | By | Title | Date |

**Note:** If you consent to the assessment of the deficiencies shown in this waiver, please sign and return this form to limit the interest charge and expedite our bill to you. Please do not sign and return any prior notices you may have received. Your consent signature is required on this waiver, even if fully paid.

Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are so entitled; nor prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for such action.

If you later file a claim and the Service disallows it, you may file suit for refund in a District Court or in the United States Claims Court, but you may not file a petition with the United States Tax Court.

**Who Must Sign:** If you filed jointly, both you and your spouse must sign. Your attorney or agent may sign this waiver provided that action is specifically authorized by a power of attorney which, if not previously filed, must accompany this form.

If this waiver is signed by a person acting in a fiduciary capacity (for example, an executor, administrator, or a trustee), Form 56, Notice Concerning Fiduciary Relationship, should, unless previously filed, accompany this form.

**If you agree, please sign and return this form; keep one copy for your records.**

FORM 5564 (Rev. 6-92)

FEB-27-2008 Case 1:07-cv-02202-ESH   Document 15-2   Filed 04/25/2008   Page 34 of 36



Department of Treasury
Internal Revenue Service
OGDEN, UT 84201

Letter Number: 3219(SC/CG)
Letter Date: JUNE 4, 2003
Taxpayer Identification Number:

7112 7667 8555 3619 1248

Tax Form: 1040

Tax Year Ended and Deficiency
DECEMBER 31, 2000     $2,621.00

Contact Person:
MR. PARIZEK   29-61699

Contact Telephone Number:
(866) 899-9983
(TOLL FREE NUMBER)
Hours to Call:
7:00 AM TO 7:00 PM MON-FRI

Last Date to Petition Tax Court:
SEPTEMBER 2, 2003

JAY C & FAYE MCKEAN
RT 1 BOX 2031
ROBERTS, MT 59070-9610319

Penalties/Additions to Tax
IRC Section 6651(a)(1)     $655.25
IRC Section 6654(a)        $140.02

Dear Taxpayer:

We have determined that there is a deficiency (increase) in your income tax as shown above. This letter is your NOTICE OF DEFICIENCY, as required by law. The enclosed statement shows how we figured the deficiency.

If you want to contest this determination in court before making any payment, you have until the Last Date to Petition Tax Court (90 days from the date of this letter or 150 days if the letter is addressed to you outside the United States) to file a petition with the United States Tax Court for a redetermination of the amount of your tax. You can get a petition form and the rules for filing a petition from the Tax Court. You should file the petition with the United States Tax Court, 400 Second Street NW, Washington D.C. 20217. Attach a copy of this letter to the petition.

The time in which you must file a petition with the court (90 days or 150 days as the case may be) is fixed by law and the Court cannot consider your case if the petition is filed late. As required by law, separate notices are sent to spouses. If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition or each must file a separate, signed petition.

The Tax Court has a simplified procedure for small tax cases when the amount in dispute is $50,000 or less for any one tax year. You can also get information about this procedure, as well as a petition form you can use, by writing to the Clerk of the United States Tax Court at 400 Second Street, NW, Washington, D.C. 20217. You should write promptly if you intend to file a petition with the Tax Court.

If you decide *not* to file a petition with the Tax Court, please sign and return the enclosed waiver form to us. This will permit us to assess the deficiency quickly and will limit the accumulation of interest. We've enclosed an envelope you can use. If you decide not to sign and return the waiver and you do not petition the Tax Court, the law requires us to assess and bill you for the deficiency after 90 days from the date of this letter (150 days if this letter is addressed to you outside the United States).

Case 1:07-cv-02202-ESH    Document 20-2    Filed 06/27/2008    Page 113 of 164
P.3
FEB-27-2008 Case 1:07-cv-02202-ESH    Document 15-2    Filed 04/25/2008    Page 35 of 36

If you have questions about this letter, you may call the Contact Person whose name and telephone number are shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you. If you prefer, you can call the Internal Revenue Service (IRS) telephone number in your local directory. An IRS employee there may be able to help you, but the office at the address shown on this letter is most familiar with your case.

When you send information we requested or if you write to us about this letter, please provide a telephone number and the best time to call you if we need more information. Please attach this letter to your correspondence to help us identify your case. Keep the copy for your records.

The person whose name and telephone number are shown in the heading of this letter can access your tax information and help get you answers. You also have the right to contact the Taxpayer Advocate. You can call 1-877-777-4778 and ask for Taxpayer Advocate Assistance. Or you can contact the Taxpayer Advocate for the IRS Office that issued this Notice of Deficiency by calling (801) 620-7168 or writing to:

> OGDEN SERVICE CENTER
> TAXPAYER ADVOCATE
> P.O. BOX 9941, STOP 1005
> OGDEN, UT 84409

Taxpayer Advocate assistance is not a substitute for established IRS procedures such as the formal appeals process. The Taxpayer Advocate is not able to reverse legally correct tax determinations, nor extend the time fixed by law that you have to file a petition in the United States Tax Court. The Taxpayer Advocate can, however, see that a tax matter that may not have been resolved through normal channels gets prompt and proper handling.

Thank you for your cooperation.

Sincerely yours,

Commissioner
By

Timothy A Towns

TIMOTHY A. TOWNS
COMPLIANCE CENTER
OGDEN Service Center

Enclosures:
Copy of this letter
Waiver
Envelope

Cat. No. 27500P                                    Letter 3219(SC/CG) (06-1999)

| | | | Symbols |
|---|---|---|---|
| **FORM 5564**(Rev. June 1992) | Department of the Treasury — Internal Revenue Service **NOTICE OF DEFICIENCY - WAIVER** | | OGDEN STOP 4388 |

Name and Address of Taxpayer(s)

JAY C & FAYE MCKEAN
RT 1 BOX 2031
ROBERTS, MT   59070-9610319

JUNE 4, 2003

| Kind of Tax | ☐ Copy to Authorized Representative | |
|---|---|---|
| **INDIVIDUAL INCOME** | | |
| Tax Year Ended | **DEFICIENCY** | |
| DECEMBER 31, 2000 | Increase in Tax   $2,621.00 | Penalties |
| | IRC Section   6651(a)(1) | $655.25 |
| | IRC Section   6654(a) | $140.02 |

I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above, plus any interest. Also, I waive the requirement under section 6532 (a) (1) of the Internal Revenue Code that a notice of claim disallowance be sent to me by certified mail for any overpayment shown on the attached report.

I understand that the filing of this waiver is irrevocable and it will begin the 2-year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

| Signature | | | Date |
|---|---|---|---|
| | | | Date |
| | By | Title | Date |

**Note:** If you consent to the assessment of the deficiencies shown in this waiver, please sign and return this form to limit the interest charge and expedite our bill to you. Please do not sign and return any prior notices you may have received. Your consent signature is required on this waiver, even if fully paid.

Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are so entitled; nor prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for such action.

If you later file a claim and the Service disallows it, you may file suit for refund in a District Court or in the United States Claims Court, but you may not file a petition with the United States Tax Court.

**Who Must Sign:** If you filed jointly, both you and your spouse must sign. Your attorney or agent may sign this waiver provided that action is specifically authorized by a power of attorney which, if not previously filed, must accompany this form.

If this waiver is signed by a person acting in a fiduciary capacity (for example, an executor, administrator, or a trustee), Form 56, Notice Concerning Fiduciary Relationship, should, unless previously filed, accompany this form.

**If you agree, please sign and return this form; keep one copy for your records.**

**FORM 5564**(Rev. 6-92)

EXHUU                    SBV

**IRS** Department of the Treasury
Internal Revenue Service
OGDEN, UT  84201

Letter Number: 3219(SC/CG)
Letter Date: OCTOBER 24, 2003

Taxpayer Identification Number:

7112 7667 8555 2009 3367

Tax Form: 1040

**Tax Year Ended and Deficiency**

DECEMBER 31, 2001    $2,291.00

Contact Person:

MR.PARIZEK    29-61699

Contact Telephone Number:
(866) 899-9083
(TOLL FREE NUMBER)

Hours to Call:
7:00 AM TO 7:00 PM MON-FRI

JAY MCKEAN
RT 1 BOX 2031
ROBERTS, MT  59070-9610319

Last Date to Petition Tax Court:
JANUARY 22, 2004

Penalties/Additions to Tax

IRC Section  6651(a)(1)    $572.75

Dear Taxpayer:

We have determined that there is a deficiency (increase) in your income tax as shown above. This letter is your NOTICE OF DEFICIENCY, as required by law.  The enclosed statement shows how we figured the deficiency.

If you want to contest this determination in court before making any payment, you have until the **Last Date to Petition Tax Court** (90 days from the date of this letter or 150 days if the letter is addressed to you outside the United States) to file a petition with the United States Tax Court for a redetermination of the amount of your tax.  You can get a petition form and the rules for filing a petition from the Tax Court.  You should file the petition with the   United States Tax Court, 400 Second Street NW, Washington D.C. 20217.  Attach a copy of this letter to the petition.

The time in which you must file a petition with the court (90 days or 150 days as the case may be) is fixed by law and the Court cannot consider your case if the petition is filed late.  As required by law, separate notices are sent to spouses.  If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition or each must file a separate, signed petition.

The Tax Court has a simplified procedure for small tax cases when the amount in dispute is $50,000 or less for any one tax year.  You can also get information about this procedure, as well as a petition form you can use, by writing to the Clerk of the United States Tax Court at 400 Second Street, NW, Washington, D.C. 20217.  You should write promptly if you intend to file a petition with the Tax Court.

If you decide *not* to file a petition with the Tax Court, please sign and return the enclosed waiver form to us.  This will permit us to assess the deficiency quickly and will limit the accumulation of interest.  We've enclosed an envelope you can use.  If you decide not to sign and return the waiver and you do not petition the Tax Court, the law requires us to assess and bill you for the deficiency after 90 days from the date of this letter (150 days if this letter is addressed to you outside the United States).

If you have questions about this letter, you may call the Contact Person whose name and telephone number are shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you. If you prefer, you can call the Internal Revenue Service (IRS) telephone number in your local directory. An IRS employee there may be able to help you, but the office at the address shown on this letter is most familiar with your case.

When you send information we requested or if you write to us about this letter, please provide a telephone number and the best time to call you if we need more information. Please attach this letter to your correspondence to help us identify your case. Keep the copy for your records.

The person whose name and telephone number are shown in the heading of this letter can access your tax information and help get you answers. You also have the right to contact the Taxpayer Advocate. You can call 1-877-777-4778 and ask for Taxpayer Advocate Assistance. Or you can contact the Taxpayer Advocate for the IRS Office that issued this Notice of Deficiency by calling (801) 620-7168 or writing to:

> OGDEN SERVICE CENTER
> TAXPAYER ADVOCATE
> P.O. BOX 9941, STOP 1005
> OGDEN, UT 84409

Taxpayer Advocate assistance is not a substitute for established IRS procedures such as the formal appeals process. The Taxpayer Advocate is not able to reverse legally correct tax determinations, nor extend the time fixed by law that you have to file a petition in the United States Tax Court. The Taxpayer Advocate can, however, see that a tax matter that may not have been resolved through normal channels gets prompt and proper handling.

Thank you for your cooperation.

Sincerely yours,

Commissioner
By

*Thomas D Mathews*

THOMAS B. MATHEWS
COMPLIANCE CENTER
OGDEN Service Center

Enclosures:
Copy of this letter
Waiver
Envelope

Cat. No. 27500P                    Letter 3219(SC/CG) (08-1999)

EXM00                                                              SBV

| FORM 5564(Rev. June 1992) | Department of the Treasury — Internal Revenue Service **NOTICE OF DEFICIENCY - WAIVER** | Symbols **OGDEN** **STOP 4388** |
|---|---|---|

Name and Address of Taxpayer(s)

**OCTOBER 24, 2003**

JAY MCKEAN
RT 1 BOX 2031
ROBERTS, MT 59070-9610319

| Kind of Tax | ☐ Copy to Authorized Representative |
|---|---|
| **INDIVIDUAL INCOME** | |

| Tax Year Ended | **DEFICIENCY** | |
|---|---|---|
| **DECEMBER 31, 2001** | Increase in Tax   **$2,291.00** | Penalties |
| | IRC Section  6651(a)(1) | **$572.75** |

I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above, plus any interest. Also, I waive the requirement under section 6532 (a) (1) of the Internal Revenue Code that a notice of claim disallowance be sent to me by certified mail for any overpayment shown on the attached report.

I understand that the filing of this waiver is irrevocable and it will begin the 2-year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

| Signature | | | Date |
|---|---|---|---|
| | | | Date |
| | By | Title | Date |

**Note:** If you consent to the assessment of the deficiencies shown in this waiver, please sign and return this form to limit the interest charge and expedite our bill to you. Please do not sign and return any prior notices you may have received. Your consent signature is required on this waiver, even if fully paid.

Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are so entitled; nor prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for such action.

If you later file a claim and the Service disallows it, you may file suit for refund in a District Court or in the United States Claims Court, but you may not file a petition with the United States Tax Court.

**Who Must Sign:** If you filed jointly, both you and your spouse must sign. Your attorney or agent may sign this waiver provided that action is specifically authorized by a power of attorney which, if not previously filed, must accompany this form.

If this waiver is signed by a person acting in a fiduciary capacity (for example, an executor, administrator, or a trustee), Form 56, Notice Concerning Fiduciary Relationship, should, unless previously filed, accompany this form.

**If you agree, please sign and return this form; keep one copy for your records.**

FORM **5564**(Rev. 6-92)

*Certified Mail # 9000 1690 0003 8853 7934*



**Internal Revenue Service**
**1973 North Rulon White Blvd.**
**Ogden, UT 84404**

**Department of the Treasury**
Taxpayer Identification Number:
███████████
Form: 1040
Tax Period Ended and Tax Deficiency:
December 31, 2001   $2,291.00
Person to Contact:
Mrs. Martinez
Employee Identification Number:
0469147129
Contact Telephone Number:
1-866-899-9083 Ext 8463
Contact Hours: 7:00 am - 3:30 pm
Mountain Time
Refer Reply to: Mail Stop 4451
Last Date to Respond to this letter:
September 06, 2003

Date: August 06, 2003

JAY MCKEAN
RT 1 BOX 2031
ROBERTS MT 59070

**RECEIVED**

AUG 2 0 2003

**FRP 303**

.RECEIVED IN CORRES.
IRS  OSC -6OO

AUG 1 4 2003

**OGDEN,UTAH**

Dear Mr. McKean:

### WHY WE ARE SENDING YOU THIS LETTER

We have no record of receiving your federal income tax return for the year(s) shown above or the return(s) we received was not valid. We have figured the proposed tax and penalties based on information your employers, banks and other payers reported on Forms W-2, W-2P, 1099, etc. We explain the tax and penalties in the enclosed report.

### WHAT YOU SHOULD DO IF YOU AGREE WITH THE REPORT

If you agree with the tax and penalties shown in the report, please sign, date and return one copy of the report along with payment for the total amount due. It is to your advantage to pay the total amount now since we will continue to charge interest until the amount you owe is paid in full. If you can't pay the full amount at this time, please call us to discuss how you can pay what you owe.

### WHAT YOU SHOULD DO IF YOU DISAGREE WITH THE REPORT

If you don't agree with the tax and penalties and want us to reconsider this matter, you should provide the reason you didn't file a return and other related information you want us to consider.

Please respond within 30 days from the date of this letter. If we do not hear from you within this time frame we will issue a Notice of Deficiency. A Notice of Deficiency is a legal notice stating the amount of the proposed tax increase and penalties, and explaining your right to file a petition with the United States Tax Court.

If you decide to file a return at this time, please send it to the above address. To help us identify your case, please include this letter with your return. Be sure to include all supporting records. We have enclosed a copy of this letter for your records and an envelope for your convenience.

Pursuant to U.C.C. § 1-301, "REFUSAL FOR CAUSE", I, hereby, REFUSE AND REFUTE this presentment FOR CAUSE and WITHOUT DISHONOR. I do not owe this.
All Rights Reserved, Without Prejudice, UCC 1-207

*Jay C. McKean*

Letter 1862 (SC/CG) (Rev 12-2002)
Catalog Number 34782H

## WHAT WILL HAPPEN IF YOU DON'T RESPOND

If you do not provide the information we ask for, or provide fraudulent information, the law provides that you may be charged penalties and in certain cases, you may be subject to criminal prosecution. We may also have to disallow the exemptions, exclusions, credits, deductions or adjustments shown on the tax return. This could make the tax higher or delay any refund. Interest may also be charged.

## WHY WE ARE ASKING FOR THIS INFORMATION

Under the Privacy Act of 1974, we must tell you that our legal right to ask for this information is Internal Revenue Code sections 6001, 6011, 6012(a) and their regulations. They say that you must furnish us with records of statements for any tax year that you are liable for, including the taxes your employer withheld.

We ask for this information to carry out the Internal Revenue Tax laws of the United States and you are required to give us this information. We may give the information to the Department of Justice for civil and criminal litigation, other Federal agencies, states, cities and the District of Columbia for use in administering their tax laws.

## WHAT TO DO IF YOU HAVE ANY QUESTIONS

We have enclosed Publication 1, Your Rights as a Taxpayer, Publication 5, Your Appeal Rights and How to Prepare a Protest If You Don't Agree, and Publication 594, Understanding the Collection Process, for your information.

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter. Thank you for your cooperation.

Sincerely,

Operations Manager
Exam SC Support

Enclosures:
Copy of this letter
Envelope
Examination Report (2)
Publication 1
Publication 5
Publication 594
Notice 609
Form 9465

Pursuant to U.C.C. § 1-301, "REFUSAL FOR CAUSE", I, hereby, REFUSE AND REFUTE this presentment FOR CAUSE and WITHOUT DISHONOR. I do not owe this.
All Rights Reserved, Without Prejudice, UCC 1-307

RECEIVED IN CORRES
IRS - OSC 600

AUG 1 4 2003

OGDEN UTAH

Letter 1862 (SC/CG) (Rev 12-2002)
Catalog Number 34782H

| Form 4549 | Department of the Treasury - Internal Revenue Service **Income Tax Examination Changes** | | | Page 1 of 2 |
|---|---|---|---|---|

| Name and Address of Taxpayer | SS or EI Number | | Return Form No: |
|---|---|---|---|
| JAY. MCKEAN | | | 1040 |

P.T 1 BOX 2031
ROBERTS          MT 59070

| | Person with whom examination changes were discussed | Name and Title: | |
|---|---|---|---|

| 1. Adjustments to Inc. | Period End 12/31/2001 | Period End | Period End |
|---|---|---|---|
| a. Social Security Rh. | 10,373.00 | | |
| b. Standard Deduction | (3,800.00) | | |
| c. Exemptions | (2,900.00) | | |
| d. GROSS DISTRIBUTIONS- EIGHT. | 6,396.00 | | |
| e. GROSS DISTRIBUTIONS- TRUST 4 | 596.00 | | |
| f. GROSS DISTRIBUTIONS- NATIONAL EL | 6,573.00 | | |
| g. INTEREST- LAUREL FEDERAL CREDIT UNI | 18.00 | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| 2. Total Adjustments | 17,264.00 | | |
| 3. Taxable Income Per Return or as Previously Adjusted | 0.00 | | |
| 4. Corrected Taxable Income | 17,254.00 | | |
|     Tax Method | TAX TABLE | | |
|     Filing Status | Married Separate | | |
| 5. Tax | 2,591.00 | | |
| 6. Additional Taxes / Alternative Minimum Tax | | | |
| 7. Corrected Tax Liability | 2,591.00 | | |
| 8. Less  a. Rate Reduction Credit | 300.00 | | |
|    Credits b. | | | |
|           c. | | | |
|           d. | | | |
| 9. Balance (Line 7 less total of lines 8a through 8d) | 2,291.00 | | |
| 10. Plus  a. | | | |
|    Other b. | | | |
|    Taxes c. | | | |
|           d. | | | |
| 11. Total Corrected Tax Liability(line 9 plus line 10a - 10d) | 2,291.00 | | |
| 12. Total Tax Shown on Return or as Previously Adjusted | 0.00 | | |
| 13. Adjustments to: a. Special Fuels Credit | | | |
|           b. | | | |
|           c. | | | |
| 14. Deficiency-Increase in Tax or (Overassessment Decrease in Tax) (Line 11 less 12 adjusted by 13) | 2,291.00 | | |
| 15. Adjustments to Prepayment Credits | | | |
| 16. Balance Due or (Overpayment) (Line 14 adjusted by Line 15) ( Excluding interest and penalties) | 2,291.00 | | |

RECEIVED IN CORRES,
IRS  OSC -600

AUG 1 4 2003

OGDEN, UTAH

The Internal Revenue Service has agreements with State tax agencies under which information about Federal tax, including increases or decreases, is exchanged with the States. If this change effects the amount of your State income tax, you should file the State form.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income and do not pay the required tax. The IRS may order backup withholding at 31 percent after four notices have been issued to you over a 120-day period and the tax has been assessed and remains unpaid.

RGS Version 4.00.00                                                      Form CG-4549

| Form 4549 | Department of the Treasury - Internal Revenue Service | | Page 2 of 2 |
|---|---|---|---|
| | **Income Tax Examination Changes** | | |

| Name and Address of Taxpayer | SS or EI Number | Return Form No: |
|---|---|---|
| JAY MCKEAN | | 1040 |

| 17. Penalties | Period End 12/11/2001 | Period End | Period End |
|---|---|---|---|
| a. Delq-IRC 6651(a)(1) | 572.75 | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| 18. Total Penalties | 572.75 | | |
| Underpayment attributable to negligence: (1981-1987) A tax addition of 50 percent of the interest due on underpayment will accrue until paid or assessed | | | |
| Underpayment attributable to fraud: (1981-1987) A tax addition of 50 percent of the interest due on underpayment will accrue until paid or assessed | | | |
| Underpayment attributable to Tax Motivated Transactions TMT interest will accrue and be assessed at 120% of underpayment rate in accordance with IRC 6621(c) | 0.00 | | |
| 19. Summary of Taxes, Penalties and Interest: | | | |
| a. Balance due or Overpayment Taxes – Line 16, Page 1 | 2,291.00 | | |
| b. Penalties (Line 18, Page 2)-computed to 08/06/2003 | 572.75 | | |
| c. Interest (IRC§ 6601)-computed to 09/05/2003 | 228.31 | | |
| d. TMT interest – computed 09/05/2003 on TMT underpayment | 0.00 | | |
| e. Amount due or refund (sum of lines a, b, c and d) | 3,092.06 | | |

Other Information:

RECEIVED IN CORRES
IRS - OSC -600

AUG 1 4 2003

OGDEN, UTAH

| Examiner's Signature: | Employee ID: | Office: | Date: |
|---|---|---|---|
| Mrs. Martines | 0469147129 | 1-866-899-9083 Ext. 8463 | 08/06/2003 |

Consent to Assessment and Collection – I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law. It is understood that this report is subject to acceptance by the Area Director, Area Manager or Director of Field Operations

| PLEASE NOTE: If a joint return was filed, BOTH taxpayers must sign | Signature of Taxpayer | Date | Signature of Taxpayer | Date |
|---|---|---|---|---|
| By: | | Title | | Date |

RGS Version 4.00.00

Form CG-4549

| Form 886-A (Rev. January 1994) 886-A | | EXPLANATION OF ITEMS | | Schedule number or exhibit |
|---|---|---|---|---|
| Name of Taxpayer | | Taxpayer Identification Number | | Year/Period Ended |
| JAY MCKRAN | | | | 2001 |

### PENSIONS AND ANNUITIES- SSA

|  | Tax Period 2001 | Per Return $0.00 | Per Exam $12,204.00 | Adjustment $12,204.00 |
|---|---|---|---|---|

We included in your income the taxable part of your social security benefits, as shown in the attached computation.

### GROSS DISTRIBUTIONS- EIGHTH DISTRICT ELECTRICAL

|  | Tax Period 2001 | Per Return $0.00 | Per Exam $6,396.00 | Adjustment $6,396.00 |
|---|---|---|---|---|

The pension you received is includible in income as shown on Form 1099-R.

### GROSS DISTRIBUTIONS- TRUST 4 INTERNATIONAL BROTHER

|  | Tax Period 2001 | Per Return $0.00 | Per Exam $596.00 | Adjustment $596.00 |
|---|---|---|---|---|

The pension you received is includible in income as shown on Form 1099-R.

### GROSS DISTRIBUTIONS- NATIONAL ELECTRICAL BENEFITS

|  | Tax Period 2001 | Per Return $0.00 | Per Exam $6,571.00 | Adjustment $6,571.00 |
|---|---|---|---|---|

The pension you received is includible in income as shown on Form 1099-R.

### INTEREST- LAUREL FEDERAL CREDIT UNION

|  | Tax Period 2001 | Per Return $0.00 | Per Exam $18.00 | Adjustment $18.00 |
|---|---|---|---|---|

All interest income is includible in income unless specifically exempted by law.

RECEIVED IN CORRES
IRS · OSC ·600

AUG 1 4 2003

OGDEN UTAH

Form 886-A (1-1994)

Department of the Treasury - Internal Revenue Service

| Form 886-A-<br>(Rev. January 1994)886-A | EXPLANATION OF ITEMS | Schedule number or exhibit |
|---|---|---|
| Name of Taxpayer<br>JAY MCKEAN | Taxpayer Identification Number | Year/Period Ended<br>2001 |

## FILING STATUS

| | Tax Period<br>2001 | Per Return<br>$0.00 | Per Exam<br>$0.00 | Adjustment<br>$0.00 |
|---|---|---|---|---|

Since you failed to file your tax return(s) for the tax year(s) shown in this report, we have filed for you as authorized by Internal Revenue Code section 6020(b). The income, filing status, deductions, and credits shown in this report are based on information available to us.

## EXEMPTIONS

| | Tax Period<br>2001 | Per Return<br>0 | Per Exam<br>1 | Adjustment<br>-1 |
|---|---|---|---|---|

We have allowed you a deduction for your personal exemption.

## Social Security RRB

| | Tax Period<br>2001 | Per Return<br>$0.00 | Per Exam<br>$10,373.00 | Adjustment<br>$10,373.00 |
|---|---|---|---|---|

Since we changed your adjusted gross income, we adjusted the taxable part of your social security benefits and/or your tier I railroad retirement benefits, as shown in the attached computation.

## Rate Reduction Credit

| | Tax Period<br>2001 | Per Return<br>$0.00 | Per Exam<br>$300.00 | Adjustment<br>($300.00) |
|---|---|---|---|---|

Since we have adjusted your tax, we have recomputed the amount of your rate reduction credit.

RECEIVED IN CORRES
IRS  OSC  600
AUG 1 4 2003
OGDEN, UTAH

Form 886-A (1-1994)                                                    Department of the Treasury - Internal Revenue Service

| Name of Taxpayer: | JAY MCKEAN | | 08/06/2003 |
| Identification Number: | ████████ | Total | 4.00.00 |

### 2001 · SOCIAL SECURITY

1. Total Social Security Benefits (including RRB)                                    12,204.00

2. Line 1 divided by 2                                                                           6,102.00

3. Adjusted Gross Income (less Taxable Social Security)                       19,683.00
   plus the amount on line 2 and Tax Exempt Interest

4. Enter $25,000 ($32,000 if married filing joint, 0 if                                0 00
   married filing separate and you lived with your
   spouse at any time during the year)

5. Subtract line 4 from line 3 (not less than zero)                                19,683.00

6. Enter $9,000 ($12,000 if married filing joint, 0 if                                0.00
   married filing separate and you lived with your
   spouse at any time during the year)

7. Subtract line 6 from line 5 (not less than zero)                                19,683.00

8. Enter the smaller of line 5 or 6                                                         0.00

9. One half of line 8                                                                             0 00

10. Enter the smaller of lines 2 and 9                                                     0.00

11. Multiply line 7 by 85%                                                                 16,731.00

12. Sum of line 10 and 11                                                                  16,731.00

13. Multiply line 1 by 85%                                                                  10,373.00

14. Taxable Social Security Benefits                                                     10,373.00
    (smaller of lines 12 and 13)

[RECEIVED IN CORRES
IRS · OSC 800

AUG 1 4 2003


OGDEN, UTAH

| Name Of Taxpayer: | JAY MCKEAN | | 08/06/2003 |
|---|---|---|---|
| Identification Number: | ▉▉▉▉▉ | Total | 4.00.00 |

**200108    - Rate Reduction Credit Worksheet**

1. Taxable Income — 17,254.00

2. Enter the amount shown below for filing status — 6,000 00
   - Single or married filing separately - $6,000
   - Head of Household - $10,000
   - Married filing jointly or qualifying widow(er) - $12,000

3. Is the amount on line 1 less than the amount on line 2 — 300.00

   No - $300 if single or married filing separately;
   $500 if head of household; $600 if married filing jointly
   or qualifying widow(er)
   Yes - Multiply the amount on line 1 by .05

4. Amount of tax before allowable credits — 2,591 00

5. Total credits (not including the Rate Reduction Credit) — 0.00

6. Subtract line 5 from line 4 — 2,591.00

7. Smaller of line 3 or line 6 — 300.00

8. Amount of advanced payment received — 0.00

9. Rate reduction credit allowed — 300 00


RECEIVED IN CORRES
IRS · OSC · RO0
AUG 1 4 2003
OGDEN, UTAH

# IRC Section 6020(b) Certification

| | Total pages certified as valid Section 6020(b) return | Tax year |
|---|---|---|
| | | 2002 12 |

Name of taxpayer
JAY MCKEAN

Social security number

Address of taxpayer (Number, street, city or town, State, ZIP code)

RT 1 BOX 2031
ROBERTS MT 59070-9610

## Certification

The officer of the IRS identified below, authorized by Delegation Order 182, certifies the attached Pages constitute a valid return under section 6020(b). This return consists of the following items:

1. A copy of the Form 1040 which the IRS used to establish the taxpayer's account on its computer system or, alternatively, a transcript of account reflecting the entry of data used to establish the taxpayer's account on the IRS computer system;
2. Form 4549, Income Tax Examination Changes;
3. Form 886-A, Explanation of Items; and
4. This Certification (form 13496).

Pursuant to section 6651(g)(2), this certification, with attachments, shall be treated as the return filed by the taxpayer for purposes of determining the amount of the additions to tax under paragraphs (2) and (3) of section 6651(a).

## IRS Authorization Data

| Employee name | Title | Office | ID number |
|---|---|---|---|
| Dennis L. Parizek | Operations Manager, Exam | SB/SE | 29-61699 |
| | | | Date (mmddyyyy) |
| | | | June 2, 2004 |

Signature

Form 13496 (11-2003)    Catalog No. 37538J    publish.no irs.gov    Department of the Treasury – Internal Revenue Service



Department of the Treasury
Internal Revenue Service
OGDEN, UT   84201

7112 7667 8555 2009 3367

Letter Number: 3219(SC/CG)
Letter Date: OCTOBER 24, 2003

Taxpayer Identification Number:

Tax Form: 1040

Tax Year Ended and Deficiency
DECEMBER 31, 2001    $2,291.00

Contact Person:
MR. PARIZEK    29-61699

Contact Telephone Number:
(866) 899-9083
(TOLL FREE NUMBER)

Hours to Call:
7:00 AM TO 7:00 PM MON-FRI

JAY MCKEAN
RT 1 BOX 2851
ROBERTS, MT   59070-9618319

Last Date to Petition Tax Court:
JANUARY 22, 2004

Penalties/Additions to Tax
IRC Section  6651(a)(1)                    $572.75

Dear Taxpayer:

We have determined that there is a deficiency (increase) in your income tax as shown above. This letter is your NOTICE OF DEFICIENCY, as required by law. The enclosed statement shows how we figured the deficiency.

If you want to contest this determination in court before making any payment, you have until the Last Date to Petition Tax Court (90 days from the date of this letter or 150 days if the letter is addressed to you outside the United States) to file a petition with the United States Tax Court for a redetermination of the amount of your tax. You can get a petition form and the rules for filing a petition from the Tax Court. You should file the petition with the  United States Tax Court, 400 Second Street NW, Washington D.C. 20217. Attach a copy of this letter to the petition.

The time in which you must file a petition with the court (90 days or 150 days as the case may be) is fixed by law and the Court cannot consider your case if the petition is filed late. As required by law, separate notices are sent to spouses. If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition or each must file a separate, signed petition.

The Tax Court has a simplified procedure for small tax cases when the amount in dispute is $50,000 or less for any one tax year. You can also get information about this procedure, as well as a petition form you can use, by writing to the Clerk of the United States Tax Court at 400 Second Street, NW, Washington, D.C. 20217. You should write promptly if you intend to file a petition with the Tax Court.

If you decide *not* to file a petition with the Tax Court, please sign and return the enclosed waiver form to us. This will permit us to assess the deficiency quickly and will limit the accumulation of interest. We've enclosed an envelope you can use. If you decide not to sign and return the waiver and you do not petition the Tax Court, the law requires us to assess and bill you for the deficiency after 90 days from the date of this letter (150 days if this letter is addressed to you outside the United States).

If you have questions about this letter, you may call the Contact Person whose name and telephone number are shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you. If you prefer, you can call the Internal Revenue Service (IRS) telephone number in your local directory. An IRS employee there may be able to help you, but the office at the address shown on this letter is most familiar with your case.

When you send information we requested or if you write to us about this letter, please provide a telephone number and the best time to call you if we need more information. Please attach this letter to your correspondence to help us identify your case. Keep the copy for your records.

The person whose name and telephone number are shown in the heading of this letter can access your tax information and help get you answers. You also have the right to contact the Taxpayer Advocate. You can call 1-877-777-4778 and ask for Taxpayer Advocate Assistance. Or you can contact the Taxpayer Advocate for the IRS Office that issued this Notice of Deficiency by calling (801) 620-7168 or writing to:

OGDEN SERVICE CENTER
TAXPAYER ADVOCATE
P.O. BOX 9941, STOP 1005
OGDEN, UT 84409

Taxpayer Advocate assistance is not a substitute for established IRS procedures such as the formal appeals process. The Taxpayer Advocate is not able to reverse legally correct tax determinations, nor extend the time fixed by law that you have to file a petition in the United States Tax Court. The Taxpayer Advocate can, however, see that a tax matter that may not have been resolved through normal channels gets prompt and proper handling.

Thank you for your cooperation.

Sincerely yours,

Commissioner
By

*Thomas D Mathews*

THOMAS D. MATHEWS
COMPLIANCE CENTER
OGDEN Service Center

Enclosures:
Copy of this letter
Waiver
Envelope

Cat. No. 27500P          Letter 3219(SC/CG) (08-1999)

EXM00                                                          SBV

| FORM 5564 (Rev. June 1992) | Department of the Treasury — Internal Revenue Service<br>**NOTICE OF DEFICIENCY - WAIVER** | Symbols<br>OGDEN<br>STOP 4388 |
|---|---|---|

| Name and Address of Taxpayer(s) | OCTOBER 24, 2003 |
|---|---|
| JAY MCKEAN<br>RT 1 BOX 2051<br>ROBERTS, MT  59070-9610319 | |

| Kind of Tax | ☐  Copy to Authorized Representative |
|---|---|
| **INDIVIDUAL INCOME** | |

| Tax Year Ended | **DEFICIENCY** | |
|---|---|---|
| **DECEMBER 31, 2001** | Increase in Tax     $2,291.00 | Penalties |
| IRC Section  6651(a)(1) | | $572.75 |

I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above, plus any interest. Also, I waive the requirement under section 6532 (a) (1) of the Internal Revenue Code that a notice of claim disallowance be sent to me by certified mail for any overpayment shown on the attached report.

I understand that the filing of this waiver is irrevocable and it will begin the 2-year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

| Signature | | Date |
|---|---|---|
| | | Date |
| By | Title | Date |

**Note:** If you consent to the assessment of the deficiencies shown in this waiver, please sign and return this form to limit the interest charge and expedite our bill to you. Please do not sign and return any prior notices you may have received. Your consent signature is required on this waiver, even if fully paid.

Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are so entitled; nor prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for such action.

If you later file a claim and the Service disallows it, you may file suit for refund in a District Court or in the United States Claims Court, but you may not file a petition with the United States Tax Court.

**Who Must Sign:** If you filed jointly, both you and your spouse must sign. Your attorney or agent may sign this waiver provided that action is specifically authorized by a power of attorney which, if not previously filed, must accompany this form.

If this waiver is signed by a person acting in a fiduciary capacity (for example, an executor, administrator, or a trustee), Form 56, Notice Concerning Fiduciary Relationship, should, unless previously filed, accompany this form.

**If you agree, please sign and return this form; keep one copy for your records.**

FORM 5564 (Rev. 6-92)

EXM00                                    WI

**IRS** Department of the Treasury
Internal Revenue Service
OGDEN, UT  84201-0040

Letter Number: 3219(SC/CG)
Letter Date: JULY 27, 2004

Taxpayer Identification Number:

7112 7667 8555 2041 3813

Tax Form: 1040

Tax Year Ended and Deficiency

DECEMBER 31, 2002    $2,366.00

JAY MCKEAN
RT 1 BOX 2031
ROBERTS, MT  59070-9610319

Contact Person:

MR. PARIZEK    29-61699

Contact Telephone Number:
(866) 899-9083
(TOLL FREE NUMBER)

Hours to Call:
7:00 AM TO 7:00 PM MON-FRI

Last Date to Petition Tax Court:
OCTOBER 25, 2004

Penalties/Additions to Tax

IRC Section 6651(a)(1)    $697.97

Dear Taxpayer:

We have determined that there is a deficiency (increase) in your income tax as shown above. This letter is your NOTICE OF DEFICIENCY, as required by law. The enclosed statement shows how we figured the deficiency.

If you want to contest this determination in court before making any payment, you have until the Last Date to Petition Tax Court (90 days from the date of this letter or 150 days if this letter is addressed to you outside the United States) to file a petition with the United States Tax Court for a redetermination of the amount of your tax. You can get a petition form and the rules for filing a petition from the Tax Court. You should file the petition with the United States Tax Court, 400 Second Street NW, Washington D.C. 20217. Attach a copy of this letter to the petition.

The time in which you must file a petition with the court (90 days or 150 days as the case may be) is fixed by law and the Court cannot consider your case if the petition is filed late. As required by law, separate notices are sent to spouses. If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition or each must file a separate, signed petition.

The Tax Court has a simplified procedure for small tax cases when the amount in dispute is $50,000 or less for any one tax year. You can also get information about this procedure, as well as a petition form you can use, by writing to the Clerk of the United States Tax Court at 400 Second Street, NW, Washington, D.C. 20217. You should write promptly if you intend to file a petition with the Tax Court.

If you decide *not* to file a petition with the Tax Court, please sign and return the enclosed waiver form to us. This will permit us to assess the deficiency quickly and will limit the accumulation of interest. We've enclosed an envelope you can use. If you decide not to sign and return the waiver and you do not petition the Tax Court, the law requires us to assess and bill you for the deficiency after 90 days from the date of this letter (150 days if this letter is addressed to you outside the United States).

If you have questions about this letter, you may call the Contact Person whose name and telephone number are shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you. If you prefer, you can call the Internal Revenue Service (IRS) telephone number in your local directory. An IRS employee there may be able to help you, but the office at the address shown on this letter is most familiar with your case.

When you send information we requested or if you write to us about this letter, please provide a telephone number and the best time to call you if we need more information. Please attach this letter to your correspondence to help us identify your case. Keep the copy for your records.

The person whose name and telephone number are shown in the heading of this letter can access your tax information and help get you answers. You also have the right to contact the Taxpayer Advocate. You can call 1-877-777-4778 and ask for Taxpayer Advocate Assistance. Or you can contact the Taxpayer Advocate for the IRS Office that issued this Notice of Deficiency by calling (801) 620-7168 or writing to:

> OGDEN SERVICE CENTER
> TAXPAYER ADVOCATE
> P.O. BOX 9941, STOP 1005
> OGDEN, UT 84409

Taxpayer Advocate assistance is not a substitute for established IRS procedures such as the formal appeals process. The Taxpayer Advocate is not able to reverse legally correct tax determinations, nor extend the time fixed by law that you have to file a petition in the United States Tax Court. The Taxpayer Advocate can, however, see that a tax matter that may not have been resolved through normal channels gets prompt and proper handling.

Thank you for your cooperation.

Sincerely yours,

Commissioner
By

*Thomas D Mathews*

THOMAS D. MATHEWS
COMPLIANCE CENTER
OGDEN Service Center

Enclosures:
Copy of this letter
Waiver
Envelope

EXM00      WI

| FORM 5564(Rev. June 1992) | Department of the Treasury — Internal Revenue Service **NOTICE OF DEFICIENCY - WAIVER** | Symbols **OGDEN STOP 4388** |
|---|---|---|

Name and Address of Taxpayer(s)                **JULY 27, 2004**

JAY MCKEAN
RT 1 BOX 2031
ROBERTS, MT 59070-9610319

| Kind of Tax | ☐ Copy to Authorized Representative | |
|---|---|---|
| **INDIVIDUAL INCOME** | | |
| Tax Year Ended | **DEFICIENCY** | |
| **DECEMBER 31, 2002** | Increase in Tax    **$2,366.00** | Penalties |
| IRC Section 6651(a)(1) | | **$697.97** |

I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above, plus any interest. Also, I waive the requirement under section 6532 (a) (1) of the Internal Revenue Code that a notice of claim disallowance be sent to me by certified mail for any overpayment shown on the attached report.

I understand that the filing of this waiver is irrevocable and it will begin the 2-year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

| Signature | | | Date |
|---|---|---|---|
| | | | Date |
| | By | Title | Date |

**Note:** If you consent to the assessment of the deficiencies shown in this waiver, please sign and return this form to limit the interest charge and expedite our bill to you. Please do not sign and return any prior notices you may have received. Your consent signature is required on this waiver, even if fully paid.

Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are so entitled; nor prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for such action.

If you later file a claim and the Service disallows it, you may file suit for refund in a District Court or in the United States Claims Court, but you may not file a petition with the United States Tax Court.

**Who Must Sign:** If you filed jointly, both you and your spouse must sign. Your attorney or agent may sign this waiver provided that action is specifically authorized by a power of attorney which, if not previously filed, must accompany this form.

If this waiver is signed by a person acting in a fiduciary capacity (for example, an executor, administrator, or a trustee), Form 56, Notice Concerning Fiduciary Relationship, should, unless previously filed, accompany this form.

**If you agree, please sign and return this form; keep one copy for your records.**

FORM 5564(Rev. 6-92)



IRS **Department of the Treasury**
**Internal Revenue Service**

OGDEN, UT  84201-0040

Letter Number: 3219(SC/CG)
Letter Date: JUNE 21, 2005

Taxpayer Identification Number:

7112 7667 8555 2074 7345

Tax Form: 1040

Tax Year Ended and Deficiency

DECEMBER 31, 2003   $2,039.00

Contact Person:

MR.PARIZEK   29-61699

Contact Telephone Number:
(866) 899-9083
(TOLL FREE NUMBER)

Hours to Call:
7:00 AM TO 7:00 PM MON-FRI

JAY MCKEAN
RT 1 BOX 2051
ROBERTS, MT  59070-9610319

Last Date to Petition Tax Court:
SEPTEMBER 19, 2005

**Penalties/Additions to Tax**

IRC Section  6651(a)(1)          $458.78
IRC Section  6651(a)(2)          $112.15

Dear Taxpayer:

We have determined that there is a deficiency (increase) in your income tax as shown above.
This letter is your NOTICE OF DEFICIENCY, as required by law.  The enclosed statement
shows how we figured the deficiency.

If you want to contest this determination in court before making any payment, you have until the
__Last Date to Petition Tax Court__ (90 days from the date of this letter or 150 days if the letter is
addressed to you outside the United States) to file a petition with the United States Tax Court
for a redetermination of the amount of your tax.  You can get a petition form and the rules for
filing a petition from the Tax Court.  You should file the petition with the   United States Tax Court,
400 Second Street NW, Washington D.C.  20217.  Attach a copy of this letter to the petition.

The time in which you must file a petition with the court (90 days or 150 days as the case may be)
is fixed by law and __the Court cannot consider your case if the petition is filed late.__  As required
by law, separate notices are sent to spouses.  If this letter is addressed to both a husband and
wife, and both want to petition the Tax Court, both must sign the petition or each must file a
separate, signed petition.

The Tax Court has a simplified procedure for small tax cases when the amount in dispute is
$50,000 or less for any one tax year.  You can also get information about this procedure, as well
as a petition form you can use, by writing to the Clerk of the United States Tax Court at
400 Second Street, NW, Washington, D.C.  20217.  You should write promptly if you intend
to file a petition with the Tax Court.

If you decide *not* to file a petition with the Tax Court, please sign and return the enclosed
waiver form to us.  This will permit us to assess the deficiency quickly and will limit the
accumulation of interest.  We've enclosed an envelope you can use.  If you decide not to sign
and return the waiver and you do not petition the Tax Court, the law requires us to assess and
bill you for the deficiency after 90 days from the date of this letter (150 days if this letter is
addressed to you outside the United States).

13

If you have questions about this letter, you may call the Contact Person whose name and telephone number are shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you. If you prefer, you can call the Internal Revenue Service (IRS) telephone number in your local directory. An IRS employee there may be able to help you, but the office at the address shown on this letter is most familiar with your case.

When you send information we requested or if you write to us about this letter, please provide a telephone number and the best time to call you if we need more information. Please attach this letter to your correspondence to help us identify your case. Keep the copy for your records.

The person whose name and telephone number are shown in the heading of this letter can access your tax information and help get you answers. You also have the right to contact the Taxpayer Advocate. You can call 1-877-777-4778 and ask for Taxpayer Advocate Assistance. Or you can contact the Taxpayer Advocate for the IRS Office that issued this Notice of Deficiency by calling (801) 620-7168 or writing to:

> OGDEN SERVICE CENTER
> TAXPAYER ADVOCATE
> P.O. BOX 9941, STOP 1005
> OGDEN, UT 84409

Taxpayer Advocate assistance is not a substitute for established IRS procedures such as the formal appeals process. The Taxpayer Advocate is not able to reverse legally correct tax determinations, nor extend the time fixed by law that you have to file a petition in the United States Tax Court. The Taxpayer Advocate can, however, see that a tax matter that may not have been resolved through normal channels gets prompt and proper handling.

Thank you for your cooperation.

Sincerely yours,

Commissioner
By

SCOTT B. PRENTKY
COMPLIANCE CENTER
OGDEN Service Center

Enclosures:
Copy of this letter
Waiver
Envelope

Cat. No. 27500P    Letter 3219(SC/CG) (06-1999)

| FORM 5564 (Rev. June 1992) | Department of the Treasury — Internal Revenue Service **NOTICE OF DEFICIENCY - WAIVER** | Symbols **OGDEN** **STOP 4388** |
|---|---|---|

**Name and Address of Taxpayer(s)**                                                    **JUNE 21, 2005**

JAY MCKEAN
RT 1 BOX 2031
ROBERTS, MT  59070-9610319

---

**Kind of Tax**           ☐ Copy to Authorized Representative

INDIVIDUAL INCOME

| **Tax Year Ended** | | **DEFICIENCY** | |
|---|---|---|---|
| DECEMBER 31, 2003 | Increase in Tax | $2,039.00 | Penalties |
| | IRC Section 6651(a)(1) | | $458.78 |
| | IRC Section 6651(a)(2) | | $112.15 |

· I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above, plus any interest. Also, I waive the requirement under section 6532 (a) (1) of the Internal Revenue Code that a notice of claim disallowance be sent to me by certified mail for any overpayment shown on the attached report.

I understand that the filing of this waiver is irrevocable and it will begin the 2-year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

| Signature | | | Date |
|---|---|---|---|
| | | | Date |
| | | | Date |
| | By | Title | |

**Note:** If you consent to the assessment of the deficiencies shown in this waiver, please sign and return this form to limit the interest charge and expedite our bill to you. Please do not sign and return any prior notices you may have received. Your consent signature is required on this waiver, even if fully paid.

Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are so entitled; nor prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for such action.

If you later file a claim and the Service disallows it, you may file suit for refund in a District Court or in the United States Claims Court, but you may not file a petition with the United States Tax Court.

**Who Must Sign:** If you filed jointly, both you and your spouse must sign. Your attorney or agent may sign this waiver provided that action is specifically authorized by a power of attorney which, if not previously filed, must accompany this form.

If this waiver is signed by a person acting in a fiduciary capacity (for example, an executor, administrator, or a trustee), Form 56, Notice Concerning Fiduciary Relationship, should, unless previously filed, accompany this form.

---

**If you agree, please sign and return this form; keep one copy for your records.**

FORM 5564 (Rev. 6-92)

2226

REGISTERED MAIL RECEIPT #: 7002 3150 0003 9471

June 12, 2003

DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE
REGIONAL DIRECTOR OF COMPLIANCE
OGDEN, UTAH 84201

Jay C. McKean
Rt. 1, Box 2031
Roberts, Montana   59070

Re: Type Of Form:  1040   For Year Ended:  December 31, 1999   Amount Due:  $ 2,599.00
Unlawfully Assessed Amount:  $ 2,599.00   DISCHARGED FOR FRAUD.
Date Of Form:  June 4, 2003   Date Received:  June 6, 2003

# PETITION OF PROTEST AND NOTICE OF DEFENSE

## Verified Statement of facts upon which Petitioner Relied in Making Determination of Nontaxpayer Status

NOTICE: This Demand for an Administrative Quash is a protected special appearance pursuant to CCP 418.10(d).

I, Jay C. McKean, domiciled in Roberts, Carbon County, Montana, where I have maintained such status since 1966, am a natural born Citizen, engaged therein, in an occupation of common right pursuant to the 9th Amendment, and receiving no social security wages or income under the Public Salary Act of 1939, or any revision thereof, hereby, timely object to your accusation that I have incurred a purported tax liability, as contained in the attached form entitled, NOTICE OF DEFICIENCY [Letter 3219(SC/CG)] received by me on or about June 6, 2003, which I HEREBY QUASH AND DISCHARGE FOR FRAUD, in its entirety. This is a demand that this unlawful, unattested counterfeit presentment be quashed and the alleged Notice be immediately withdrawn, on the grounds of fraud and a lack of in personam and subject matter jurisdiction for causes contained herein.

1. This constitutes a general demurrer to your accusation in its entirety on the grounds that it is unsigned, unverified, and unsupported by a sworn affidavit, denying me the right to know and face my accuser and making such accusation merely hearsay and nonadmissable. Your accusatory presentment further, lacks jurisdictional grounds and deprives me of my right to know the nature and the cause of this action.

   Further, pursuant to Fed. R Civil P.12(b), this constitutes a Motion to Dismiss for (1) lack of jurisdiction over my person, (2) improper venue, (3) insufficiency of process, (4) insufficiency of service of process and (5) failure to state a claim upon which relief can be granted.

2. I object to the form of the accusation on the grounds that it does not state facts sufficient to entitle accuser to relief. It is so indefinite, uncertain, ambiguous, unintelligible and vague that I cannot identify the transaction, contract or statute that created the liability so that I may prepare my defense.

RECEIVED IN CORRES
IRS - OSC -628

JUN 3 0 2003

OGDEN, UTAH

26 CFR §1.1-1(c), makes it clear that the Title 26, Subtitle A, graduated income tax is imposed upon "citizens" as defined in the following term:

"*Who is a citizen:* Every person born or naturalized in the United States *and subject to its jurisdiction* is a citizen."

*3A Am Jur 1420, Aliens and Citizens:* "A Person is born *subject to the jurisdiction of the United States,* [i.e. subject to its jurisdiction] for purposes of acquiring citizenship at birth, if this birth occurs in *a territory over which the United States is sovereign.* ."

"The *persons* declared to be citizens are: "*All persons, born or naturalized in the United States* and *subject to the jurisdiction thereof.*" The evident meaning of these last words is, not merely subject in some respect or degree to the jurisdiction of the United States, but *completely subject*" - *Elk v. Wilkins* 112 US 94,101,102 (1884)

I was born in one of the several states of these united States of America, under the Constitution and the organic law. I was not born in a *territory* over which the United States is sovereign, and am not a "citizen *subject to its jurisdiction.*"

*Black's 6th Law Dictionary - District of Columbia...* Legally it is neither a state nor a territory, but is made subject by the Constitution, to the exclusive jurisdiction of the United States."

*Black's 6th Law Dictionary, Territory:* "A portion of the United States, not within the limits of any state, which has not yet been admitted as a state of the Union, but is organized with a separate legislature, and with executive and judicial officers appointed by the President. See trust territory."

*Ballentine's Law Dictionary, Territory.* 1. "A geographical region over which a nation exercises sovereignty, but whose inhabitants do not enjoy political, social or legal parity with the inhabitants of other regions which are constitutional components of the nation. With respect to the United States, for example, Guam or the Virgins Islands as opposed to New York, California or Texas."

*Bouvier's Law Dictionary; Territory:* "A part of the country separated from the rest and subject to a *particular* jurisdiction. A portion of the country subject to, and belonging to the United States which is *not within the boundary of any state* or the District of Columbia. 262 U.S. 122; 3 Wheat 336, 390 ...The United States has supreme sovereignty *over a territory,* [i.e. Puerto Rico, Guam, Virgins Islands] and congress has full and complete legislative authority over its people and government 136 U.S. 1. *In Relation to the United States:* "...it is held as a well-established doctrine that the territories of the United States are entirely subject to the legislative authority of congress. They are *not organized under the constitution,* nor subject to its complex distribution of powers of government as the organic law, but are a creation, exclusively of the legislative department, and subject to its [Congress'] supervision and control.." 96 Fed. Rep. 456, citing 16 How. 1 Kent, 243, 359,1 Pet. 511164; 101 U.S. 129; 114 U.S. 15; 136 U.S. 1; 143 U.S. 135; 141 U.S. 174; 152 U.S. 1.

8.  I object to your accusation on the grounds that your agency has no jurisdiction over me because you have not defined what law you are operating under, making it impossible for me to determine the applicable remedy or prepare a proper defense. I do not know whether you are utilizing admiralty law, the laws of commerce, civil law, the common law, equity or are merely attempting to take my property against the law.

9.  I object to your accusation on the grounds that your agency lacks jurisdiction over me because it is not within the power of the United States (or a State, pursuant to the federal conformity clause), or any agency or instrumentality thereof, to impose a mandatory graduated, non-apportioned income tax on property belonging to citizens of these United States, including but not limited to, compensation for labor in the private sector. Your agency is further prohibited from imposing a mandatory tax upon the free exercise of any right guaranteed by the Constitution. The apportionment clauses of the Constitution have never been repealed.

Page 3 of 15

**Article 1: Section 2, Clause 3:** "Representatives and direct taxes shall be **apportioned** among the several states which may be included within this Union, **according to their respective numbers...**"
**Article I, Section 9, Clause 4:** "No Capitation**, or other direct tax, shall be laid, unless in proportion to the census or enumeration herein before directed to be taken."

*Apportion: "To distribute or allocate in equal proportions. For example, if the government needed $1 Billion and there were 200 Million people, an apportioned tax would equate to $5 per person.
**Capitation Tax means. "a tax imposed upon a person at a fixed rate, regardless of the taxpayer's ability to pay. occupation, assets, or income."

**The graduated income tax is not an apportioned tax and, therefore, cannot be imposed upon property.**

"Direct taxes bear immediately upon persons, upon possessions and enjoyments of rights..."
Knowlton v. Moore, 178 U.S. 41.

"The Sixteenth Amendment must be construed in connection with the taxing clauses of the original Constitution and the effect attributed to them before the Amendment was adopted."
Eisner v. Macomber  252 U.S. 189, at 205 (1920)

**The reason that the income tax has not been ruled to be unconstitutional is because it is not imposed, by law, upon the compensation for labor or upon the right to labor, of the Citizens of the several states of these united States. It is only imposed upon corporate gains and profits severed from capital (which is the true meaning of the word, income) and upon the exercise of government granted privileges.**

9. **I object to your accusations that I have a tax liability on the ground that I earned no income which could create a basis for a tax liability by your agency.**

Income, as defined by the supreme Court is, "gains and profits as a result of corporate activity and profit gained through the sale or conversion of capital assets." Stanton v. Baltic Mining Co. 240 U.S. 103, Stratton's Independence v. Howbert 231 U.S. 399. Doyle v. Mitchell Bros. Co. 247 U.S. 179, Eisner v. Macomber 252 U.S. 189, Evans v. Gore 253 U.S. 245, Merchants Loan & Trust Co. v. Smietanka 225 U.S. 509.

"...income tax statutes apply only to state created creatures known as Corporations no matter whether state, local or federal." Colonial Pipeline Co. v. Traigle, 421 US 100 (1975)

U.S.C.A Amed. 16 note 62.
"The word "income" as used in this [16th] amendment does not include a stock dividend. since such a dividend is capital and not income and can be taxed only if the tax is apportioned among the several states in accordance with Art. 1 Sec. 2, cl.3 and Art. 1, Sec. 9, cl. 4 of the Constitution." Eisner v. Macomber, N.Y. 1929, 252 U.S. 189, Walsh v. Brewster, Conn. 1921,255 U.S. 536.

Black's 3rd Law Dictionary: Income. Income is the gain which proceeds from labor, business or property;... Trefry v. Putnam. 116 N.E. "Income is the gain derived" from capital, from labor or from both combined.: something of exchangeable value, proceeding from the property, severed from the capital...and drawn by the recipient for his separate use..." Eisner v. Macomber 40 S. Ct 189,252 U.S. 189, L. Ed. 521, 9 A.L.R. 1570**. Goodrich v. Edwards. 41 S. Ct. 390,255 U.S. 527, 65 L. Ed 758. Income is something which has grown out of capital, leaving the capital unimpaired and intact. Cavit v. Irwin (D.C.) 275 F. 643, 645***. "Income is used—in law in contradistinction [contrast, opposition] to "capital." 21 C.J. 397*** income, [gains and profits] ..is something produced by capital without impairing such capital, [property being left intact, and nothing can be called income which takes away from the property itself. - Sergent Land Co. v. Von Baumbach (D.C.), 207 F. 423, 430. Black's 4th Law Dictionary: "The gain derived from capital, from labor, or both combined. Including profit from the sale or conversion of capital; income is not a gain accruing [being added to] to capital or a growth in the value of the investment, but is a gain, a profit, proceeding from the property, severed from the capital, however invested and coming in, being derived, that is, received or drawn by the recipient for his separate use, benefit or disposal."
Goodrich V. Edwards. 41 S. CT. 390,255 U.S. 527, 65 L.Ed. 758.

Page 4 of 15

* Derived: "obtained from a parent substance or source.." - Webster's Dictionary

U.S.C.A Amend 16, Note 64. "The meaning of 'income'—in this Amendment [16th] is the gain derived from or through the sale or conversion of capital assets: from labor or from both combined; not a gain accruing to capital, or growth or increment of value in the investment, but a gain, a profit, something of exchangeable value, proceeding from the property, severed from the capital, however employed and coming in, being 'derived,' that is, received or drawn by the recipient for his separate use." Tafty v. Bowers, N.Y. 1929,49 S.Ct 199, 278 U.S. 470, 73 L.Ed. 460.

Eisner vs. Macomber, 252 U.S. 189. "...It becomes essential to distinguish between what is and what is not 'income,' according to truth and substance, without regard to form. Congress cannot, by any definition it may adopt, conclude the matter, since it cannot by legislation, alter the Constitution from which it derives its power and within whose limitations alone, that power can be lawfully exercised...[Income] Derived-from-capital-the-gain-derived-from-capital, etc. Here we have the essential matter—not gain accruing to capital, not a growth or increment of value in the investment; but a gain, a profit, something of exchangeable value...severed from the capital however invested or employed, and coming in, being "derived," that is received or drawn by the recipient for his separate use."

"Under the Internal Revenue Act of 1954 [and all other Internal Revenue Acts] if there is no gain, there is no income." - 26 U.S.C.A '54, Sec. 61(a).

U.S. v. Ballard, 575 F. 2D 400 (1976), Oliver v. Halstead, 196 VA 992; 86 S.E. Rap. 2D 858: "There is a clear distinction between 'profit' and 'wages' or compensation for labor. Compensation for labor cannot be regarded as profit within the meaning of the law...The word 'profit is a different thing altogether from mere compensation for labor."

"Income within the meaning of the Sixteenth Amendment and Revenue Act, means 'gains'...and in such connection 'gain' means profit...proceeding from property, severed from capital, however invested or employed and coming in, received or drawn by the taxpayer, for his separate use, benefit and disposal. Income is not a wage or compensation for any type of labor."
Staples v. U.S., 21 F. Supp. 737, 7-^0 (10).

"The claim that salaries, wages and compensation for personal services are to be taxed as an entirety and therefore must be returned by the individual who performed the services which produced the gain is without support either in the language of the Act or in the decisions of the courts construing it and is directly opposed to provisions of the Act and to regulations of the Treasury Department which either prescribe or permit that compensation for personal services be not taxed as an entirety and not be returned by the individual performing the services. It is to be noted that by the language of the Act, it is not "salaries, wages or compensation for personal services that are to be included in gross income." That which is to be included is "gains, profits, and income derived from salaries, wages or compensation for personal service." Lucas V. Earl, 281 U.S. 111 (1930)

One does not derive income by rendering services and charging for them."
Edwards v. Keith, 231 Fed Rep 1

The following rulings are quoted from Conner v. United States, 303 F. Supp. 1187 (1969) pg. 1191:
"[1] ...it [income] is not synonymous with receipts." 47 C.J.S. IRC §98, p. 226."
"[2]    Whatever may constitute income, therefore, must have the essential feature of gain to the recipient. This was true when the 16th amendment became effective, it was true at the time of the decision in Eisner v. MacComber (supra), it was true under section 22(a) of the Internal Revenue Code of 1939, and it is true under section 61(a) of the Internal Revenue Code of 1954. If there is no gain, there is no income.
...Congress taxed income [gains] not compensation."

Merchant's Loan and Trust Company v. Smietanka, 255 U.S. 516, 519 (1921) "There would seem to be no room to doubt that the word [income] must be given the same meaning in all income tax acts of Congress that was given to it in the Corporation Excise Tax Act and what that meaning is has now become definitely settled by decisions of the Court.

"Whatever difficulty there may be about a precise and scientific definition of 'income,' it imports...the idea of gain or increase arising from corporate activities...We must reject...the broad contention submitted on behalf of the Government that all receipts, everything that comes in is income within the proper definition of gross income..." Doyle v. Mitchell, 247 U.S. 179 (1921)

Page 5 of 15

26 CFR §1 6012-l(e)(6). **Form of Return.** - **Form 1040** or state tax form is prescribed for general use in making the return required under this paragraph. 26 CFR §1.6072-1(a) **Time for filing of Returns of individuals...(a)** in general ...returns of income required under section(s) 6012 of individuals...**having an office or place of business in the United States**...shall be filed on or before the fifteenth day of the fourth month after the close of the taxable year. This makes it clear that the 1040 Form or state tax Form is used for calculating **gains and profits** for individuals doing business in the United States (26 CFR 1.91 l-2(g). The term United States when used in a geographical sense includes any **territory under the sovereignty of the United States**. Because the Constitutional Rules of Apportionment are not applicable in such territories (as previously evidenced), it is not necessary that the business be a privileged corporation]. The 1040 Form or state tax Form is also utilized by officers and employees of the Government, exercising an "official privilege" by such *public* employment. The tax is then measured by the income obtained in the exercise of such privilege.

**Bouvier's Law Dictionary, Baldwin's Student Edition, 1946; Income:** "Income under Corporation Tax of 1909: "Income employed in *natural* sense, as importing something *distinct* profit principal or capital, and conveying idea of gain or increase from corporate activities.

The intent of Congress regarding the meaning of the word income as used in the 16th Amendment, is obvious in the following excerpt from the **Congressional Record of 1913**, pgs. 3843, 3844, by Senator Albert B. Cummings:

"*I want to make a lawyers argument that the authority of the Congress of the United States with regard to this subject [income], is not unlimited... Our authority is to levy taxes on income. I assume that every lawyer will agree with me that we can not legislatively interpret the meaning of the word. 'income.' That is purely a judicial matter... The word income had and has a well defined meaning before the (16th) Amendment to the Constitution was adopted. It has been defined in all of the courts of this country. If we [Congress] could call it [income] anything that we pleased, we could obliterate all the distinction between income and principal. The Congress cannot affect the meaning of the word 'income' by any legislation, whatsoever ...Obviously, the people of this country did not intend to give Congress the power to levy a direct tax on all of the property in this country without apportionment.*"

" ...The true function of the words 'gains' and 'profits' is to *limit the meaning* of the word 'income' and to show its use *only* in the sense of *receipts which constituted an accretion to capital.* So the function of the word 'income' should be to limit the meaning of the words 'gains' and 'profits.' "
            **Southern Pacific v. Lowe**, Federal Reporter Vol. 238 pg. 850.

Capital, whether originally coming from compensation, wages, or any other form, may be a *source* of gains or profits constituting income. However, such original capital is not *income* in and of itself, and cannot be taxed as income. It is only the resulting gain or profit severed from capital that is *income*. Then it is only taxable if such income is earned within the jurisdiction of the taxing authority, after applicable deductions.

**Earnings:** That which is earned; money earned; the price of services performed; the reward of labor; money or the fruits of proper skill, experience, industry; ...derived without the aid of capital." merited by labor, services, or performances." Earnings are not income.
            **Saltzman v. City of Council Bluffs**, 214 Iowa, 1033,243 N.W. 161, 162.

10.    I object to your accusations that I have a tax liability on the grounds that your agency has no jurisdiction over me because it has been well settled by the supreme court that the income tax is an **excise** tax, which is synonymous with a privilege tax. I am exercising no corporate privileges, official privileges or any other privileges upon which such an income tax could be mandatorily imposed.

"*The conclusion reached in the Pollock case—recognized the fact that taxation on income was, in its nature, an excise, entitled to be enforced as such.*"
            **Brushaber v Union Pacific Railroad Co.** 240 U.S 1,16-17

71 Am Jur 2nd, under State and Local Taxation: Excise: "In its modern sense, an excise tax is any tax which does not fall within the classification of a poll tax" or a property tax, and which *embraces every form of burden not laid directly upon persons or property.* Idaho Gold Dredging Co. v. Balderston, 58 Idaho 662; Dooley v. Detroit 370 Mich 194, Foster & C. Co. v. Graham, 154 Tenn 659.

In summary, this court is stating that there are only two types of taxes in the United States. A tax must either be a direct tax, in which case it is subject to the rules of apportionment, or a privilege tax. A privilege tax can never be imposed upon the exercise of a right under the Constitution."

"The term "excise tax" is synonymous with "privilege tax," and the two have been used interchangeably." Foster & C. Co. v. Graham, 154 Tenn 412, 285 SW 570, 47 ALR 971. Whether a tax is characterized in the statute imposing it as a privilege tax, or an excise tax, is merely a choice of synonymous words, for an excise tax is a privilege tax. - Bank of Commerce & T. Co. v. Senter, 149 Tenn 569,260 SW 144. American Airways v. Wallace, 57 F.2d, 877, 880.

An excise is.. a duty levied upon licenses to pursue certain trades or deal in certain commodities, upon official privileges, [i.e. a government job] etc. Black v. State, 113 Wis 205, 89 NW 522.

"The obligation to pay an excise is based upon the voluntary action of the person taxed in performing the act, enjoying the privilege, or engaging in the occupation which is the subject of the excise, and the element of absolute and unavoidable demand is lacking." (i.e. If you don't want to pay the tax, simply don't exercise the privilege.) People ex rel. Atty Gen. v. Naglee, 1 Cal 232;  Bank of Commerce & T. Co. v. Senter, 149 Tenn. 441, 361 SW 144.

The income tax is not a tax on actual income, but a tax imposed upon a privilege measured by the gain (income) that results from the exercise of that privilege.

"EXCISES: "Excises are taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain [regulated] occupations and upon corporate privileges, the requirement to pay such taxes involves the exercise of privilege....Conceding the power of Congress to tax the business activities of private corporations...the tax may be measured by some standard...It is, therefore, well settled by the decisions of this court that when the sovereign authority has exercised the right to tax, a legitimate subject of taxation as an exercise of a franchise or privilege, it is no objection that the measure of taxation is found in the income..." Flint v. Stone Tracy Co., 220 U.S. 107, at pg 154, 165

"The individual, unlike the corporation, cannot be taxed for the mere privilege of existing. The corporation is an artificial entity which owes its existence and charter power to the state, but the individual's right to live and own property are natural rights for the enjoyment of which an excise cannot be imposed."  Redfield v. Fisher, 292 Oregon 814,817

Franchise Tax.   A tax on the franchise of a corporation, on the right and privilege of carrying on business in the character of a corporation, for the purposes for which it was created, and in the conditions which surround it. Though the value of the franchise, for the purposes of taxation, may be measured by the amount of business done, or the amount of earnings or dividends, or by the total value of the capital or stock of the corporation in excess of its tangible assets, a franchise tax is not a tax on either property, capital, stock, earnings or dividends.

"Legislature... cannot name something to be a taxable privilege unless it is first a privilege." [Taxation West Key 53]... The Right to receive income or earnings is a right belonging to every person and realization and receipt of income is, therefore, not a "privilege that can be taxed." [Taxation West Key 933] - Jack Cole Company v. MacFarland, 337 S.W. 2d 453, Tenn.

11.   I object to your accusations on the grounds that you have no jurisdiction over me because this action was not properly authorized. This action is not made in accordance with, 55 FR 47633, Nov. 14, 1990, 301.7401-1 and 27 CFR 70.191.

Pursuant to §301.7401-1: "Authorization, -(a) "No Civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture shall be commenced unless, the Commissioner or the Director, Alcohol, Tobacco and Firearms Division...or the Chief Counsel for the Internal Revenue Service or his delegate authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced."

**93 F.R. 47833.27** CFR 70.191 Authorization:

(a) *In general* · No civil action for the collection or recovery of taxes, or any fine, penalty, or forfeiture (with respect to *the provisions of 26 U.S.C. enforced and administered by the Bureau*) shall be commenced unless the *Director, Bureau of Alcohol, Tobacco and Firearms*, or designated delegate, or the Chief Counsel *for the Bureau*, or designated delegate, directs that the action be commenced.

12.  I object to your demand on the grounds that you have no jurisdiction because no valid, signed and attested *Summary Record of Assessment* (Form 23C) or Form 4340 evidencing a tax liability has been recorded in the Office of the Secretary, in accordance with the law. Therefore, there is no valid tax liability upon which to base this demand. If such an Assessment does exist, this is a demand a copy for such copies.

"*Absent an assessment, there is no debt,* as the debt only attaches when the assessment is properly made. **Bull v. U.S.,** 914 F.2d 245, and for a tax liability to be duly collectible, it must have been properly assessed. In **Re Western Trading Co.,** 340 F. Supp. 1130 (D. Nev. 1972); **Estate of Goetz v. U.S.,** 286 F.Supp. 128, at 131 9d.Mo. (1968). "These statutory procedures must be followed in the process of administratively collecting taxes." **U.S. v Berman** 825 F.2d 1053, 1055 (CA 6 1987).

It is well established in law that in order to have a valid sale, there must be a valid seizure; and to have a valid seizure, there must be a valid lien; and to have a valid lien—**there must be a signed 23C** (Summary Record of Assessment) and a **Form 4340** (Certificate of Assessments and Payments) *before there is a valid assessment.* **Coolin v. U.S.,** 962 F.2d 403; **Fulmer v. U.S.,** 93-U.S. Tax case. P60, 657; **U.S. v. McCallum,** 970 F.2d 66; **Brewer v. U.S.,** 746 F.Supp. 309; **Geiselman v. U.S.,** 961 F.2d 1; **Tweedy v. U.S.,** 74 AFTR 2d 5003; **Fisher v. U.S.,** 860 F.Supp. 680. A proper assessment must also have IRS **Form 2866, "Certificate of Transcript,"** an IRS form 4340 "Certificate of Assessment" (IRS document 7130 at page 33), and must come from the service center, and the procedural assessment itself must be pursuant to IRM-H§1272 and 46 (13).

13.  I object to your demand on the grounds that it does not constitute a valid *Notice of Deficiency*, requiring a *bona fide*, authentic, hand-written signature, attested to made under lawful authority under the penalties of perjury, has not been sent to me **via Registered or Certified mailing,** as required by Regulations.

IR Manual 512 (1-5-83)                                                      8(24)50

"Preliminary Notices of Deficiency Procedure

"...(5)  The [Deficiency] Notice is signed **in pen and ink** on behalf of the Commissioner by the approving Appeals Officer... Any copies of the statutory notice letter which are used for the originals or duplicate originals should have a handwritten signature and not a facsimile or reproduced signature..."

"An assessment is illegal and void if no required [valid] deficiency notice is sent to the taxpayer." - **United States v Williams** (1958 DCNY) 161 F Supp 158. 58-1 USTC 9213. (20 Fed Proc, L Ed 46:440.)

**Page 8 of 15**

# Affidavit Challenging Jurisdiction

Please be advised that your information regarding my implied tax liabilities is in error. My filing status should be MFR-01 - I am *not required to make or file a Form 1040 or state tax return.*

I, the undersigned affiant, Jay C. McKean, Sui Juris, hereby attest that the following is true, correct and complete:

14.    Pursuant to my IMF, my filing status should be, MFR-01 — I am "not required to make or file a form 1040 return."

15.    By reason of 26 USC Sec. 6071, and information contained herein, no return has been due to be filed. If any person has filed any income tax return for this period, on behalf of affiant, such return has been illegally and unlawfully filed and is without force or effect.

16.    I have personal knowledge of each of the facts as stated herein.

17.    I am of lawful age and am competent to make this Affidavit. I am not a ward of, under the guardianship of, or under the conservatorship of, another person or entity. This sworn affidavit is made as a matter of public record, in my own sovereign right, in Sui Juris capacity, propria persona.

18.    I am domiciled and living in Carbon County, Montana, where I have occupied such status since 1966.

19.    I am engaged in a private occupation of common right, in the private sector in Montana.

20.    I have never lived, worked, received income, in or from any source within, or effectively connected to; the District of Columbia, Puerto Rico, the U.S. Virgin Islands, Guam, America Samoa, or any other territory, federal enclave or instrumentality within or belonging to, the United States, having its origin and jurisdiction from Article I, §8, Cl. 17, or Article IV, §2, Cl. 3 of the Constitution of the United States, and I have no "minimum contacts" therein.

21.    I am not an officer, employee, elected or appointed official of the United States, the District of Columbia, or of any agency or instrumentality of the United States or the District of Columbia, or of a State or Territory, or of any agency, instrumentality or political subdivision thereof.

22.    I have not received or generated any social security wages or income under the Public Salary Act of 1939 (76th Congress, 1st Session, Chap. 59, pgs 574,575) or the Buck Act, Public Law 817-76th Congress, 4 USC Sec. 101 through 113.

23.    I am a natural born unenfranchised Citizen, under the Constitution and protected by the organic law.

24.    I am not engaged in any trade of business, as such term is defined in 26 U.S.C. or 26 CFR.

25. I am not engaged in any Revenue Taxable Activities, including, but not limited to the manufacture or distribution of alcohol, tobacco, firearms, wagering, narcotics or any form of imports or exports.

26. I am not a member of the armed forces.

27. I am not a seaman.

28. I am not an incompetent Indian.

29. I am not an officer of a corporation or an employer who is under a duty to withhold.

30. I am not a *citizen subject to its jurisdiction*, upon whom Congress has the authority to impose a graduated income tax, as defined in 26 CFR 1.1. (c)

31. I earned no income, gains and/or profits as such word is lawfully defined, for the years in question.

32. I am exercising no corporate privileges, official privileges or other privileges upon which an income tax could mandatorily be imposed.

33. I am not involved in any form of interstate commerce.

34. I do not have an office or place of business within the United States as such term is defined in 26 USC.

**In summary:**

I incurred no liability for income taxes imposed under Subtitle A of Title 26, the Internal Revenue Code, in the preceding taxable years.

I anticipate that I will incur no liability for the income tax imposed under Subtitle A for the current taxable year.

I am not required, by law, to file a Form 1040 or state tax Form.

Pursuant to federal conformity clauses, filing requirements are the same for both 1040 federal and State income tax forms. Therefore, I am also not required to file a State Income Tax Form.

I declare under penalty of perjury under the Laws of these united States of America that, to the best of my knowledge and belief, all of the foregoing is true and correct

Sincerely,

*Jay C. McKean*

Signed: Jay C. McKean

Page 10 of 15

## Demand for an Impartial Adjudicatory Special Hearing of Record for the purpose of Defining the Rights of the Parties and Substantiating Purported In Personam and Subject Matter Jurisdiction over Affiant

This is a Notice of Defense in the form of an Objection to the assumed jurisdiction of your agency over me. If you do not intend to immediately quash the attached presentment, this is a Demand for a fair and impartial Adjudicative Hearing of record (Not an Audit or an Investigatory Hearing), pursuant to 26CFR 601.105 and 601.106 prior to any further collection action. This hearing will constitute a special and not a general appearance by Affiant purely for the purpose of substantiating jurisdiction by:

(1)  Providing Affiant Administrative Due Process;

(2)  Providing Affiant opportunity to confront witnesses;

(3)  Providing Affiant with DISCOVERY; and
     (Please have all answers to attached Administrative Interrogatories, available to Affiant at such Hearing.)

(4)  Providing Affiant with an opportunity to review evidence that agency relied upon in making the determination that Affiant was within its jurisdiction.

NOTICE OF INTENT: By utilizing an Administrative Remedy, I am not acquiescing to your jurisdiction, to any defects at law, or to any unlawful actions taken by your agency. Such administrative hearings are rarely impartial and typically constitute a deprivation of a Citizen's right to a separation of powers protection, right to a trial by jury, right to confront witnesses, and the right to be heard on the merits of the case by a judge proficient in the law. I am merely attempting to amicably resolve this matter, prior to resorting an already clogged judicial court system. I intend to appeal any adversary ruling judicially, in a court of general and/or appellate jurisdiction, such court having been delegated powers to rule on matters of law and equity.

## PRESERVATION OF ALL RIGHTS AT ALL TIMES

26 U.S.C. 7804 (a) APPLICATION (b) PRESERVATION OF EXISTING RIGHTS AND REMEDIES.- "Nothing in... [Reorganization Plan 26 or Title 26] shall be considered to impair any right or remedy, including trial by Jury, [or any other right] to recover any tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority, or any sum alleged to have been excessive or in any manner wrongfully collected under internal revenue laws or state taxing laws..."

I hereby preserve any and all of my rights under the Constitution and the laws of common law and equity. I will not voluntarily permit anyone to usurp my rights, nor am I designating anyone to be a binding arbitrator in any disputes of my Rights or equity. If your agency has a Constitutionally valid claim, you must adhere to Due Process of Law according to the Constitution, and I will remain an Involuntary Litigant in any such action.

• The rights of Respondent, as recognized in the Declaration of Independence are unalienable.

   "We hold these truths to be self evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are life, liberty and the pursuit of happiness." Declaration of Independence ¶2

• The right of Respondent to be secure in his person, house, papers, and effects is recognized and so stated in the 4th Amendment to the Bill of Rights of the Constitution of these united States of America.

   "The right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, Supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Page 11 of 15

- The right of Respondent to be protected against ineffectual is recognized and so stated in the 5th Amendment to the Bill of Rights of the Constitution of these united States of America; in pertinent part: *"no person shall be deprived of life, liberty, or property without due process of law."*

- The rights of Respondent to a speedy, public trial by an impartial jury, to be informed of the nature and cause of the accusation; to be confronted by witnesses against me, to have compulsory process for obtaining witnesses in my defense, and to have assistance of counsel, are recognized and so stated in the 6th Amendment to the Bill of Rights of the Constitution of these united States of America.

- The right of demandant to a trial by jury in any controversy exceeding $20, is recognized and preserved in the 7th Amendment to the Bill of Rights of the Constitution of these united States.

I object to your remedy which is to pay the disputed tax first and then sue for a refund. This would result in a material violation affecting my substantive rights, depriving me of the possessory interest of property belonging to me, prior to the due process of the law, and prior issuance of a warrant and probable cause affidavit. Further, it would bring my property into a jurisdiction foreign to me where your rules allow you to proceed against my property *in rem*, disregarding my property rights and giving you the judicial advantage of possession.

Any attempt to convert this Hearing into an Investigative Hearing or Audit before you substantiate your jurisdiction or a refusal to respond to this demand within 30 days, will constitute a default, *resjudicata*, by your agency.

**Pending this Hearing a stay of execution of collection is in effect.**

# Administrative Interrogatories

The attached Administrative Interrogatories are technical questions which need to be answered for the purpose of substantiating agency's claim of an income tax liability.

This information is necessary for Affiant to prepare a defense. Please have the below requested documents and answers to the following questions available at Affiant's hearing.

(1) Please provide the capacity of your agency or department, whether it be corporate, public, or private, and the State wherein such entity was originally created and the location of your current headquarters.

(2) Please provide the source of authority for your agency's or department's creation, whether it be pursuant to the Constitution or an Act of Legislation, and the title, nature, and date of such Act. Further provide all laws, regulations, federal register citations, and delegations of authority, from such source.

(3) As you are merely an agency, please provide for me the name(s) of the principal(s) holding the controlling interest in your agency and the full legal names and addresses of the chief executive officers(s) of such principal(s), for the purpose of effectuating proper service to the proper parties.

(4) Please provide the Statute, Implementing Regulation and Federal Register citation, which promulgated a requirement to file a 1040 or state tax Form into law.

(5) Please provide a copy of a valid certified Summary of Assessment (23C) applicable to me signed under the penalty of perjury that it is true and correct as well as evidence that it was lawfully filed.

(6) Please provide a copy of an original valid Deficiency Notice signed in ink with a de jure, bona fide authentic signature as required by your procedures and the law.

(7) Please provide a copy of all evidence and information upon which you relied to make the determination that I was within the jurisdiction of your agency and had a tax liability.

(8) In order that I may plan a defense on the grounds that your entity lacks jurisdiction over my person and the subject matter, please inform me of the law you are operating under, i.e. admiralty, equity, common law, commerce, contract, international law, civil law, etc.

(9) If you believe that I am involved in any Revenue Taxable Activity or a Regulated Licensed activity, what is the nature of such activity?

(10) If you believe I am operating a business or have an office in the United States, please provide the name of such business and its locality.

(11) Please provide the full legal names, Social Security numbers, and Badge Numbers of the agent and his/her superior who has been assigned this case, as well as copies of such employees' *oaths of office* and *bonds*.

(12) Please provide the complete and lawful definition of the word "income," that you are relying upon in determining that I have an "income tax" liability.

## NOTICE

This Affidavit and all attached documents have been made a part of the Public Record and will be used for the purpose of establishing an Administrative Record which will be provided as evidence in any Judicial proceedings at law or equity regarding this case. All of these documents must be maintained in my File. Failure to respond to this Notice within 30 days will mean you have quashed this erroneous demand. The doctrine of *estoppel by acquiescence* and *resjudicata* will prevail, barring any future proceedings against me, and any and all property belonging to me.

Page 13 of 15

## Demand to Cease and Desist Collection Activities Prior to Validation of Purported Debt

Pursuant to the **Fair Debt Collection Practices Act**, 15 U.S.C.A §§1601, 1692 et al, this constitutes timely written notice that, I decline to pay the attached erroneous purported debt which is unsigned and unattested and which I discharge and cancel in its entirety, without dishonor, on the grounds of breach, false representation and fraud.

15 U.S.C. §1692 (e) States: A false, deceptive, and misleading representation in connection with the collection of any debt, includes the false representation of the character or legal status of any debt and further makes a threat to take any action that cannot legally be taken a deceptive practice.

Such Notice omits information which should have been disclosed, such as vital citations disclosing the agency's jurisdictional and statutory authority. Said Notice further contains false, deceptive and misleading representations and allegations, intended to intentionally pervert the truth for the purpose of inducing me, in reliance upon such, to part with property belonging to me and to surrender certain substantive legal and Constitutional rights. To act upon this Notice would divest me of my property and my prerogative rights, resulting in legal injury to me.

Pursuant to 15 US C 1692g (4), **Validation of Debts:** If you have evidence to validate your claim that the attached presentment does not constitute fraudulent misrepresentation and that I owe this alleged disputed debt, this is a demand that, within 30 days, you provide such validation and supporting evidence to substantiate your claim. Until the requirements of the **Fair Debt Collection Practices Act** have been met and your claim is validated, you have no jurisdiction to continue any collection activities.

This is constructive notice that, absent the validation of your claim within 30 days, you must cease and desist any and all collection activity and are prohibited from contacting me through the mail, by telephone, in person, at my home, or at my work. You are further prohibited from contacting my employer, my bank, or any other third party. Each and every attempted contact in violation of this Act will constitute harassment and defamation of character and will subject your agency and/or board and any and all agents in his/her/their individual capacities, who take part in such harassment and defamation, to a liability for actual damages as well as statutory damages of up to $1,000 for each and every violation and a further liability for legal fees to be paid to any counsel which I may retain. Further, absent such validation of your claim, you are prohibited from filing any notice of lien and/or levy and are also barred from reporting any derogatory credit information to any Credit Reporting Agency regarding this disputed purported debt.

Further, pursuant to the **Fair Debt Collection Practices Act**, 15 USC 1692g(a), as you are merely an agency or board acting on someone else's behalf, this is a demand that you provide the name of the original principal or holder in due course, for whom you are attempting to collect this debt.

I hereby attest that, to the best of my knowledge and belief, the above information is true and correct.

*Jay C. McKean*

Signed: Jay C. McKean

**Page 14 of 15**

## CERTIFICATE OF ACKNOWLEDGEMENT

MonTANA State )
                        ) SS
CARBON         County )

I hereby certify that on this 12 day of JUNe, 2003,

JAy C. McKeAn

personally appeared to me (or proved to me on the basis of satisfactory evidence), to be the citizen(s) whose name(s) is/are subscribed to within the instrument and acknowledged to me that he/she/they executed the same in his/her/their individual capacity(ies), and that his/her/their signature(s) on the instrument are the said person(s), or the entity upon behalf of which the citizen(s) acted, executed the instrument.

NOTARY SEAL

H Lynn Morgan  6-12-03
_____
Notary's Signature         Date
H.Lynn MoRGAn
My commission expires  8-10-0006.
ReSiDiNG AT  Red Lodge

---

## PROOF OF SERVICE

I do hereby declare under penalty of perjury that I have served the party(s) named hereon with a true copy of the "PETITION OF PROTEST AND NOTICE OF DEFENSE; DEMAND FOR ADJUDICATORY SPECIAL REVIEW HEARING OF RECORD, IF DENIED; AND DEMAND TO CEASE AND DESIST COLLECTION ACTIVITIES PRIOR TO VALIDATION OF PURPORTED DEBT." by Registered Mail with Return Receipt Requested, on this 12 day of June, 2003.

Jay C. McKean
_____
Jay C. McKean

Page 15 of 15



**IRS** Department of the Treasury
Internal Revenue Service

OGDEN, UT  84201



7112 7667 8555 3619 1231

' JAY C & FAYE MCKEAN
RT 1 BOX 2831
ROBERTS, MT  59070-9618319

To ensure both spouses receive this notice, we've sent an
individual copy to each of you. Each copy contains the
same information as it relates to your joint account. Any
balance owed or due should be paid only once. If a refund
is shown we will issue the refund only once.

FOLD HERE                    FOLD HERE                    FOLD HERE
-----------------------------------------------------------------

Internal Revenue Service
INTERNAL REVNEUE SERVICE
OGDEN SERVICE CENTER
OGDEN, UT 84201-0040

2240

June 12, 2003                    REGISTERED MAIL RECEIPT #: 7/mr2 3/50 0003 9491

DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE     RECEIVED IN CORRES
REGIONAL DIRECTOR OF COMPLIANCE                              IRS - OSC -826
OGDEN, UTAH 84291
                                                            JUN 1 8 2003
Jay C. McKean
Rt. 1, Box 2031                                             OGDEN, UTAH
Roberts, Montana  59070

Re: Type Of Form:  1040    For Year Ended:  December 31, 2000    Amount Due:  $ 2,621.00
Unlawfully Assessed Amount:  $ 2,621.00    DISCHARGED FOR FRAUD.
Date Of Form:  June 4, 2003    Date Received:  June 6, 2003

# PETITION OF PROTEST AND NOTICE OF DEFENSE

## Verified Statement of facts upon which Petitioner Relied in Making Determination of Nontaxpayer Status

**NOTICE:** This Demand for an <u>Administrative Quash</u> is a protected special appearance pursuant to CCP 418.10(d).

I, Jay C. McKean, domiciled in Roberts, Carbon County, Montana, where I have maintained such status since 1966, am a natural born Citizen, engaged therein, in an occupation of common right pursuant to the 9th Amendment, and receiving no social security wages or income under the Public Salary Act of 1939, or any revision thereof, hereby, timely object to your accusation that I have incurred a purported tax liability, as contained in the attached form entitled, NOTICE OF DEFICIENCY [Letter 3219(SC/CG)] received by me on or about June 6, 2003, which I HEREBY QUASH AND DISCHARGE FOR FRAUD, in its entirety. This is a demand that this unlawful, unattested counterfeit presentment be quashed and the alleged Notice be immediately withdrawn, on the grounds of fraud and a lack of in personam and subject matter jurisdiction for causes contained herein.

1. This constitutes a general demurrer to your accusation in its entirety on the grounds that it is unsigned, unverified, and unsupported by a sworn affidavit, denying me the right to know and face my accuser and making such accusation merely hearsay and nonadmissable.  Your accusatory presentment further, lacks jurisdictional grounds and deprives me of my right to know the nature and the cause of this action.

   Further, pursuant to Fed. R Civil P.12(b), this constitutes a Motion to Dismiss for (1) lack of jurisdiction over my person, (2) improper venue, (3) insufficiency of process, (4) insufficiency of service of process and (5) failure to state a claim upon which relief can be granted.

2. I object to the form of the accusation on the grounds that it does not state facts sufficient to entitle accuser to relief.  It is so indefinite, uncertain, ambiguous, unintelligible and vague that I cannot identify the transaction, contract or statute that created the liability so that I may prepare my defense.

*Page 1 of 15*



3.  I object to the sufficiency of your demand on the grounds that your claim fails to provide any particular Statute, Code Section, and Implementing Regulation or Federal Register citation, defining the specific acts or omissions which I have committed or omitted, which would constitute an offense, and which have created this alleged liability or requirement.

> I present the following new matter to support my defense that;
> a)  Your agency has no jurisdiction over me.
> b)  I am not liable for the "income tax".
> c)  I am not "required" by law to file a Form 1040.

5.  I object to your accusations that I am a person liable for the income tax or that I am required by law to file a 1040 or state tax Form. These are erroneous and arbitrary conclusions, and are not supportable by material facts and are without substance in the law.

6.  I object to your accusations that I owe your agency money on the ground that you lack *in personam* jurisdiction over me, as I am not within the *class of persons* within the "State of the forum" of Title 26, Title 27, or the State Income Tax Code, making me non-resident therein.

> 5a)  I am a private Citizen of Montana, engaged in a private occupation of common right in such union state, as evidenced by the attached Affidavit Challenging Jurisdiction, which is incorporated herein.

7.  I object to your accusation that I owe your agency money on the grounds of a lack of *subject matter* jurisdiction over me and my property. Your agency has not been conferred an power over me and neither am I nor my property are within the territorial limits over which your sovereignty extends:

> *Bouvier's Law Dictionary; JURISDICTION: Jurisdiction must be either of the subject matter, which is acquired by exercising powers conferred by law over property within the territorial limits of the sovereignty, or of the person, which is acquired by actual service of process, or personal appearance of the defendant...Jurisdiction in a personal action cannot be obtained by service on a defendant outside of the jurisdiction; 26 U.S. 714. The courts of one state have no jurisdiction over persons of other states unless found within their territorial limits."*

Neither I, nor my property, are within the territorial limits over which your jurisdiction or sovereignty extends. Further, no law has conferred any power to you over me or over my property. You, therefore, lack the jurisdiction necessary to proceed.

RECEIVED IN CONGRES
IRS - OSC -626

JUN 1 8 2003

OGDEN, UTAH

> *"If a party's allegations of jurisdictional facts are challenged by an adversary in any appropriate manner, he or she must support them by competent proof."*
>
> Federal Procedures §2.455

Title 26, Subtitle A is a part of a private, *general* Code, created under the territorial legislative powers delegated to Congress in Art. I, §8 Cl. 17 and Art. 4, §3 Cl. 2. Such Code is applicable only to particular members of a certain class of persons. Such general class includes those living within the District of Columbia and/or territories, possessions and enclaves under the exclusive Jurisdiction of the United States and those instrumentalities effectively connected thereto, such as government agencies and employees thereof. You have not provided any evidence bringing me into this class of persons upon whom such Code would be mandatorily applicable.

26 CFR §1.1-1(c), makes it clear that the Title 26, Subtitle A, graduated income tax is imposed upon "citizens" as defined in the following term:

"*Who is a citizen:* Every person born or naturalized in the United States *and subject to its jurisdiction* is a citizen."

*3A Am. Jur 1420. Aliens and Citizens:* "A Person is born *subject to the jurisdiction of the United States.* [i.e. subject to its jurisdiction] for purposes of acquiring citizenship at birth, if this birth occurs in a *territory over which the United States is sovereign...*"

"The *persons* declared to be citizens are: "*All persons,* born or naturalized in the United States and *subject to the jurisdiction thereof."* The evident meaning of these last words is, not merely subject in some respect or degree to the jurisdiction of the United States, but *completely subject"* - *Elk v. Wilkins* 112 US 94,101,102 (1884)

I was born in one of the several states of these united States of America, under the Constitution and the organic law. I was not born in a *territory* over which the United States is sovereign, and am not a "*citizen subject to its jurisdiction."*

*Black's 6th Law Dictionary - District of Columbia...* Legally it is neither a state nor a territory, but is made subject by the Constitution, to the exclusive jurisdiction of the United States."

*Black's 6th Law Dictionary, Territory:* "A portion of the United States, not within the limits of any state, which has not yet been admitted as a state of the Union, but is organized with a separate legislature, and with executive and judicial officers appointed by the President. See trust territory.

*Ballentine's Law Dictionary, Territory.* 1. "A geographical region over which a nation exercises sovereignty, but whose inhabitants do not enjoy political, social or legal parity with the inhabitants of other regions which are constitutional components of the nation. With respect for the United States, for example, Guam or the Virgins Islands as opposed to New York, California or Texas."

*Bouvier's Law Dictionary:* Territory: "A part of the country seperated from the rest and subject to a *particular* jurisdiction. A portion of the country subject to, and belonging to the United States which is *not within the boundary of any state* or the District of Columbia. 262 U.S. 122, 3 Wheat 336, 390 ...The United States has supreme sovereignty *over a territory,* [i.e. Puerto Rico, Guam, Virgins Islands] and congress has full and complete legislative authority over its people and government 136 U.S. 1, *in Relation to the United States;* "...it is held as a well-established doctrine that the territories of the United States are entirely subject to the legislative authority of congress. They are *not organized under the constitution,* nor subject to its complex distribution of powers of government as the organic law, but are a creation, exclusively of the legislative department, and subject to its [Congress'] supervision and control..." 96 Fed. Rep. 456, citing 16 How. 1 Kent, 243, 359,1 Pet. 511164; 101 U.S. 129; 114 U.S. 15; 136 U.S. 1; 143 U.S. 135; 141 U.S. 174; 152 U.S. 1.

8.  I object to your accusation on the grounds that your agency has no jurisdiction over me because you have not defined what law you are operating under, making it impossible for me to determine the applicable remedy or prepare a proper defense. I do not know whether you are utilizing admiralty law, the laws of commerce, civil law, the common law, equity or are merely attempting to take my property against the law.

9.  I object to your accusation on the grounds that your agency lacks jurisdiction over me because it is not within the power of the United States (or a State, pursuant to the federal conformity clause), or any agency or instrumentality thereof, to impose a mandatory graduated, non-apportioned income tax on property belonging to citizens of these United States, including but not limited to, compensation for labor in the private sector. Your agency is further prohibited from imposing a mandatory tax upon the free exercise of any right guaranteed by the Constitution. The apportionment clauses of the Constitution have never been repealed.

RECEIVED IN COL
IRS - OSC -626

JUN 1 8 2003

OGDEN, UTAH

**Article 1: Section 2, Clause 3:** "Representatives and **direct taxes** shall be **apportioned**" among the several states which may be included within this Union, **according to their respective** numbers..."
**Article I, Section 9, Clause 4:** "No Capitation**, or **other direct tax**, shall be laid, unless in **proportion to the census or enumeration** herein before directed to be taken."

*Apportion: "To distribute or allocate in equal proportions. For example, if the government needed $1 Billion and there were 200 Million people, an apportioned tax would equate to $5 per person.
**Capitation Tax means: "a tax imposed upon a person at a fixed rate, regardless of the taxpayer's ability to pay, occupation, assets, or income."

The graduated income tax is not an apportioned tax and, therefore, cannot be imposed upon property.

"*Direct taxes bear immediately upon **persons**, upon **possessions** and **enjoyments of rights**..."
Knowlton v. Moore, 178 U.S. 41.

"*The Sixteenth Amendment must be construed in connection with the taxing clauses of the **original** Constitution and the effect attributed to them **before** the Amendment was adopted."
Eisner v. Macomber, 252 U.S. 189, at 205 (1920)

The reason that the income tax has not been ruled to be unconstitutional is because it is **not** imposed, by law, upon the compensation for labor or upon the right to labor, of the Citizens of the several states of these united States. It is only imposed upon corporate gains and profits **severed from** capital (which is the true meaning of the word, income) and upon the exercise of government granted privileges.

9. I object to your accusations that I have a tax liability on the ground that I earned no income which could create a basis for a tax liability by your agency.

**Income**, as defined by the supreme Court is, "**gains and profits as a result of corporate activity and profit gained through the sale or conversion of capital assets.**" Stanton v. Baltic Mining Co. 240 U.S. 103, Stratton's Independence v. Howbert 231 U.S. 399, Doyle v. Mitchell Bros. Co. 247 U.S. 179, Eisner v. Macomber 252 U.S. 189, Evans v. Gore 253 U.S. 245, Merchants Loan & Trust Co. v. Smietanka 225 U.S. 509.

"...Income tax statutes apply only to state created creatures known as Corporations no matter whether state, local or federal." Colonial Pipeline Co. v. Traigle, 421 US 100 (1975)

U.S.C.A Amed. 16 note 62.
"The word "income" as used in this [16th] amendment **does not include a stock dividend**, since such a dividend is **capital** and **not income** and can be taxed only if the tax is apportioned among the several states in accordance with Art. 1 Sec. 2, cl.3 and Art. 1, Sec. 9, cl. 4 of the Constitution." Eisner v. Macomber, N.Y. 1920, 252 U.S. 189, Walsh v. Brewster, Conn. 1921,265 U.S. 536.

**Black's 3rd Law Dictionary:** Income: Income is the **gain** which proceeds from labor, business or property;... Trefry v. Putnam, 116 N.E. "Income is the gain derived" from capital, from labor or from both combined.; something of exchangeable value, proceeding from the property, **severed from the capital**...and drawn by the recipient for his separate use..." Eisner v. Macomber 40 S. Ct 189,252 U.S. 189, L. Ed. 621, 9 A.L.R. 1570**. Goodrich v. Edwards. 41 S. Ct 390,255 U.S. 527, 65 L. Ed 758. Income is something which **has grown out of capital, leaving the capital unimpaired and intact.** Gavit v. Irwin (D.C.) 275 F. 643, 645***. "Income is used—in law in contradistinction [contrast, opposition] to "capital." 21 C.J. 397*** Income, [gains and profits] ...is something produced by capital **without impairing such capital, the property being left intact, and nothing can be called income which takes away from the property itself.** - Sargent Land Co. v. Von Baumbach (D.C.), 207 F. 423, 430. Black's 4th Law Dictionary: "The gain **derived from** capital, **from** labor, or both combined. Including profit **from** the sale or conversion of capital; income is not a gain accruing [being added to] to capital or a growth in the value of the investment, but is a **gain**, a **profit**, proceeding **from the property**, **severed from the capital**, however invested and coming in, being derived, that is, received or drawn by the recipient for his separate use, benefit or disposal."
Goodrich V.Edwards. 41 S. CT. 390,255 U.S 527, 65 L.Ed. 758.

RECEIVED IN COL[RES]
IRS - OSC -628'

JUN 1 8 2003

OGDEN, UTAH

Derived: "obtained from *a parent substance or source*.." - Webster's Dictionary

U.S.C.A Amend 16, Note 84. "The meaning of 'Income "- in this Amendment [16th] is the *gain* derived from or through *the sale or conversion of capital assets*: from labor or from both combined; *not a gain accruing to capital, or growth or increment of value in the investment*, but a gain. a profit, something of exchangeable value, *proceeding from* the property, *severed from the capital*, however employed and coming in or being 'derived,' that is, received or drawn by the recipient for his separate use." *Tefty v. Bowers*, N.Y. 1929.49 S.Ct 199, 278 U.S. 470, 73 L.Ed. 460.

*Eisner* vs. *Macomber*, 252 U.S. 189. "...it becomes essential to distinguish between what is and what is not 'income,' according to *truth and substance*, without regard to form. *Congress cannot, by any definition it may adopt, conclude the matter, since it cannot by legislation, alter the Constitution from which it derives its power, and within whose limitations alone, that power can be lawfully exercised*...[income] *Derived-from-capital-the-gain-derived-from-capital*, etc. Here we have the essential matter—not gain *accruing* to capital, not a *growth* or increment of value in the investment; but a *gain*, a *profit*, something of exchangeable value...*severed from the capital* however invested or employed, and coming in, being "derived," that is received or drawn by the recipient for his separate use."

"Under the Internal Revenue Act of 1954 [and all other Internal Revenue Acts] *if there is no gain, there is no income*." - 26 U.S.C.A '54, Sec. 61(a).

U.S. v. Balard, 575 F. 2D 400 (1976), *Oliver v. Halstead*, 196 VA 992; 86 S.E Rep. 2D 858: "There is a clear distinction between 'profit' and 'wages' or compensation for labor. Compensation for labor cannot be regarded as profit within the meaning of the law... *The word "profit is a different thing altogether from mere compensation for labor."*

"*Income within the meaning of the Sixteenth Amendment and Revenue Act*, means 'gains'...and in such connection *'gain' means profit*...proceeding from property, *severed from capital*, however invested or employed and coming in, received or drawn by the taxpayer, for his separate use, benefit and disposal. *Income is not a wage or compensation for any type of labor*." *Staples v. U.S., 21 F, Supp-737, 7-^0 (10).*

"The claim that salaries, wages and compensation for personal services are to be taxed as an entirety and therefore must be returned by the individual who performed the services which produced the gain is *without support either in the language of the Act or in the decisions of the courts* construing it and is *directly opposed to provisions of the Act and to regulations of the Treasury Department* which either prescribe or permit that compensation for personal services be *not taxed as an entirety* and not be returned by the *individual performing the services*. It is to be noted that by the language of the Act, it is not 'salaries, wages or compensation for personal services that are to be included in gross income." That which is to be included is "gains, profits, and income *derived from* salaries, wages or compensation for personal service." *Lucas v. Earl*, 281 U.S. 111 (1930)

One does not derive income by rendering services and charging for them."

*Edwards v. Keith. 231 Fed Rep 1*

RECEIVED IRS CUT-FIXXX
IRS - OSC -026-[2]

JUN 1 0 2003

OGDEN, UTAH

The following rulings are quoted from *Conner v. United States*, 303 F. Supp 1187 (1969) pg. 1191: "[Net income] is not synonymous with receipts." 47 C.J.S. IRC §98. p. 226." Whatever may constitute income, therefore, *must have the essential feature of gain* to the recipient. This was true when the 16th amendment became effective, it was true at the time of the decision in *Eisner v. McComber* (supra), it was true under section 22(a) of the *Internal Revenue Code* of 1939, and it is true under section 61(a) of the *Internal Revenue Code* of 1954. *If there is no gain, there is no income.* ...Congress taxed income [gains] not compensation."

*Merchant's Loan and Trust Company v. Smietanka*, 255 U.S. 518, 519 (1921) "There would seem to be no room to doubt that the word [income] must be given the same meaning in all income tax acts of Congress that was given to it in the Corporation Excise Tax Act and what that meaning is has now become definitely settled by decisions of the Court.

"Whatever difficulty there may be about a precise and scientific definition of 'income,' it imports...the idea of *gain or increase arising from corporate activities*...We must reject...the broad contention submitted on behalf of the Government that all receipts, everything that comes in is income within the proper definition of gross income..." *Doyle v. Mitchell*, 247 U.S. 179 (1921)

Page 5 of 15

26 CFR §1.6012-l-(a)(6). **Form of Return.** - Form 1040 or state tax form is prescribed for general use in making the return required under this paragraph   26 CFR §1.6072-1(a). **Time for filing of Returns of Individuals**...(a) In general...returns of income required under section(s) 6012 of Individuals...**having an office or place of business in the United States**...shall be filed on or before the fifteenth day of the fourth month after the close of the taxable year  This makes it clear that the 1040 Form or state tax Form is used for calculating **gains and profits** for individuals doing business in the United States [26 CFR 1.91 l-2(g). The term United States when used in a geographical sense includes any **territory under the sovereignty of the United States.** Because the Constitutional Rules of Apportionment are not applicable in such territories (as previously evidenced). It is not necessary that the business be a privileged corporation]. The 1040 Form or state tax Form is also utilized by officers and employees of the Government, exercising an "official privilege" by such *public* employment. The tax is then measured by the income obtained in the exercise of such privilege.

**Bouvier's Law Dictionary, Baldwin's Student Edition**, 1946; Income: "Income under Corporation Tax of 1909: "Income employed in *natural* sense, as importing something *distinct profit* principal or capital, and conveying idea of gain or increase from corporate activities.

The intent of Congress regarding the meaning of the word income as used in the 16th Amendment, is obvious in the following excerpt from the **Congressional Record of 1913**, pgs. 3843, 3844, by Senator Albert B. Cummings:

*"I went to make a lawyers argument that the authority of the Congress of the United States with regard to this subject (income), is not unlimited... Our authority is to levy taxes on income. I assume that every lawyer will agree with me that we can not legislatively interpret the meaning of the word. 'Income.' That is merely a judicial matter... The word income had and has a well defined meaning before the (16th) Amendment to the Constitution was adopted. It has been defined in all of the courts of this country. If we [Congress] could call it [income] anything that we pleased, we could obliterate all the distinction between income and principal. The Congress cannot affect the meaning of the word 'income' by any legislation whatsoever ...Obviously, the people of this country did not intend to give Congress the power to levy a direct tax on all of the property in this country without apportionment."*

*" ...The true function of the words 'gains' and 'profits' is to limit the meaning of the word 'income' and to show its use only in the sense of receipts which constituted an accession to capital. So the function of the word 'income' should be to limit the meaning of the words 'gains' and 'profits.' "*
                    **Southern Pacific v. Lowe**, Federal Reporter Vol. 238 pg. 850.

Capital, whether originally coming from compensation, wages, or any other form, may be a *source* of gains or profits constituting income. However, such original capital is not *income* in and of itself, and cannot be taxed as income. It is only the resulting gain or profit severed from capital that is *income*. Then it is only *taxable* if such income is earned within the jurisdiction of the taxing authority, after applicable deductions.

**Earnings:** That which is earned; money earned; the price of services performed; the reward of labor; money or the fruits of proper skill, experience, industry; ...derived without the aid of capital." merited by labor, services, or performances." Earnings are not income.
                    **Saltzman v. City of Council Bluffs**, 214 Iowa, 1033,243 N.W. 161, 162.

RECEIVED IN CONGRESS
IRS - OSC -626
JUN 1 8 2003
OGDEN, UTAH

16.   I object to your accusations that I have a tax liability on the grounds that your agency has no jurisdiction over me because it has been well settled by the supreme court that the income tax is an **excise** tax, which is synonymous with a privilege tax. I am exercising no corporate privileges, official privileges or any other privileges upon which such an income tax could be mandatorily imposed.

*"The conclusion reached in the Pollock case—recognized the fact that taxation on income was, in its nature, an excise, entitled to be enforced as such."*
                    **Brushaber v Union Pacific Railroad Co.** 240 U.S 1,16-17.

71 Am Jur 2nd, under State and Local Taxation: Excise: "In its modern sense, an excise tax is any tax which does not fall within the classification of a poll tax" or a property tax, and which embraces every form of burden not laid directly upon persons or property. Idaho Gold Dredging Co. v. Balderston. 58 Idaho 692; Dooley v. Detroit 370 Mich 194, Foster & C. Co. v. Graham, 154 Tenn 668.

Page 6 of 15

In summary, this court is stating that there are only two types of taxes in the United States. A tax must either be a direct tax, in which case it is subject to the rules of apportionment, or a privilege tax. A privilege tax can never be imposed upon the exercise of a right under the Constitution."

"The term "excise tax" is synonymous with "privilege tax," and the two have been used interchangeably." Foster & C. Co. v. Graham, 154 Tenn 412, 285 SW 570, 47 ALR 971. Whether a tax is characterized in the statute imposing it as a privilege tax, or an excise tax, is merely a choice of synonymous words." - Bank of Commerce & T. Co. v. Senter, 149 Tenn 569,260 SW 144. American Airways v. Wallace, 57 F.2d, 877, 880

An excise is...a duty levied upon licenses to pursue certain trades or deal in certain commodities, upon official privileges, [i.e. a government job] etc. Black v. State, 113 Wis 205, 89 NW 522.

"The obligation to pay an excise is based upon the voluntary action of the person taxed in performing the act, enjoying the privilege, or engaging in the occupation which is the subject of the excise, and the element of absolute and unavoidable demand is lacking." [i e  If you don't want to pay the tax, simply don't exercise the privilege.] People ex rel. Atty Gen. v Naglee, 1 Cal 232;  Bank of Commerce & T. Co. v. Senter, 149 Tenn. 441, 381 SW 144.

The income tax is not a tax on actual income, but a tax imposed upon a privilege measured by the gain (income) that results from the exercise of that privilege.

"EXCISES: "Excises are taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain [regulated] occupations and upon corporate privileges; the requirement to pay such taxes involves the exercise of privilege.. .Conceding the power of Congress to tax the business activities of private corporations...the tax must be measured by some standard...it is, therefore, well settled by the decisions of this court that when the sovereign authority has exercised the right to tax, a legitimate subject of taxation as an exercise of a franchise or privilege, it is no objection that the measure of taxation is found in the income..." Flint v. Stone Tracy Co., 220 U.S. 107, at pg 154, 165

"The individual, unlike the corporation, cannot be taxed for the mere privilege of existing. The corporation is an artificial entity which owes its existence and charter power to the state, but the individual's right to live and own property are natural rights for the enjoyment of which an excise cannot be imposed." Redfield v. Fisher, 292 Oregon 814,817

Franchise Tax. A tax on the franchise of a corporation, on the right and privilege of carrying on business in the character of a corporation, for the purposes for which it was created, and in the conditions which surround it. Though the value of the franchise, for the purposes of taxation, may be measured by the amount of business done, or the amount of earnings or dividends, or by the total value of the capital or stock of the corporation in excess of its tangible assets, a franchise tax is not a tax on either property, capital, stock, earnings or dividends.

"Legislature... cannot name something to be a taxable privilege unless it is first a privilege." [Taxation West Key 53]... The Right to receive income or earnings is a right belonging to every person and realization and receipt of income is, therefore, not a "privilege that can be taxed." [Taxation West Key 933] - Jack Cole Company v. MacFarland, 337 S.W. 2d 453, Tenn.

11.    I object to your accusations on the grounds that you have no jurisdiction over me because this action was not properly authorized. This action is not made in accordance with, 55 FR 47833, Nov. 14, 1990, 301.7401-1 and 27 CFR 70.191.

Pursuant to §301.7401-1: "Authorization. -(a) "No Civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture shall be commenced unless, the Commissioner or the Director, Alcohol, Tobacco and Firearms Division...or the Chief Counsel for the Internal Revenue Service or his delegate authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced."

RECEIVED IN CORRES
IRS - OSC -626

JUN 1 8 2003

OGDEN, UTAH

Page 7 of 15

**26 F.R. 47632.27** CFR 70.191 Authorization:
(a) *In general.* No civil action for the collection or recovery of taxes, or any fine, penalty, or forfeiture (with respect to *the provisions of 26 U.S.C. enforced and administered by the Bureau*) shall be commenced unless the *Director, Bureau of Alcohol, Tobacco and Firearms,* or designated delegate, or the Chief Counsel *for the Bureau,* or designated delegate, directs that the action be commenced.

12.    I object to your demand on the grounds that you have no jurisdiction because no valid, signed and attested *Summary Record of Assessment* (Form 23C) or Form 4340 evidencing a tax liability has been recorded in the Office of the Secretary, in accordance with the law. Therefore, there is no valid tax liability upon which to base this demand. If such an Assessment does exist, this is a demand a copy for such copies.

    *"Absent an assessment, there is no debt,* as the debt only attaches when the assessment is properly made. Bull v. U.S., 914 F.2d 245, and for a tax liability to be duly collectible, it must have been properly assessed. In Re Western Trading Co., 340 F. Supp. 1130 (D. Nev. 1972); Estate of Goetz v. U.S., 286 F.Supp. 128, at 131 9d.Mo. (1968). "These statutory procedures must be followed in the process of administratively collecting taxes." U.S. v Berman 825 F.2d 1053, 1055 (CA 6 1987).

    It is well established in law that in order to have a valid sale, there must be a valid seizure; and to have a valid seizure, there must be a valid lien; and to have a valid lien—there must be a signed 23C [Summary Record of Assessment] and a Form 4340 [Certificates of Assessments and Payments] *before there is a valid assessment. Coolin v. U.S., 962 F.2d 403; Fullmer v. U.S., 93-U.S. Tax case. P50, 657; U.S. v. McCallum., 970 F.2d 66; Brewer v. U.S., 746 F.Supp. 309; Geiselman v. U.S., 961 F.2d 1; Twardy v. U.S., 74 AFTR 2d 6003; Fisher v. U.S., 860 F.Supp. 660. A proper assessment must also have IRS Form 2866 "Certification of Transcript" an IRS form 4340 "Certificate of Assessment" (IRS document 7130 at page 33), and must come from the service center and, the procedural assessment itself must be pursuant to IRM-HB1272 and 48 (13).

13.    I object to your demand on the grounds that it does not constitute a valid *Notice of Deficiency,* requiring a *bona fide,* authentic, hand-written signature, attested to be made under lawful authority under the penalties of perjury, has not been sent to me *via Registered or Certified mailing,* as required by Regulations.

    IR Manual 512 (1-5-83)                                                8(24)50

    "Preliminary Notices of Deficiency Procedure

        "...(5) The [Deficiency] Notice is signed *in pen and ink on behalf of the Commissioner by the approving Appeals Officer... Any copies of the statutory notice letter which are used for the originals or duplicate originals should have a handwritten signature and not a facsimile or reproduced signature..."

        "An assessment is illegal and void if no required [valid] deficiency notice is sent to the taxpayer." - United States v Williams (1958 DCNY) 161 F Supp 158. 58-1 USTC 9213. (20 Fed Proc, L Ed 48:440.)

RECEIVED IN CORRES
IRS - OSC · 626

JUN 1 8 2003

OGDEN, UTAH

# Affidavit Challenging Jurisdiction

Please be advised that your information regarding my implied tax liabilities is in error. My filing status should be MFR-01 - I am *not required to make or file a Form 1040 or state tax return.*

I, the undersigned affiant, Jay C. McKean, Sui Juris, hereby attest that the following is true, correct and complete:

14.  Pursuant to my IMF, my filing status should be, MFR-01 – I am "not required to make or file a form 1040 return."

15.  By reason of 26 USC Sec. 6071, and information contained herein, no return has been due to be filed. If any person has filed any income tax return for this period, on behalf of affiant, such return has been illegally and unlawfully filed and is without force or effect.

16.  I have personal knowledge of each of the facts as stated herein.

17.  I am of lawful age and am competent to make this Affidavit. I am not a ward of, under the guardianship of, or under the conservatorship of, another person or entity. This sworn affidavit is made as a matter of public record, in my own sovereign right, in Sui Juris capacity, propria persona.

18.  I am domiciled and living in Carbon County, Montana, where I have occupied such status since 1966.

19.  I am engaged in a private occupation of common right, in the private sector in Montana.

20.  I have never lived, worked, received income, in or from any source within, or effectively connected to; the District of Columbia, Puerto Rico, the U.S. Virgin Islands, Guam, America Samoa, or any other territory, federal enclave or instrumentality within or belonging to, the United States, having its origin and jurisdiction from Article I, §8, Cl. 17, or Article IV, §2, Cl. 3 of the Constitution of the United States, and I have no "minimum contacts" therein.

21.  I am not an officer, employee, elected or appointed official of the United States, the District of Columbia, or of any agency or instrumentality of the United States or the District of Columbia, or of a State or Territory, or of any agency, instrumentality or political subdivision thereof.

22.  I have not received or generated any social security wages or income under the Public Salary Act of 1939 (76th Congress, 1st Session, Chap. 59, pgs 574,575) or the Buck Act, Public Law 817-76th Congress. 4 USC Sec. 101 through 113.

23.  I am a natural born unenfranchised Citizen, under the Constitution and protected by the organic law.

24.  I am not engaged in any trade or business, as such term is defined in 26 U.S.C. or 26 CFR.

RECEIVED IN COPIES.
IRS - OSC -628

JUN 1 8 2003

OGDEN, UTAH

Page 9 of 15

25.     I am not engaged in any Revenue Taxable Activities, including, but not limited to the manufacture or distribution of alcohol, tobacco, firearms, wagering, narcotics or any form of imports or exports.

26.     I am not a member of the armed forces.

27.     I am not a seaman.

28.     I am not an incompetent Indian.

29.     I am not an officer of a corporation or an employer who is under a duty to withhold.

30.     I am not a *citizen subject to its jurisdiction*, upon whom Congress has the authority to impose a graduated income tax, as defined in 26 CFR 1.1. (c)

31.     I earned no income, gains and/or profits as such word is lawfully defined, for the years in question.

32.     I am exercising no corporate privileges, official privileges or other privileges upon which an income tax could mandatorily be imposed.

33.     I am not involved in any form of interstate commerce.

34.     I do not have an office or place of business within the United States as such term is defined in 26 USC.

In summary:

   I incurred no liability for income taxes imposed under Subtitle A of Title 26, the Internal Revenue Code, in the preceding taxable years.

   I anticipate that I will incur no liability for the income tax imposed under Subtitle A for the current taxable year.

   I am not required, by law, to file a Form 1040 or state tax Form.

Pursuant to federal conformity clauses, filing requirements are the same for both 1040 federal and State income tax forms. Therefore, I am also not required to file a State Income Tax Form.

I declare under penalty of perjury under the Laws of these united States of America that, to the best of my knowledge and belief, all of the foregoing is true and correct

Sincerely,

*Jay C. McKean*

(Signed: Jay C. McKean

RECEIVED IN COPIES
IRS - OSC -626

JUN 1 8 2003

OGDEN, UTAH

Page 10 of 15

FEB-27-2008 Case 1:07-cv-02202-ESH     Document 15-3     Filed 04/23/2008     Page 26 of 29 P.23

## Demand for an Impartial Adjudicatory Special Hearing of Record for the purpose of Defining the Rights of the Parties and Substantiating Purported In Personam and Subject Matter Jurisdiction over Affiant

This is a Notice of Defense in the form of an Objection to the assumed jurisdiction of your agency over me. If you do not intend to immediately quash the attached presentment, this is a Demand for a fair and impartial Adjudicative Hearing of record (Not an Audit or an Investigatory Hearing), pursuant to 26CFR 601.105 and 601.106 prior to any further collection action. This hearing will constitute a special and not a general appearance by Affiant purely for the purpose of substantiating jurisdiction by:

(1)  Providing Affiant Administrative Due Process;

(2)  Providing Affiant opportunity to confront witnesses;

(3)  Providing Affiant with DISCOVERY; and
       (Please have all answers to attached Administrative Interrogatories, available to Affiant at such Hearing.)

(4)  Providing Affiant with an opportunity to review evidence that agency relied upon in making the determination that Affiant was within its jurisdiction.

NOTICE OF INTENT: By utilizing an Administrative Remedy, I am not acquiescing to your jurisdiction, to any defects at law, or to any unlawful actions taken by your agency. Such administrative hearings are rarely impartial and typically constitute a deprivation of a Citizen's right to a separation of powers protection, right to a trial by jury, right to confront witnesses, and the right to be heard on the merits of the case by a judge proficient in the law. I am merely attempting to amicably resolve this matter, prior to resorting an already clogged judicial court system. I intend to appeal any adversary ruling judicially, in a court of general and/or appellate jurisdiction, such court having been delegated powers to rule on matters of law and equity.

## PRESERVATION OF ALL RIGHTS AT ALL TIMES

26 U.S.C. 7804 (a) APPLICATION (b) PRESERVATION OF EXISTING RIGHTS AND REMEDIES.- "Nothing in... [Reorganization Plan 26 or Title 26] shall be considered to impair any right or remedy, including trial by Jury, [or any other right] to recover any tax alleged to have been erroneously assessed or collected, or any penalty claimed to have been collected without authority, or any sum alleged to have been excessive or in any manner wrongfully collected under internal revenue laws or state taxing laws..."

I hereby preserve any and all of my rights under the Constitution and the laws of common law and equity. I will not voluntarily permit anyone to usurp my rights, nor am I designating anyone to be a binding arbitrator in any disputes of my Rights or equity. If your agency has a Constitutionally valid claim, you must adhere to Due Process of Law according to the Constitution, and I will remain an Involuntary Litigant in any such action.

- The rights of Respondent, as recognized in the Declaration of Independence are unalienable.

   "We hold these truths to be self evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are life, liberty and the pursuit of happiness."  Declaration of Independence ¶2

- The right of Respondent to be secure in his person, house, papers, and effects is recognized and so stated in the 4th Amendment to the Bill of Rights of the Constitution of these united States of America.

   "The right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause. Supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

RECEIVED IN COL REV
MRS. OSC-826
JUN 1 8 2003
OGDEN, UTAH



Page 11 of 15

- The right of Respondant to be protected against ineffectual is recognized and so stated in the 5th Amendment to the Bill of Rights of the Constitution of these united States of America; in pertinent part; "*no person shall be deprived of life, liberty, or property without due process of law.*"

- The rights of Respondant to a speedy, public trial by an impartial jury, to be informed of the nature and cause of the accusation; to be confronted by witnesses against me, to have compulsory process for obtaining witnesses in my defense, and to have assistance of counsel, are recognized and so stated in the 6th Amendment to the Bill of Rights of the Constitution of these united States of America.

- The right of demandant to a trial by jury in any controversy exceeding $20, is recognized and preserved in the 7th Amendment to the Bill of Rights of the Constitution of these united States.

I object to your remedy which is to pay the disputed tax first and then sue for a refund. This would result in a material violation affecting my substantive rights, depriving me of the possessory interest of property belonging to me, prior to the due process of the law, and prior issuance of a warrant and probable cause affidavit. Further, it would bring my property into a jurisdiction foreign to me where your rules allow you to proceed against my property *in rem*, disregarding my property rights and giving you the judicial advantage of possession.

Any attempt to convert this Hearing into an Investigative Hearing or Audit before you substantiate your jurisdiction or a refusal to respond to this demand within 30 days, will constitute a default, *resjudicata*, by your agency.

**Pending this Hearing a stay of execution of collection is in effect.**

RECEIVED IN CORRES.
IRS - OSC -626

JUN 1 8 2003

OGDEN, UTAH

# Administrative Interrogatories

The attached Administrative Interrogatories are technical questions which need to be answered for the purpose of substantiating agency's claim of an income tax liability.

This information is necessary for Affiant to prepare a defense. Please have the below requested documents and answers to the following questions available at Affiant's hearing.

(1) Please provide the capacity of your agency or department, whether it be corporate, public, or private, and the State wherein such entity was originally created and the location of your current headquarters.

(2) Please provide the source of authority for your agency's or department's creation, whether it be pursuant to the Constitution or an Act of Legislation, and the title, nature, and date of such Act. Further provide all laws, regulations, federal register citations, and delegations of authority, from such source.

(3) As you are merely an agency, please provide for me the name(s) of the principal(s) holding the controlling interest in your agency and the full legal names and addresses of the chief executive officers) of such principal(s), for the purpose of effectuating proper service to the proper parties.

(4) Please provide the Statute, implementing Regulation and Federal Register citation, which promulgated a requirement to file a 1040 or state tax Form into law.

(5) Please provide a copy of a valid certified Summary of Assessment (23C) applicable to me signed under the penalty of perjury that it is true and correct as well as evidence that it was lawfully filed.

(6) Please provide a copy of an original valid Deficiency Notice signed in ink with a de jure, bona fide authentic signature as required by your procedures and the law.

(7) Please provide a copy of all evidence and information upon which you relied to make the determination that I was within the jurisdiction of your agency and had a tax liability.

(8) In order that I may plan a defense on the grounds that your entity lacks jurisdiction over my person and the subject matter, please inform me of the law you are operating under; i.e. admiralty, equity, common law, commerce, contract, international law, civil law, etc.

(9) If you believe that I am involved in any Revenue Taxable Activity or a Regulated Licensed activity, what is the nature of such activity?

(10) If you believe I am operating a business or have an office in the United States, please provide the name of such business and its locality.

(11) Please provide the full legal names. Social Security numbers, and Badge Numbers of the agent and his/her superior who has been assigned this case, as well as copies of such employees' *oaths of office* and *bonds.*

(12) Please provide the complete and lawful definition of the word "income," that you are relying upon in determining that I have an "income tax" liability.

## NOTICE

This Affidavit and all attached documents have been made a part of the Public Record and will be used for the purpose of establishing an Administrative Record which will be provided as evidence in any Judicial proceedings at law or equity regarding this case. All of these documents must be maintained in my File. Failure to respond to this Notice within 30 days will mean you have quashed this erroneous demand. The doctrine of *estoppel by acquiescence* and *prejudice* will prevail, barring any future proceedings against me, and any and all property belonging to me.

RECEIVED COPIES
IRS - OSC -626

JUN 1 8 2003

OGDEN, UTAH

Page 13 of 15

# Demand to Cease and Desist Collection Activities Prior to Validation of Purported Debt

Pursuant to the **Fair Debt Collection Practices Act,** 15 U.S.C.A §§1601, 1692 et al, this constitutes timely written notice that, I decline to pay the attached erroneous purported debt which is unsigned and unattested and which I discharge and cancel in its entirety, without dishonor, on the grounds of breach, false representation and fraud.

15 U.S.C. §1692 (e) States: A false, deceptive, and misleading representation in connection with the collection of any debt, includes the false representation of the character or legal status of any debt and further makes a threat to take any action that cannot legally be taken a deceptive practice.

Such Notice omits information which should have been disclosed, such as vital citations disclosing the agency's jurisdictional and statutory authority. Said Notice further contains false, deceptive and misleading representations and allegations, intended to intentionally pervert the truth for the purpose of inducing me, in reliance upon such, to part with property belonging to me and to surrender certain substantive legal and Constitutional rights. To act upon this Notice would divest me of my property and my prerogative rights, resulting in legal injury to me.

Pursuant to 15 US C 1692g (4), **Validation of Debts:** if you have evidence to validate your claim that the attached presentment does not constitute fraudulent misrepresentation and that I owe this alleged disputed debt, this is a demand that, within 30 days, you provide such validation and supporting evidence to substantiate your claim. Until the requirements of the **Fair Debt Collection Practices Act** have been met and your claim is validated, you have no jurisdiction to continue any collection activities.

This is constructive notice that, absent the validation of your claim within 30 days, you must cease and desist any and all collection activity and are prohibited from contacting me through the mail, by telephone, in person, at my home, or at my work. You are further prohibited from contacting my employer, my bank, or any other third party. Each and every attempted contact in violation of this Act will constitute harassment and defamation of character and will subject your agency and/or board and any and all agents in his/her/their individual capacities, who take part in such harassment and defamation, to a liability for actual damages as well as statutory damages of up to $1,000 for each and every violation and a further liability for legal fees to be paid to any counsel which I may retain. Further, absent such validation of your claim, you are prohibited from filing any notice of lien and/or levy and are also barred from reporting any derogatory credit information to any Credit Reporting Agency regarding this disputed purported debt.

Further, pursuant to the **Fair Debt Collection Practices Act,** 15 USC 1692g(a), as you are merely an agency or board acting on someone else's behalf, this is a demand that you provide the name of the original principal or holder in due course, for whom you are attempting to collect this debt.

I hereby attest that, to the best of my knowledge and belief, the above information is true and correct.

Signed: Jay C. McKean

RECEIVED IN COPIES
IRS - OSC -626

JUN 1 6 2003

Page 14 of 15    OGDEN, UTAH